## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

KHAGENDRA GHARTI-CHHETRY,

        *Plaintiff,*

        *v.*

BOARD OF IMMIGRATION APPEALS, *et al.,*

        *Defendants.*

)
)
)
)
)
)
)
)
)
)

    Case No. 1:25-cv-03361

---

### PLAINTIFF'S EMERGENCY APPLICATION FOR A STAY OF AGENCY ACTION OR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Khagendra Gharti-Chhetry ("Plaintiff" or "Mr. Chhetry") hereby requests that the Court stay the September 10, 2025 order of Defendant Board of Immigration Appeals ("the Board" or "BIA") suspending Plaintiff from practicing before the Board, the Immigration Courts, and the Department of Homeland Security for 60 days ("the BIA Order") pending resolution of this case, pursuant to 7 U.S.C. § 705.[1] Alternatively, Plaintiff requests that the Court grant a temporary restraining order and a preliminary injunction enjoining Defendants, their agents, and their employees from enforcing the BIA Order against Plaintiff until this case is resolved.

As explained more fully below in the Memorandum of Points and Authorities, preservation of the status quo ante is necessary in order to avoid irreparable harm to Mr. Chhetry and to protect the ability of this Court to engage in judicial review of the challenged BIA Order before this case is mooted by the passage of time.

---

[1] A true and correct copy of the BIA Order is attached as Exhibit A to the accompanying Declaration of Judah J. Ariel ("Ariel Declaration").

Plaintiff is compelled to seek relief on an emergency basis because the BIA Order goes into effect on Thursday, September 25, 2025. Plaintiff therefore requests that the Court act on this application no later than September 24, 2025. If the Court is unable to do so, Plaintiff requests that the Court administratively stay the BIA Order until the Court is able to decide this application.

Pursuant to Local Civil Rule 65.1(a), undersigned counsel has provided notice of this application and furnished a copy of the application and complaint by email to Brian Hudak, Chief of the Civil Division of the U.S. Attorney's Office for the District of Columbia. *See* Ariel Decl., ¶ 6.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Lawyers who practice before the before the Board, the Immigration Courts, or the Department of Homeland Security ("DHS") are subject to the requirements of professional conduct set out in 8 C.F.R. § 1003.102. The purposes of such requirements include "the protection of the public, the preservation of the integrity of the Immigration Courts, and the maintenance of high professional standards." 65 Fed. Reg. 39,514. A lawyer who violates these requirements appropriately faces disciplinary action, including possible suspension or disbarment.

Lawyers, however, are human. And, like all humans, "[e]ven the best lawyers may err in the course of clients' representations." American Bar Association, Formal Ethics Opinion 481 (2018). For this reason, regulations on the practice of law properly "reflect a concern with moral blameworthiness" and generally require that a sanctioned lawyer's conduct be knowing or, at least, negligent. *See* Restatement (Third), The Law Governing Lawyers § 5, cmt. D.

Here, Plaintiff made a mistake when he filed a paper brief with the Board in which, unbeknownst to him, some pages had accidentally been swapped with the same-numbered pages

from a brief in a different case. Plaintiff recognizes that he is responsible for the actions of the non-lawyer assistants he employs and accepts responsibility for this mistake.

In the disciplinary proceedings at issue in this case, however, the Adjudicating Official and the Board concluded this inadvertent clerical error constituted a breach of Plaintiff's professional obligations under 8 C.F.R. § 1003.102 (c), (j), (n), (o) and (q), which prohibit making false statements of law or fact, engaging in frivolous behavior, engaging in conduct prejudicial to the administration of justice, failing to provide competent representation, and failing to act with reasonable diligence, respectively.

As set out in Plaintiff's Verified Complaint and below, these findings are arbitrary, capricious, an abuse of discretion, not in accordance with law or contrary to constitutional right, in violation of the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 706(2). Rather than considering Plaintiff's actual conduct and his degree of culpability under the proper legal standards, the Adjudicating Official and BIA decisions effectively held Plaintiff responsible in strict liability based solely on the fact that he filed the mistakenly swapped pages, without recognizing that Plaintiff never intended to do so, and thus suspended Plaintiff from practice for 60 days.

Because the BIA Order will cause Plaintiff irreparable harm if it is permitted to go into effect in the coming days, Plaintiff submits this emergency application to stay the BIA Order or for a temporary restraining order and preliminary injunction.

## FACTUAL BACKGROUND

Plaintiff Khagendra Gharti-Chhetry is a respected lawyer with over 30 years of experience in immigration law. Mr. Chhetry has been admitted to practice in New York since 1987 and is a member in good standing of the bars of the U.S. District Courts for the Southern District of New

York and the Eastern District of New York, the U.S. Circuit Courts of Appeals for the First,

Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits, and the U.S.

Supreme Court. Since 1995, he has been the founder and managing partner of Chhetry &

Associates, P.C. Complaint ¶ 1. In that time, Mr. Chhetry has represented thousands of clients

before the Immigration Courts and the Board of Immigration Appeals.

In January 2017, Mr. Chhetry was retained to represent R.A. in connection with an

application for asylum based on persecution of R.A. and his father by the ruling Awami League

party in Bangladesh. Complaint ¶ 9. Despite Mr. Chhetry's best efforts, the Immigration Judge

("IJ") concluded that R.A. did not meet the requirements for asylum. Complaint ¶ 10.

On June 20, 2017, Mr. Chhetry filed an appeal with the Board on R.A.'s behalf, and on

September 17, 2017, submitted an appellate brief challenging all material aspects of the IJ's

decision concerning R.A.'s application. Complaint ¶ 11. On appeal, the Board remanded R.A.'s

case to the IJ to consider whether R.A. qualified for relief under the Trafficking Victims

Protection Reauthorization Act of 2008. On remand, the IJ found that R.A. was not entitled to

relief, and the case was sent back to the Board to address the other asserted claims of error.

Complaint ¶ 12.

Out of an abundance of caution, on November 12, 2018, Mr. Chhetry resubmitted the

appellate brief that he had initially filed with the Board on R.A.'s behalf on September 17, 2017,

with minor changes. Complaint ¶ 13. In preparing the resubmitted brief, Mr. Chhetry reviewed

and approved the final version on his computer and tasked a paralegal with printing and copying

the brief for filing and service. Complaint ¶ 14.

Unbeknownst to Mr. Chhetry, however, at some point between the time that he finalized

the brief on his computer and the time that it was filed, pages 10 to 24 of the brief were

inadvertently swapped with the same-numbered pages from a brief in a different appeal.
Complaint ¶ 15.

In an opinion dated January 30, 2019, the Board denied R.A.'s appeal on the merits. In a footnote, the Board's decision noted that the appellant's brief appeared to include arguments from a different brief. *See* Exhibit D at 9. Nevertheless, the Board's decision made clear that it did not rely on those arguments and instead addressed the merits of R.A.'s appeal, which had been fully argued in the earlier September 17, 2017 brief. Complaint ¶ 16.

On June 9, 2022, EOIR's Disciplinary Counsel filed a Notice of Intent to Discipline ("NID"), charging Mr. Chhetry with violations of 8 C.F.R. § 1003.102(c), (j), (n), (o) and (q). *See generally* Exhibit B. Specifically, Count One of the NID charged Mr. Chhetry with (i) knowingly or with reckless disregard making a false statement of material fact or law; (ii) engaging in frivolous behavior; (iii) engaging in conduct prejudicial to the administration of justice; (iv) failing to provide competent representation; and (v) failing to act with reasonable diligence, based on the November 12, 2018 brief he had filed in R.A.'s appeal. Count Two of the NID charged additional violations stemming from the alleged failure to address dispositive issues in a different appeal. Complaint ¶ 17.

Following a hearing on September 26, 2023, the Adjudicating Official issued a decision on October 23, 2023 sustaining all of the disciplinary charges against Mr. Chhetry and suspending his right to practice before the Board, Immigration Courts, and DHS for 90 days. Complaint ¶ 18; *see generally* Exhibit C. Mr. Chhetry, through counsel, timely appealed the Adjudicating Official's decision to the Board. Complaint ¶ 19.

In an unpublished opinion dated September 10, 2025, the Board upheld the Adjudicating Official's decision with respect to Count One, reversed and vacated the Adjudicating Official's

decision with respect to Count Two, and reduced the length of the suspension to 60 days.

Complaint ¶ 20; *see generally* Exhibit A.[2]

## LEGAL STANDARDS

The Administrative Procedure Act authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The court may do so "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Id.*

The factors governing a stay of agency action under § 705 are the same as those governing the issuance of a temporary restraining order or a preliminary injunction. *See District of Columbia v. USDA*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020) (citing *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)) (preliminary injunctions); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 13, 16 n.1 (D.D.C. 2025) (temporary restraining orders); *Mich. Citizens for an Indep. Press v. Thornburgh*, No. CIV. A. No. 88-2322, 1988 WL 90388, at *3 (D.D.C. Aug. 17, 1988) (same). In each instance "the movant 'must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the [stay] were not granted, (3) that a[ ] [stay] would not substantially injure other interested parties, and (4) that the public interest would be furthered by the [stay].'" *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872, 2025 WL 2192986, at *12 (D.D.C. Aug. 1, 2025) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). When the government is the non-moving party, the third and fourth factors merge. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). There is no time limit on the duration of a § 705 stay. *FBME*

---

[2] All citations to exhibits refer to exhibits to the Ariel Declaration.

*Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 310 (D.D.C. 2016) (citing *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 562 (D.C.Cir.2015) (Kavanaugh, J., dissenting)).

"While the court awaits full briefing and argument, it may issue a brief 'administrative stay.'" *Nat'l Council*, 763 F. Supp. 3d at 16 (citing *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring)). "An '[a]dministrative stay[ ] do[es] not typically reflect the court's consideration of the merits,' but instead 'reflects a first-blush judgment about the relative consequences' of the case. Such a stay 'freeze[s] legal proceedings until the court can rule on a party's request for expedited relief.'" *Id.* at 16-17 (quoting *Texas*, 144 S. Ct. at 788 (Barrett, J., concurring)) (alterations in original) (internal citations omitted). "[T]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Id.* at 17 (quoting *Texas v. Dep't of Homeland Sec.*, No. 24-CV-306, 2024 WL 5454617, at *1 (E.D. Tex. Aug. 26, 2024)); *see also* 5 U.S.C. § 705 (authorizing a reviewing court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings").

## ARGUMENT

I.    THE COURT SHOULD STAY OR ENJOIN ENFORCEMENT OF THE BIA ORDER

A.    Plaintiff is Likely to Succeed on the Merits of His Claims

The first prong of the test for a stay or an injunction requires that Plaintiff demonstrate a likelihood of success on the merits. In this case, Plaintiff is challenging the decision to suspend him from practice before the Immigration Courts, the Board, and DHS as arbitrary, capricious, an abuse of discretion, not in accordance with law or contrary to constitutional right, in violation of the APA. *See* Complaint ¶¶ 23-31; *see generally* 5 U.S.C. § 706(2). For the reasons summarized below, Plaintiff is likely to succeed on his claims with respect to each disciplinary finding.

1.     <u>Plaintiff is Likely to Succeed on His Claim With Respect to Making a False Statement</u>

The Adjudicating Official's decision[3] found that Plaintiff violated 8 C.F.R. § 1003.102(c), which prohibits "[k]nowingly or with reckless disregard mak[ing] a false statement of material fact or law." *See* Exhibit C at 6-8. Plaintiff is likely to succeed on his challenge to this finding because the Adjudicating Official's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for two reasons. First, because it is undisputed that what the Adjudicating Official and Board describe as false statements made their way into the brief that Plaintiff filed only because certain pages were inadvertently swapped with pages from a different brief, Plaintiff lacked the general intent to make the statements contained in the swapped pages.

Second, the Adjudicating Official did not find that Plaintiff had the subjective awareness of the relevant risk required by the concept of "reckless disregard," *see, e.g.*, *Herbert v. Lando*, 411 U.S. 153, 156-57 (1979); *Hourani v. Psybersolutions LLC*, 164 F.Supp.3d 128, 141 (D.D.C. 2016), nor could he have so found, given the lack of any evidence from which such awareness could be inferred. While the Adjudicating Official instead describes how the "false statements" (*i.e.*, the swapped pages) could have been discovered through a further review of the brief, Exhibit C at 7, that would support at most a finding of negligence, not recklessness.

---

[3] When the Board affirms an IJ's decision and adopts the IJ's reasoning (in whole or in part), reviewing courts will review both decisions together. *See, e.g.*, *Pineda-Maldonado v. Garland*, 91 F.4th 76, 80 (1st Cir. 2024); *Lainez v. Bondi*, 141 F.4th 393, 397 (2d Cir. 2025); Sharashidze v. Gonzales, 480 F.3d 566, 569 (7th Cir. 2007); *Madjakpor v. Gonzales*, 406 F.3d 1040, 1044 (8th Cir. 2005). Such an approach is also appropriate here, because, although the BIA Order affirmed the Adjudicating Officer's decision on Count One on a "clearly erroneous" standard, the Board did not provide its own reasoning. *See* Exhibit A at 4.

Third, the Adjudicating Official's decision incorrectly interpreted this provision as imposing an "obligation to ensure the factual statements in [a] brief [are] true and correct, to the best of [the practitioner's] knowledge and ability." *See* Exhibit C at 7. But this interpretation of the regulation as imposing an affirmative obligation is inconsistent with its express terms and would render the requirement in § 1003.102(j) that a practitioner conduct an "inquiry reasonable under the circumstances" into the factual contentions in a brief, discussed further below, a nullity.

2.    Plaintiff is Likely to Succeed on His Claim With Respect to Engaging in Frivolous Behavior

The Adjudicating Official's decision next found that Plaintiff violated 8 C.F.R. § 1003.102(j), which prohibits "[e]ngag[ing] in frivolous behavior." *See* Exhibit C at 8-10. That provision further explains that "[a] practitioner engages in frivolous behavior when he or she knows or reasonably should have known that his or her actions lack an arguable basis in law or in fact, or are taken for an improper purpose, such as to harass or to cause unnecessary delay," and, following Rule 11 of the Federal Rules of Civil Procedure,[4] states that:

> The signature of a practitioner on any filing, application, motion, appeal, brief, or other document constitutes certification by the signer that the signer has read the filing, application, motion, appeal, brief, or other document and that, to the best of the signer's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the document is well-grounded in fact and is warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, and is not interposed for any improper purpose.

8 C.F.R. § 1003.12(j)(1).

---

[4] *See* 65 Fed. Reg. 39,519 ("The language in this provision is closely patterned after the language in Rule 11 of the Federal Rules of Civil Procedure"); *see also* 67 Fed. Reg. 54,897 ("The Department [of Justice] also expects the Board to be guided by other interpretations of what amounts to 'frivolous' in implementing the rule, including the decisions of the United States courts under F[ed]. R. Civ. P. 11").

Plaintiff is likely to succeed on his challenge to this finding because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. First, sanctions for frivolous conduct are not intended to cover inadvertent errors. As the Ninth Circuit explained in an analogous case:

> The [district] court also imposed Rule 11 sanctions because Ault's counsel filed an erroneous First Amended Complaint without reading it. Although we do not condone carelessness, the error was clearly clerical in nature, resulting from a wrong signal to a word-processer that caused extraneous material to be included in the First Amended Complaint. We do not think it the type of error for which Rule 11 sanctions were intended. The Hustler attorneys could have avoided expending time answering the complaint and preparing a motion to dismiss if they had simply notified Ault's counsel of the obvious error.

*Ault v. Hustler Magazine*, 860 F.2d 877, 887 (9th Cir. 1988); *see also Milwaukee Concrete Studios v. Fjeld Mfg. Co.*, 8 F.3d 441, 449 (7th Cir. 1993) (overturning Rule 11 sanctions based on a false factual statement because "the [factual] error was inadvertent and therefore not sanctionable").

Second, the Board and the Adjudicating Official failed to consider whether it was unreasonable under the circumstances for Plaintiff to have reviewed the brief on his computer prior to printing, rather than in paper form after printing.

Here, applying the cost-benefit considerations involved in the determination of negligence, *see Int'l Union, UAW v. OSHA*, 938 F.2d 1310, 1320 (D.C. Cir. 1991) ("'Reasonableness' has long been associated with the balancing of costs and benefits. The 'reasonable' person of tort fame is one who takes a precaution if the gravity of the injuries averted, adjusted for their probability, exceeds the precaution's burden.") (citing *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947) (Hand, J.)); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 402 (1990) ("The considerations involved in the Rule 11 context are similar to those involved in determining negligence"), demonstrates that Plaintiff's review of the brief in electronic form was, in fact,

reasonable. This is because the probability that the printed version of a brief will differ from the electronic version is exceedingly low and unlikely to result in serious harm, considering that a court is likely to notice the error, as the Board did here. In contrast, a rule that requires lawyers to re-read their briefs after printing would impose significant time costs on lawyers (and therefore increase the financial costs to clients) for minimal benefit.

Reasonableness can also be inferred from common practices within the legal profession, as lawyers commonly review draft filings electronically (where they can make edits or revisions more easily) and then allow a paralegal or assistant to print the document.

3.    Plaintiff is Likely to Succeed on His Claim With Respect to Conduct Prejudicial to the Administration of Justice

The Adjudicating Official's decision next found that Plaintiff violated 8 C.F.R. § 1003.102(n), which prohibits "conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process." *See* Exhibit C at 10-12. Sanctionable conduct "includes any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct." § 1003.102(n).

Plaintiff is likely to succeed on his challenge to this finding because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Specifically, the Adjudicating Official relied on the standard set out in *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996), *see* Exhibit C at 11, which requires that conduct prejudicial to the administration of justice be both "improper" and "taint the judicial process in more than a *de minimis* way." The Adjudicating Official, however, either misapplied or misinterpreted the standard, effectively treating any mistake as "improper" and any effect on the judicial proceedings as constituting

serious impairment or interference with the adjudicative process. As *Hopkins* and other cases make clear, however, conduct prejudicial to the administration of justice must be significantly more serious and blameworthy than Plaintiff's actions here. *See, e.g.*, *In re L.R.*, 640 A.2d 697 (D.C. 1994) (appointed counsel extorting payment from an indigent client); *In re Reback*, 487 A.2d 235 (D.C. 1985) (forging a party's signature on a complaint); *In re Jones*, 521 A.2d 1119 (D.C. 1986) (failing to respond to Bar Counsel's inquiries when required by law); *In re Goffe*, 641 A.2d 458 (D.C. 1994) (fabricating evidence); *In re Sablowsky*, 529 A.2d 289 (D.C. 1987) (attempting to sell evidence to another attorney); *In re Delate*, 598 A.2d 154 (D.C. 1991) (as a conservator, failing to appear at hearings or file a required accounting); *In re Sandground*, 542 A.2d 1242 (D.C. 1988) (per curiam) (assisting a client with concealing assets); *In re Burka*, 423 A.2d 181 (D.C. 1980) (en banc) (failing to turn over estate assets or submit financial information after being removed as a conservator); *In re Keller*, 280 A.2d 119 (D.C. 1977) (conducting and covering up a sham arbitration).

As multiple courts have found with respect to equivalent rules, only egregious conduct rises to the level of "prejudicial to the administration of justice." *Attorney Grievance Com'n of Md.v. Marcalus*, 414 Md. 501, 522 (2010) (requiring conduct be "criminal or so egregious as to make the harm, or potential harm, flowing from it patent"); *In re Discipline of an Attorney*, 442 Mass. 660, 668-69  (2004)(conduct must be "egregious" and "flagrantly violative of accepted professional norms"); *In re Hinds*, 90 N.J. 604, 632 (1982) (conduct must be "egregious").

        4.      <u>Plaintiff is Likely to Succeed on His Claim With Respect to the Duty of Competence</u>

The Adjudicating Official's decision next found that Plaintiff violated the duty of competence in 8 C.F.R. § 1003.102(o). *See* Exhibit C at 13-14. Plaintiff is likely to succeed on his

challenge that this finding is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because an isolated clerical error does not implicate an attorney's competence. Furthermore, the decisions do not explain how Plaintiff failed to act with reasonable competence, but simply assert that a competent practitioner would not make inaccurate statements. *See* Exhibit C at 13.

     5.     <u>Plaintiff is Likely to Succeed on His Claim With Respect to the Duty of Diligence</u>

The Adjudicating Official's decision next found that Plaintiff violated the requirement in 8 C.F.R. § 1003.102(q) "to act with reasonable diligence and promptness in representing a client." *See* Exhibit C at 14-15. Plaintiff is likely to succeed on his challenge that this finding is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. First, as explained above, Plaintiff acted reasonably in reviewing the brief on his computer before printing. And second, while the Board and the Adjudicating Official referred to a previous incident in which Plaintiff "previously received a disciplinary warning letter involving similar misconduct," *see* Exhibit A at 4; Exhibit C at 16, that situation involved paragraphs from one brief being inserted into another brief on a computer, prior to printing and would not have provided Plaintiff with notice of the risk that pages would be inadvertently swapped after printing.

     6.     <u>Plaintiff is Likely to Succeed on His Claim With Respect to the Alleged Failure to Address a Dispositive Issue</u>

The Adjudicating Official's decision also found that Plaintiff violated 8 C.F.R. 1003.102(j), (o), and (q) because both the first and second briefs in R.A.'s appeal supposedly failed to address the dispositive issue of nexus to a protected ground. *See* Exhibit C at 10, 13-15. The BIA Order, however, makes no reference to this issue, and the reasons it gives for upholding the Adjudicating Official's decision and imposing discipline do not rely on any alleged deficiencies in the first brief.

*See generally* Exhibit A. Therefore, Plaintiff submits the BIA Order upheld the Adjudicating Officer's decisions solely on grounds related to the swapped pages in the second brief in R.A.'s appeal.

Nevertheless, to the extent that the Adjudicating Official's reliance on this issue survived the BIA's Order, Plaintiff is likely to succeed on his challenge that these findings are arbitrary, capricious, an abuse of discretion, not in accordance with law, or contrary to constitutional right for two reasons. First, as the Government's Pre-Hearing Brief confirms, the NID never charged Plaintiff with violations based on the content of the first brief, *see* Exhibit D at 19-23, 25-29 (arguing in the Pre-Hearing Brief that each charge was based on the filing of the second brief); *see generally* Exhibit B; *compare* Exhibit B at 11, ¶ 30 (stating that the first brief addressed nexus) *with id.* at 12, ¶ 32 (stating that the second brief did not address nexus (because of the swapped pages)), thereby depriving Plaintiff of the notice required by 8 C.F.R. § 1003.105(a)(1) and the Fifth Amendment's Due Process Clause, *see In re Gault*, 387 U.S. 1, 33-34 (1967) (the Constitution requires "timely notice, in advance of the hearing, of the specific issues that [a respondent] must meet" before deprivation of a protected interest); *United States v. Hess*, 124 U.S. 483, 487 (1888) ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."), as well as subjecting him to discipline in violation of the requirement in § 1003.106(a)(2)(iv) and (b) that sanctions be imposed only upon proof of the charges enumerated in the NID.

Second, the record evidence will show that the first brief in R.A.'s case addressed the Immigration Judge's nexus finding in as much depth as the finding itself. Specifically, the entirety

14

of the discussion of nexus in the IJ's formal opinion is the statement that "the Court cannot consider [what occurred] to be persecution because it was not on account of a protected ground. It was not because of his political opinion or imputed political opinion." Thus, it was sufficient that Plaintiff's appellate brief challenged the IJ's failure to give reasons by pointing out that the nexus finding was "stated in a passing manner" and "did not provide any reasoning behind this finding." *See* Exhibit B at 11, ¶ 30.

       7.    <u>Plaintiff is Likely to Succeed on His Claim With Respect to Sanction Imposed by the Board</u>

The BIA Order also imposed a 60-day suspension of Plaintiff's right to practice before the Immigration Courts, the Board, and DHS. *See* Exhibit A at 6-7. Plaintiff is likely to succeed in his challenge that this sanction is arbitrary, capricious, or an abuse of discretion because the Board's reasoning for departing from the reprimand called for by American Bar Association's Standards for Imposing Lawyer Sanctions relied on the notion that Respondent engaged in "multiple violations" and "a pattern of neglect," when, in fact, the BIA Order imposed sanctions based on a single transaction: the filing of the second brief in R.A.'s appeal.

**B.    Plaintiff Will Suffer Irreparable Injury in the Absence of a Stay**

       1.    <u>Plaintiff Will Suffer Irreparable Economic and Reputational Harm</u>

The second prong requires a movant to demonstrate that he will suffer irreparable injury. An injury is irreparable when it "cannot be fully compensated by later damages." *Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 751 F. Supp. 218, 224 (D.D.C. 1990). To satisfy this element, the movant must show that the injury is "both certain and great" and "of such imminence that there is a 'clear and present' need for equitable relief to prevent

irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

In this case, Plaintiff faces certain, imminent economic and reputational harm. Plaintiff's legal practice focuses primarily on immigration law and his livelihood is highly dependent on his ability to practice before the Immigration Courts, Board of Immigration Appeals, and Department of Homeland Security. Suspension of his right to practice before those agencies will leave Plaintiff unable to continue to represent his dozens of clients with hearings or other deadlines during the 60-day suspension period, thereby depriving him of income that he would otherwise earn during that period. Suspension from practice will also restrict Plaintiff's ability to obtain new clients with matters before these agencies, causing him to forgo the legal fees that he would otherwise earn. *Cf. Susman Godfrey LLP v. Exec. Off. of President,* No. CV-25-1107, 2025 WL 1779830, at *24 (D.D.C. June 27, 2025) (finding irreparable injury because "it [was] evident" that an executive order prohibiting a law firm with a "substantial amount of business" before federal agencies from interacting with those agencies "[would] cause [the law firm] significant financial loss if it goes into effect").

Moreover, "[w]here, as here, sovereign immunity limits [P]laintiff to seeking nonmonetary equitable relief and thus renders unrecoverable [P]laintiff's monetary damages, courts have recognized these losses 'can ... constitute irreparable harm.'" *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 178–79 (D.D.C. 2025) *(*quoting *Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280, 2021 WL 950144, at *10 (D.D.C. Mar. 12, 2021)).

Plaintiff also faces significant and lasting reputational harm if the BIA Order goes into effect. *Cf. In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (noting "the continuing stigma" that results from a lawyer's suspension from practice). Plaintiff will be publicly identified online as

having been suspended for violation of his professional obligations. *See* BIA Practice Manual § 11.8, https://www.justice.gov/eoir/reference-materials/bia/chapter-11/8 (last accessed Sept. 20, 2025) ("When a practitioner has been disbarred or suspended, that information is made available to the public on the EOIR website, at the Board, and at the Immigration Courts."); *see generally* EOIR, List of Currently Disciplined Practitioners, https://www.justice.gov/eoir/list-of-currently-disciplined-practitioners (Sept. 19, 2025); EOIR, List of Previously Disciplined Practitioners, https://www.justice.gov/eoir/list-of-previously-disciplined-practitioners (Apr. 22, 2025). As a result, anybody who conducts an internet search for Plaintiff's name will be able to see that Plaintiff was disciplined for supposedly violating his professional obligations. Because Plaintiff has not previously been subject to public discipline, this will cause significant and irreparable damage to Plaintiff's reputation.

If the BIA Order goes into effect, Plaintiff is also required to notify all of his clients of the suspension. *See* Exhibit A at 8. Not only is it near certain that some number of Plaintiff's clients will look for a different lawyer, but this will also affect Plaintiff's ability to obtain new clients, as Plaintiff relies heavily on word-of-mouth recommendations in close-knit immigrant communities.

Plaintiff also faces certain collateral consequences if the BIA Order goes into effect. Under 22 NYCRR § 1240.13(d), Plaintiff is required to report his suspension to New York's Attorney Grievance Committee, which will very likely lead to the imposition of reciprocal discipline consisting of, at minimum, the same 60-day suspension of his law license. *See, e.g.*, *In re Cane*, 209 N.Y.S.3d 44 (App. Div. 2024); *In re Salomon*, 235 N.Y.S.3d 289 (App. Div. 2025).

Plaintiff is also required to report his suspension to the Eastern and Southern Districts, and the Second and Ninth Circuits. *See* E.D.N.Y./S.D.N.Y. Joint Loc. R. 1.5(h); 2d Cir. Loc. R.

46.2(c)(1); 9th Cir. R. 46-2(c). Under the Second Circuit's rules, such a report causes the clerk to automatically impose reciprocal discipline. *See* 2d Cir. Loc. R. 46.2(c)(2) ("When the court receives a copy of an order entered by an attorney disciplinary authority disbarring or suspending an attorney from practice, the clerk enters an order disbarring or suspending the attorney from practice before this court on comparable terms and conditions. This court's order becomes effective 28 days after it is filed, unless the court orders otherwise."). In the Ninth Circuit, such a report automatically causes the initiation of disciplinary proceedings. *See* 9th Cir. R. 46-2(c) ("When this Court learns that a member of the bar of this Court has been disbarred or suspended from the practice of law by any court or other competent authority or resigns during the pendency of disciplinary proceedings, the Clerk shall issue an order to show cause why the attorney should not be suspended or disbarred from practice in this Court.").

Accordingly, if the BIA Order is not stayed, Plaintiff faces certain and irreparable injury.

> 2.    A Stay is Necessary to Preserve the Court's Jurisdiction and Avoid Mootness

Plaintiff will also suffer irreparable harm in the absence of a stay because the duration of the suspension imposed by the BIA Order is such that the case could arguably become moot, thereby depriving the Court of jurisdiction, before the Court is able to rule on Plaintiff's claims. *See Moriello v. Bd. of Immigr. Appeals*, No. 1:22CV969, 2024 WL 1349588, at *7 (M.D.N.C. Mar. 29, 2024) (holding that the plaintiff's APA challenge to her suspension by the BIA became moot at the end of the suspension period).

Here, because Defendants are all federal agencies or federal officials sued in their official capacities, Defendants have 60 days to answer the complaint, *see* Fed. R. Civ. P. 12(a)(2), and an additional 30 days to identify the contents of the administrative record, *see* Loc. Civ. R. 7(n)(1).

This timeline makes it highly unlikely that that the Court will be able to decide this case before the end of the suspension period.

Accordingly, the Court should also stay the effective date of the BIA Order to "enable thorough judicial review," *FBME*, 209 F.Supp.3d at 310, and prevent the passage of time from mooting the case, thereby depriving Plaintiff of the possibility of obtaining relief. Such considerations should be given particular weight in the context of an APA challenge to agency action, as the APA expressly authorizes a court to "issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

### C.    The Balance of the Hardships and the Public Interest Favor a Stay

The combined third and fourth prongs concern the effects of a stay on other parties and the public interest. While Plaintiff acknowledges that there is a governmental and public interest in the imposition of discipline on attorneys who violate their professional obligations, the effect on those interests of a brief stay (or injunction) would be minimal.

Here, while the alleged violation occurred in 2018, the BIA Order imposing sanctions on Plaintiff was not issued until more than six-and-a-half years later, during which period Plaintiff continued to practice before the agencies without incident. In contrast to the harm that Plaintiff will suffer if the BIA Order goes into effect before this Court can address his claims, an additional few months' delay should have little-to-no effect on the governmental and public interests.

What's more, these governmental and public interests at issue only apply where an attorney has actually committed a violation. Thus, if the Court agrees that Plaintiff is likely to succeed on the merits of his claims, it follows that there is likely no governmental or public interest in imposing disciplinary sanctions.

19

## II.    If Necessary, the Court Should Grant a Temporary Administrative Stay of the BIA Order

If the Court is unable to rule on Plaintiff's application before September 25, 2025, the Court should also issue a temporary administrative stay "to 'freeze legal proceedings until [it] can rule on [Plaintiff's] request for expedited relief.'" *Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735, at *4 (D.C. Cir. May 7, 2025) (Rao, J. dissenting) (quoting *Texas*, 144 S. Ct. at 798 (Barrett, J., concurring)); *see also, e.g.*, *Citizens for Resp. & Ethics in Washington v. OMB*, No. CV 25-1051, 2025 WL 2025114, at *19 (D.D.C. July 21, 2025) ("A court may issue a brief 'administrative stay' to 'buy the court time to deliberate when issues are not easy to evaluate in haste.' [Citation.] 'While administrative stays are more common in appellate courts, district courts have recognized their applicability in cases seeking emergency relief under the APA.' [Citation.]") (quoting *Nat'l Council*, 763 F. Supp. 3d at 16-17).

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's application to stay the BIA Order or, alternatively, grant a temporary restraining order and a preliminary injunction enjoining Defendants, their agents, and their employees from enforcing the BIA Order against Plaintiff, until this case is resolved. In the event that the Court is unable to act on Plaintiff's application before the September 25, 2025 effective date of the BIA Order, the Court should issue a temporary administrative stay of the BIA Order until it is able to do so.

//
//
//
//
//
//

*[signature block on following page]*

DATED: September 22, 2025              Respectfully Submitted,

Judah J. Ariel (DC Bar No. 995351)[5]
ARIEL LAW
751 Fairmont St. NW #3
Washington, DC 20001
(202) 681-3032
judah@ariel-law.com

/s/ Kristen  Farr
Kristen Farr (DC Bar No. 974953)
THE LAW FIRM OF KRISTEN J. FARR
1325 G St. NW, Suite 500
Washington, DC 20005
(202) 592-5512
kristen@farrlegal.com

*Counsel for Plaintiff Khagendra Gharti-Chhetry*

---

[5] Application for admission pending