**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

KHAGENDRA GHARTI-CHHETRY,                    )
                                             )
                    *Plaintiff,*             )
                                             )          Case No. 1:25-cv-03361
         *v.*                                )
                                             )
BOARD OF IMMIGRATION APPEALS, *et al.,*      )
                                             )
                    *Defendants.*            )
                                             )
———————————————————

**DECLARATION OF JUDAH J. ARIEL IN SUPPORT OF
PLAINTIFF'S EMERGENCY APPLICATION FOR A STAY OF AGENCY ACTION OR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Judah J. Ariel, declare as follows:

1.      I am counsel for the plaintiff in this action. I have personal knowledge of the

matters contained herein, and if called as a witness to testify, I could and would do so

competently.

2.      Exhibit A to this declaration is a true and correct copy of the Board of

Immigration Appeal's September 10, 2025 opinion and order in *Matter of Gharti-Chhetry*.

3.      Exhibit B to this declaration is a true and correct copy of the June 9, 2022 Notice

of Intent to Discipline in *Matter of Gharti-Chhetry*, with the names of R.A. and R.M.M. redacted.

*See* Exhibit A at 2 n.2.

4.      Exhibit C to this declaration is a true and correct copy of the Adjudicating

Official's October 3, 2023 opinion and order in *Matter of Gharti-Chhetry*, with the names of R.A.

and R.M.M. redacted.

5.     Exhibit D to this declaration is a true and correct copy of an excerpt from the Government's Pre-Hearing Brief in *Matter of Gharti-Chhetry*, with the names of R.A. and R.M.M. redacted.

6.     As required by Local Civil Rule 65.1(a), I certify that on September 22, 2025, I provided notice of this application and furnished a copy of the application and the complaint by email to Brian Hudak, Chief of the Civil Division of the U.S. Attorney's Office for the District of Columbia ("USAO-DC"), in accordance with the instructions on the USAO-DC Civil Division's website (https://www.justice.gov/usao-dc/civil-division). Exhibit E to this declaration is a true and correct copy of that email (excluding the attachments).

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 22, 2025, in Washington, District of Columbia.

_____
Judah J. Ariel

# EXHIBIT A

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Khagendra GHARTI-CHHETRY,  D2020-0024
                                                D2021-0079

Respondent

FILED

SEP 1 0 2025

ON BEHALF OF RESPONDENT:  Tyler Maulsby, Esquire

ON BEHALF OF EOIR:  Paul A. Rodrigues, Disciplinary Counsel

ON BEHALF OF DHS:  Toinette M. Mitchell, Disciplinary Counsel

IN PRACTITIONER DISCIPLINARY PROCEEDINGS
On Appeal from a Decision of the Adjudicating Official

Before: Malphrus, Chief Appellate Immigration Judge; Creppy, Appellate Immigration Judge;
Mullane, Appellate Immigration Judge

Opinion by Creppy, Appellate Immigration Judge

CREPPY, Appellate Immigration Judge

In an October 3, 2023, decision, the Adjudicating Official found that the Disciplinary Counsel
for the Executive Office for Immigration Review ("EOIR") and the Disciplinary Counsel for the
Department of Homeland Security ("DHS") met their burden of establishing the factual allegations
and disciplinary charges in the Notice of Intent to Discipline ("NID"), and ordered the respondent's
suspension from practice before the Immigration Courts, Board of Immigration Appeals
("Board"), and DHS, for a period of 90 days.  The respondent timely appeals this decision.  Both
parties submitted briefs on appeal.  The respondent's appeal will be dismissed in part, and
sustained in part.  The respondent will be suspended from practice for a period of 60 days.[1]

Disciplinary proceedings were initiated against the respondent with the filing of an NID on
June 9, 2022, that charged the respondent of professional misconduct stemming from his filing of
deficient appellate briefs before the Board on behalf of two clients (Exh. 1).[2]  For both Count One
(D2020-0024) and Count Two (D2021-0079), the NID alleged that the respondent is subject to

---

[1]  We deny Disciplinary Counsels' request to designate the instant decision for publication.

[2]  The NID and the Adjudicating Official's decision refer to the D2020-0024 matter as Count One,
and the D2021-0079 matter as Count Two.  We will adopt this convention.  We will also refer to
each client by their initials, R.A. and R.M.M., respectively.

D2020-0024
D2021-0079

discipline under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence). For Count One, the NID also alleged that the respondent violated 8 C.F.R. § 1003.102(c) (knowingly or with reckless disregard, making a false statement of material fact or law). The respondent filed a timely answer to the NID and requested a hearing before an Adjudicating Official, which was granted by the Board in an August 15, 2022, decision (Exh. 3).

At the final hearing before the Adjudicating Official on September 26, 2023, both parties agreed to present oral arguments in lieu of an evidentiary hearing and testimony from the respondent (AO at 3, n.2; Tr. at 27). On October 3, 2023, the Adjudicating Official issued a written decision sustaining all disciplinary charges and imposing a 90-day suspension. The respondent timely appealed the Adjudicating Official's decision.[3] The respondent argues, inter alia, that the Adjudicating Official erred in finding that his answer to the NID constituted an admission to the charged conduct (Respondent's Br. at 10). The respondent on appeal also argues that any deficiencies contained in the appellate brief for client R.A. in Count One were inadvertent clerical errors and that he did not fail to address dispositive issues in the appellate briefs for clients R.A. and R.M.M. as alleged, denying, ultimately, that he engaged in any misconduct, or that any misconduct would warrant sanctions beyond public censure (Respondent's Br. at 9-10).

We review the Adjudicating Official's findings of fact for clear error. 8 C.F.R. §§ 1003.1(d)(3)(i), 1003.106(c). We review questions of law, discretion and judgment, and all other issues in appeals, de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c); *Matter of Kronegold*, 25 I&N Dec. 157, 159-60 (BIA 2010). In disciplinary proceedings, Disciplinary Counsels "shall bear the burden of proving the grounds for disciplinary sanctions enumerated in the [NID] by clear and convincing evidence." 8 C.F.R. § 1003.106(a)(2)(iv).

As an initial matter, we discern no legal or clear factual error in the Adjudicating Official's handling of the respondent's answer to the NID (AO at 4; Exh. 3). The respondent has not identified any portion of the Adjudicating Official's decision that would support the assertion on appeal that the Adjudicating Official improperly deemed the respondent's answer to the NID as an admission to any alleged misconduct (Respondent's Br. at 10, 24-25; *see* Respondent's Reply Br. at 4-5). Rather, the Adjudicating Official accurately characterized the contents of the respondent's answer to the NID, expressly recognizing that while the respondent admitted many of the factual allegations, he nevertheless contested each alleged rule violation (AO at 2, 4). Further, the Adjudicating Official's decision clearly demonstrates that he adjudicated each charge on its merits by making clear findings of fact and conclusions of law based on the evidentiary record, rather than relying on any purported or perceived concessions by the respondent of alleged misconduct or rule violations (AO at 5-18).

Disciplinary Counsels set forth two counts of disciplinary charges against the respondent, each involving the respondent's representation of two different clients in their respective appeals before

---

[3] We grant the respondent's motion to accept his April 23, 2024, reply brief, and we have considered the arguments contained therein.

D2020-0024
D2021-0079

the Board. We affirm the Adjudicating Official's decision sustaining the disciplinary charges for Count One, and reverse the Adjudicating Official's decision sustaining the disciplinary charges for Count Two.

We affirm the Adjudicating Official's determination that the disciplinary charges set forth under 8 C.F.R. §§ 1003.102(c) (knowingly or with reckless disregard, making a false statement of material fact or law), (j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence), with respect to Count One (D2020-0024), has been established by clear and convincing evidence (AO at 5-18). We discern no clearly erroneous findings of fact or legal errors that would cause us to disturb the Adjudicating Official's ultimate rulings on the foregoing disciplinary charges against the respondent for Count One.

It is undisputed that following the Board's remand of client R.A.'s case, the respondent submitted a second appellate brief for R.A. that contained numerous false statements, including material factual assertions regarding political party affiliation, and harm and injuries to R.A., that were without any foundation in the record (AO at 3-4, 6-7; Exh. 2 at 157-68). Because the facts asserted in the second appellate brief did not pertain to R.A., the legal arguments that followed did not meaningfully address the relevant facts and legal bases underlying the Immigration Judge's decision in R.A.'s case and were, therefore, inherently deficient (AO at 8-14). While the respondent on appeal minimizes these blunders as a mere "clerical error" and lays blame on a paralegal tasked to print out and file the brief, the errors were extensive, spanning at least 10 pages of the appellate brief and encompassed the bulk of the respondent's factual and legal arguments on the merits (AO at 7-8; Exh. 2 at 159-69). Moreover, as the practitioner who signed the filed brief, the respondent is responsible for its contents, and with his signature he certified that he has conducted an "inquiry reasonable under the circumstances." 8 C.F.R. § 1003.102(j)(1). As found by the Adjudicating Official, "even the most perfunctory final review of the brief before filing should have revealed it to contain factual errors" (AO at 6).

The Adjudicating Official did not clearly err in finding that the respondent failed to perform adequate review of R.A.'s second brief before signing and certifying the hard copy that was filed with the Board, and that the respondent reasonably should have known that the brief contained erroneous, and thus false, statements about material aspects of the respondent's case (AO at 6-9). We agree that the respondent failed to exercise proper competence and diligence in preparing the second brief and that he engaged in conduct that was frivolous and prejudicial to the administration of justice or that undermined the integrity of the adjudicative process (AO at 9-11, 13-14). This is particularly so considering that the respondent previously received a disciplinary warning letter involving similar misconduct (AO at 13, n.13). The Adjudicating Official properly sustained the disciplinary charges under 8 C.F.R. §§ 1003.102(c) (knowingly or with reckless disregard, making a false statement of material fact or law), (j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence), with respect to Count One (D2020-0024), as supported by clear and convincing evidence (AO at 5-14).

D2020-0024
D2021-0079

With regard to Count Two (D2021-0079), involving the respondent's representation of client R.M.M. on appeal, we disagree with the Adjudicating Official that Disciplinary Counsels satisfied their burden of proving the charged disciplinary grounds under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence), by clear and convincing evidence. Accordingly, we reverse and vacate this aspect of the Adjudicating Official's decision.

All of the foregoing disciplinary charges are based on the respondent's filing of an appellate brief on behalf of R.M.M. that challenged the Immigration Judge's adverse credibility determination only, and not the Immigration Judge's alternative findings on the merits of R.M.M.'s applications for relief from removal (AO at 14-16; Exh. 1 at 13-21). The Adjudicating Official's decision sustaining all the disciplinary charges are based on the overarching premise that the respondent's appellate brief "needed to meaningfully address each independent dispositive basis for the underlying denial" of the applications for relief from removal (AO at 15, 17-18).

However, while the respondent has the obligation to provide reasonably effective assistance, he is not necessarily obligated to raise every conceivable issue possible and retains "wide latitude . . . in making tactical decisions" on his client's behalf. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Courts have recognized that appellate counsel ought to be accorded "significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." *Burket v. Angelone*, 208 F.3d 172, 189-90 (4th Cir. 2000). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). Strategic decisions by counsel on appeal may also be informed or influenced by choices made, or information supplied by, the client himself or herself, or other reasonable factors. *Strickland*, 466 U.S. at 691.

The respondent's responses to Disciplinary Counsels' "preliminary inquiry"—where he, belatedly, asserted errors in the Immigration Judge's alternative findings on the merits without explaining why these errors were not raised on appeal—are concerning (Exh. 1 at 3-5). However, to sustain the disciplinary charges, there needs to be a likelihood that the respondent would have prevailed had these arguments been made. However, it is not clear to us that R.M.M. would have prevailed had these arguments been made on appeal. Disciplinary Counsels have not alleged nor shown, nor did the Adjudicating Official find, that these arguments would have changed the outcome of R.M.M.'s appeal before the Board. As such, we do not find that the record contains clear and convincing evidence that would support the conclusion that the respondent's strategic decision not to make these otherwise unsuccessful arguments fell outside the "wide range of professionally competent assistance," or outside the bounds of his professional and ethical duties to R.M.M., and thus, violative of the disciplinary grounds under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence), charged in the NID. *See id.* at 690.

Because clear and convincing evidence established that the respondent, in Count One, violated multiple categories enumerated in 8 C.F.R. § 1003.102, imposition of disciplinary sanctions is

D2020-0024
D2021-0079

appropriate in the instant case. *See* 8 C.F.R. §§ 292.3(a)-(b), 1003.101(a), 1003.102. After considering the aggravating and mitigating factors in the instant case, as well as Disciplinary Counsels' recommendation of a 6-month suspension and the respondent's recommendation of a "private reprimand at most," the Adjudicating Official ultimately ordered the respondent suspended for a period of 90 days (AO at 22; *see* Respondent's Pre-Hearing Br. at 34, May 18, 2023). The respondent on appeal opposes this sanction as "unnecessarily punitive" and argues that his misconduct was not "intentional," public censure is an appropriate sanction that would serve the public interest and is in accord with American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") (Respondent's Br. at 9, 11-14)

In determining the kind and degree of sanction to be imposed, we agree that the ABA Standards provides an instructive framework or guideline, but it is not binding on the adjudicator who maintains flexibility in selecting the appropriate sanction, depending on the facts of a given case (AO at 18). *Matter of Gupta*, 28 I&N Dec. 653, 657 (BIA 2022). In determining the appropriate sanction, we are also mindful that the primary purpose of any discipline imposed is to serve the public interest, and not to punish the attorney. *See* 8 C.F.R. §§ 292.3(a)(1), 1003.102; *see generally Matter of Solomon*, 16 I&N Dec. 388, 408 (BIA 1977; A.G. 1977) (Appleman, concurring).

While we accord respectful consideration to the Adjudicating Official's findings and conclusions, we review the Adjudicating Official's conclusions of law, judgment and discretion de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c). The Board has the authority to modify the sanction initially ordered by the Adjudicating Official if warranted. *See Matter of Gadda*, 23 I&N Dec. 645, 650 (BIA 2003), as amended (holding that the Board has authority to increase the level of disciplinary sanction initially imposed by an adjudicating official against an attorney).

The respondent argues that in a case where a practitioner acted with negligence, the ABA Standards recommend a reprimand for each of the disciplinary grounds he was found to have violated, and not a suspension (Respondent's Br. at 12). The respondent's piecemeal and selective approach is unpersuasive, as it does not address all his violations in totality, and minimizes the harm resulting from multiple violations and the context in which they occurred (Respondent's Br. at 12). *See generally* ABA Standards, Theoretical Framework (recognizing that "[t]he standards do not account for multiple charges of misconduct"), 4.42 (suspension is generally appropriate when a lawyer engages in a pattern of neglect that causes injury or potential injury to a client). Moreover, in arguing that a public reprimand is the appropriate sanction in his case, the respondent neglects to consider the aggravating factors, which the respondent largely does not dispute, present in his case that lead to sanctions beyond a public reprimand, even considering arguendo that this is the baseline sanction recommended by the ABA Standards for some of his violations.

We discern no clear factual error in the Adjudicating Official's identification of the aggravating and mitigating factors presented in this case, although we have considered them only as they relate to the violations in his appellate representation of R.A. in Count One (AO at 18-22). In summary, the Adjudicating Official found that the respondent's prior disciplinary history and the vulnerability of his client, R.A., constituted serious aggravating factors, that the respondent's long experience practicing law was a considerable aggravating factor, that the pattern of misconduct

D2020-0024
D2021-0079

and the fact that he violated multiple interrelated provisions of the regulations constituted a moderate aggravating factor, and that the respondent's refusal to acknowledge the wrongfulness of his conduct was a relatively moderate aggravating factor (AO at 19-20).

On the other side of the ledger, the Adjudicating Official found that the respondent's voluntary disclosures and his cooperation during these proceedings presented a considerable mitigating factor; that the lack of a dishonest motive, evidence of his good character and reputation in the community, his status as a private practitioner, and the fact that the conduct at issue is not "of the most serious nature possible" constituted mitigating factors; and that the respondent's written expressions of remorse and acceptance of responsibility carry some weight as a mitigating factor (AO at 20-22).

Exercising our de novo review of questions of law and discretion, we conclude that the appropriate disciplinary sanction that will protect members of the public, uphold the integrity of the legal system, and deter similar misconduct, is the respondent's suspension from practice before the Immigration Courts, the Board, and DHS, for a period of 60 days.

The respondent's sanctionable violations arose from an egregiously deficient appellate brief filed on behalf of R.A. As the Adjudicating Official found, while the respondent's conduct is not particularly "severe," it nevertheless harmed R.A., a vulnerable client who put his trust in the respondent to diligently and competently represent his vital interests before the Board (AO at 18-21). An appellate brief that misstates fundamental aspects of a client's case because it contains information pertaining to an unrelated individual are serious errors that, particularly in light of the respondent's prior disciplinary history that involved the same or similar misconduct (with the same or similar deflection of blame on a paralegal), warrant a period of suspension (AO at 14, 18-21; Exh. 1 at 21). In considering the nature of his violations, and in balancing the aggravating and mitigating factors presented, we conclude that a period of suspension of 60 days adequately serves the purpose of protecting public interest. The following orders will be entered.

ORDER: The respondent's appeal of the Adjudicating Official's decision concerning the disciplinary charges under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (incompetence), and (q) (failure to act with reasonable diligence), for Count One (D2020-0024), is dismissed.

FURTHER ORDER: The respondent's appeal of the Adjudicating Official's decision concerning all of the disciplinary charges for Count Two (D2021-0079) is sustained.

FURTHER ORDER: The respondent is suspended from practice before the Board, the Immigration Courts, and DHS for a period of 60 days, effective 15 days of this order, pursuant to 8 C.F.R. § 1003.106(c).

FURTHER ORDER: The respondent may petition the Board for reinstatement to practice pursuant to the requirements set forth in 8 C.F.R. § 1003.107(b), and the additional condition set forth in this order.

6

007

D2020-0024
D2021-0079


FURTHER ORDER: The respondent is directed to promptly notify, in writing, any clients with cases currently pending before the Board, the Immigration Courts, or DHS that she has been suspended from practicing before these authorities.

FURTHER ORDER: The respondent shall maintain records to evidence compliance with this order.

FURTHER ORDER: The Board directs that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of DHS.

008

# EXHIBIT B

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

|  |  |  |  |
|---|---|---|---|
| In the Matter of | ) | | |
| | ) | | |
| KHAGENDRA GHARTI-CHHETRY, | ) | Disciplinary Case Nos. | D2020-0024 |
| | ) | | D2021-0079 |
| Respondent. | ) | | |

## NOTICE OF INTENT TO DISCIPLINE

The Disciplinary Counsel for the Executive Office for Immigration Review (EOIR) and the Disciplinary Counsel for the Department of Homeland Security (DHS) initiate disciplinary proceedings against the above-named practitioner pursuant to 8 C.F.R. §§ 292.3(e)(1) and 1003.105(a). A preliminary inquiry revealed that sufficient evidence exists to warrant charging Respondent with professional misconduct. Pursuant to 8 C.F.R. § 1003.102, the imposition of discipline on Respondent in the form of a 6-month suspension from practice before the Board of Immigration Appeals (Board), the Immigration Courts, and DHS is in the public interest because Respondent engaged in unprofessional conduct.

## Preliminary Inquiry Report

On or about August 6, 2019, and November 22, 2019, the EOIR Disciplinary Counsel received complaints from the Board concerning Respondent's appellate briefs in *Matter of* ███ ███*/* and *Matter of* ███ ██ ██████. On February 25, 2021, and on July 26, 2021, the EOIR Disciplinary Counsel initiated two preliminary inquiries in case numbers D2020-0024 and D2021-0079 based on the complaints and requested Respondent's response to the allegations. On or about April 23, 2021, and September 26, 2021, Respondent submitted responses to the allegations in each case.

In the response to the preliminary inquiry in D2020-0024, Respondent denied that he engaged in any misconduct and asserted that his "representation of Mr. ███s case was more than sufficient and that [he] handled [the] case diligently, competently, and effectively." Respondent stated in his defense:

> Mr. ███ consistently gave the same testimony regarding his political opinion in his [credible fear interview], during my preparation of his statement, during the preparation of his updated statement, and again during the merits hearing before the court in his case. When I asked him, Mr. ███ repeatedly stated that he did not know about his father's political activities except that he worked for the Jatiya party. The Awami supporters harassed and beat Mr. ███ because they wanted him to join the party. Now, it appears that Mr. ███ is alleging the lack of attorney preparation so that he can add a new claim of imputed political opinion

1

that, due to his father's political activities, the Awami League supporters harmed him. This is clearly a false statement of Mr. ███ If anyone, including a new attorney or person has assisted him in making such a claim for Mr. ███ it would be considered a sojourn of Mr. ████ lie and perjury.

Respondent's response did not address or explain why under the circumstances he presented above: (1) he filed for asylum and related relief on behalf of Mr. ████ (2) he filed the initial appeal and argued that Mr. ████ was targeted based on actual or imputed political opinion and was eligible for asylum and related relief; and (3) he filed a second appeal brief claiming that Mr. ████ was eligible for asylum and related relief.

With regard to the second appeal brief filed in Mr. ████ case, Respondent stated:

The [first] brief filed was not sloppy. As there was already one brief filed in this case, we decided to re-submit that brief, but with minor changes in the second brief. During this process, unbeknownst to me, a few pages were inadvertently merged from some unrelated source due to a clerical error of my staff during the merging of the two briefs. The record shows that there were no significant changes in the facts and legal arguments between the first and second brief, except that, inadvertently, some pages were mixed up at the end of the second brief. I expected that the BIA would rely on the first brief because this case was certified to decide the merits of the already pending appeal. There was no new issue to be argued on at the time of the second brief. Therefore, there was no prejudice to Mr. ████ as I expected that the BIA would rely on the first brief and the legal arguments raised therein. . . .

**The Second BIA Brief meets the minimum standard of competence:** The Second BIA Brief makes a series of effective arguments on behalf of Mr. ████ Specifically, it lays out a detailed account of the relevant facts of Mr. ████ story and his asylum claim. It analyzes the findings of facts and laws made by the IJ. It also effectively argues why each of the Judge's findings was wrong and cites relevant case law. There were inadvertent errors and some mix-up in pages, but it certainly does not fall short of a competent standard.

(emphasis in original). Respondent's response further stated:

The second brief was an identical re-submission of the first brief (as stated in the opening paragraph of the second brief). Mr. ████ alleges there were errors in this brief, but he does not outline the details of errors. There was nothing new to re-argue in the second brief, and the BIA should have decided this case based on arguments raised in the first brief. Even if there were inadvertent errors in the second brief, the minimum standard for a brief was met and there was no prejudice to Mr. ████

Respondent's response did not address that the "Argument" section of the second brief did not relate to Mr. ████ case and included facts and arguments that "appear to have been

2

inadvertently extracted from a filing in unrelated proceedings," as the Board noted in its decision. The response did not address that the second brief asserted that the case arose within the jurisdiction of the United States Court of Appeals for the Second Circuit and predominantly cited caselaw from that circuit, rather than the United States Court of Appeals for the Seventh Circuit, which had jurisdiction over Mr. ████ case.

In response to the preliminary inquiry related to D2021-0079, Respondent stated that he "represented Mr. ████ competently, diligently, and effectively," and he denied that he engaged in any misconduct. Respondent addressed Immigration Judge Brandon Hart's finding that Mr. ████ persecution was not based on a political opinion by stating in part:

> IJ Hart's finding that Mr. ████ did not provide a basis for past persecution based on political opinion was erroneous. The [Awami League] cadres persecuted Mr. ████ on account of his *imputed* political opinion through his father's membership and position with the [Bangladesh Nationalist Party (BNP)]. A myriad of evidence and testimony by Mr. ████ supports that the harm was caused by political motivation, as there was no other reason to cause harm to [Mr. ████ and his mother. Mr. ████ testified that his father was the General Secretary of the BNP and that his position and activity in the BNP led to the [Awami League] cadres to harass and attack his father on multiple occasions, until he was found and kidnapped in 2019. Mr. ████ further testified that when his father ran away into hiding, the [Awami League] cadres began looking for him. There, they confronted Mr. ████ and his mother, threatening and assaulting them to find out the father's political activities for opposing BNP party. Mr. ████ was attacked at his home and hospitalized with severe injuries, including dousing gasoline on his arm. Ultimately, Mr. ████ mother was beaten up and she later died from those injuries caused by the [Awami League] cadres, who were taking revenge for his father's politics.
>
> At that point, Mr. ████ was not left with many options as the [Awami League] cadres continued to persecute [him] on account of his father's political activities. The [Awami League's] main goal was to persecute his family due to his father's political opinion. Consequently, it is clear that Mr. ████ established past persecution based on imputed political opinion by the [Awami League] cadres inflicting torture based on his father's political opinion as a member and General Secretary of the BNP, and nothing else.
>
> Nowhere in the records does it show that the Respondent and his mother were against his father's political activities. When not deliberately expressed, political opinions can be inferred from someone's behavior, associations, namely family members, or characteristics – at times even mistakenly. Such imputed political opinions can form the basis for political persecution and thus, asylum. IJ Hart clearly made an error by overlooking this nexus between the father's political activities and [Mr. ████] persecution by the [Awami League] cadres due to his father's politics. Therefore, in this case there was a clear basis for asylum and was within the protected grounds. My representation was based on his

3

meritorious and viable claim for asylum.

Respondent's response did not address why any of the above arguments regarding political opinion were not included in his appeal brief.  He also did not address the Board's finding that he had not "meaningfully challenged" on appeal Judge Hart's determination that Mr. ███████ did not suffer persecution based on a political opinion.

With regard to Judge Hart's finding that Mr. ███████ could safely relocate in Bangladesh to avoid future harm, Respondent stated:

> Similarly, the [Awami League] cadres did not stop persecuting [Mr. ███████] father and in the absence of his father, the [Awami League] choose [sic] to persecute [Mr. ███████ for the same reason. [Mr. ███████ testified that he tried to relocate to his relative's house and but [sic] when he returned home, the [Awami League] cadres still persecuted him for his father. When his father ran away, on July 17, 2017, Mr. ███████s mother was victimized.  She was beaten up by [Awami League] cadres and died from her injuries.  Her death was caused due to the [Mr. ███████s] father's political membership.  [Mr. ███████ then moved to his paternal uncle's house where he testified, he continued to face problems.  Mr. ███████ was in hiding, not attending school and had no sources of learning.  He was subjected to child labor, forced to work by his injured hand and he could not leave.  Somehow, his brother rescued him to leave the country.  Accordingly, it was clear that relocation was not viable, and the record supports that [Mr. ███████ had a reasonable fear of future persecution if he returned back to Bangladesh.

> . . . .

> [Mr. ███████], as young boy, moved to different locations to avoid persecution without education and was forced to perform child labor by those who gave him shelter, and finding no alternative, he had to leave his home country after his mother was beaten to death.  The records do not support the IJ's finding that [Mr. ███████ "successfully avoided interaction with the [Awami League] cadres."  Instead, the IJ speculated that [Awami League] cadres were no longer interested in persecuting [Mr. ███████ who had reasonable fear of future persecution as the records do not show that [Awami League] cadres stopped persecuting his father and [Mr. ███████

> Both IJ Hart and the BIA, were biased and made conclusory analysis to deny Mr. ███████s asylum claim.  Notably, the BIA failed to outline strong, credible reasons to meaningfully challenge IJ Hart's flawed decision or his analysis, which, were clear and evident.  Therefore, the BIA further erred by affirming IJ Hart's decision to deny Mr. ███████s asylum without meaningfully considering [Mr. ███████] certain key elements for claim of asylum that Mr. ███████ has met as outlined above.

4

Respondent's response did not address why any of the above arguments regarding internal relocation were not included in his appeal brief. He also did not address the Board's finding that he had not "meaningfully challenged" on appeal Judge Hart's determination that Mr. ███ was able to internally relocate in Bangladesh to avoid persecution.

Based on the record and Respondent's responses to the preliminary inquiries, sufficient prima facie evidence exists to warrant charging Respondent with professional misconduct as set forth in 8 C.F.R. § 1003.102. As detailed below, Respondent has previously engaged in similar misconduct related to an appeal brief. Respondent's conduct has evolved into a pattern of drafting and filing briefs that include factual misstatements and erroneous or nonexistent legal analyses. The briefs also fail to address dispositive issues that make the appeal briefs facially inadequate. Respondent's conduct is unprofessional, wastes valuable EOIR time and resources, and impairs the ability of Respondent's clients to fully present their cases. Respondent's responses make clear that he is unable to understand the nature of his misconduct and that he will continue to engage in the misconduct in the future without discipline.

### <u>Factual Allegations and Disciplinary Charges</u>

### Count One – D2020-0024

 — A209-282-592

1.  Respondent and other attorneys from his firm represented Mr. ███ before the Immigration Court with respect to applications for asylum, withholding of removal, and protection under the Convention Against Torture. On June 13, 2017, Immigration Judge Virginia Perez-Guzman denied Mr. ███s applications and ordered him removed to Bangladesh.

2.  Judge Perez-Guzman denied the applications for relief because Mr. ███ did not provide "sufficient corroboration to carry his burden of proof." In the alternative, Judge Perez-Guzman found that Mr. ███ was not eligible for asylum because the harm he suffered did not constitute persecution and that even if it rose to the level of persecution, "it was not on account of a protected ground."

3.  On or about June 20, 2017, Respondent appealed the decision, and on or about September 15, 2017, Respondent filed a brief in support of Mr. ███s appeal.

4.  On November 20, 2017, based on new evidence on appeal, the Board remanded Mr. ███s case for the Immigration Judge to "make any necessary factual findings as to [Mr. ███]¹ age and determine if [Mr. ███ should be allowed to apply for asylum with the USCIS under the TVPRA, in the first instance." The Board did not address the merits of Mr. ███s appeal regarding the denial of the applications for relief.

---

¹ To avoid confusion with the Respondent in this matter, in quotations from the underlying case materials that refer to Mr. ███ as "respondent," his name has been substituted in brackets.

5.  On August 28, 2018, Immigration Judge Robin J. Rosche issued a written order, stating that parties had informed her that United States Citizenship and Immigration Services (USCIS) had declined to take jurisdiction over Mr. ██████'s application and that the parties wished that the case be returned to the Board to adjudicate Mr. ██████'s appeal on the merits.  Judge Rosche reinstated Judge Guzman-Perez's June 13, 2017 decision and certified the case to the Board for adjudication of the appeal.

6.  The Board issued a new briefing schedule, for which Respondent was granted an extension on November 1, 2018.  On or about November 12, 2018, Respondent filed a second brief with the Board in Mr. ██████'s case.

7.  Respondent's second brief incorrectly stated on the first page that "[o]n August 28, 2017, the Immigration Judge Virginia Perez-Guzman . . . denied [Mr. ██████] application for relief[] and entered the removal order."  Judge Perez-Guzman's decision was issued on June 13, 2017.

8.  Respondent's second brief incorrectly stated on the first page that "[o]n June 20, 2016, [Mr. ██████ through his counsel filed an appeal of the IJ's decision to the Board."  Respondent appealed the decision on or about June 20, 2017.

9.  Respondent's second brief incorrectly stated on page 4 that the individual hearing occurred on "June 13, 2014."  Respondent's first brief made the same error.  The individual hearing occurred on June 13, 2017.

10.  Respondent's first and second briefs were identical for the following sections of the brief: "Statement of the Case;" Statement of Facts;" "IJ Decision;" and "Summary of the Argument."

11.  Respondent's first and second briefs included a section for "Argument" with a subsection entitled, "The IJ Abused Her Discretion in Denying [Mr. ██████] Motion for Continuance."

12.  Respondent's first and second briefs began the above-referenced section with the following paragraph:

    An IJ has the discretion to grant a continuance for "good cause shown," see 8 C.F.R. § 1003.29.  The IJ is required to give "rational explanation," for the denial of motion for continuances.  *See Calma v. Holder*, 663 F.3d 868, 878 (7th Cir. 2011).  This Board held that motion for continuance should be granted when "good faith effort" was made to [sic] "ready to proceed [with the case] and that any additional evidence [the alien] seeks to present is probative, noncumulative, and significantly favorable to the alien."  *See Matter of Sibrun*, 18 I&N Dec. 354, 356 (BIA 1983).  An IJ's decision denying a motion for a continuance will not be reversed by the BIA unless the movant "establishes that [the] denial caused him actual prejudice and harm and materially affected the outcome" of the

6

case. *Id.* at 356-57.

13. Respondent's second brief had no additional statements or argument in the subsection entitled, "The IJ Abused Her Discretion in Denying [Mr. █████] Motion for Continuance," after the above quote from paragraph 12 above.

14. Respondent's second brief included a subsection under the "Argument" section entitled, "The Law of Asylum, Withholding of Removal, and CAT Compels the Conclusion that [Mr. █████ Sustained His Burden of Proof to Show Eligibility for All Requested Relief." In that subsection, Respondent provided the following circuit court citations:

- *Zubeda v. Ashcroft*, 333 F.3d 463 (3d Cir. 2003)
- *Diallo v. INS*, 232 F.3d 279, 284 (2nd Cir. 2000)
- *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir. 1999)
- *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003)
- *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004)
- *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004)
- *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008)
- *Darinchuluun v. Lynch*, ___ F.3d ___ (7th Cir. 2015)[2]
- *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004)
- *Balogan v. Ashcroft*, 374 F.3d 492, 500 (7th Cir. 2004)
- *Passi v. Mukasey*, 535 F.3d 98, 102 (2nd Cir. 2008)
- *Hernandez v. INS*, 258 F.3d 806, 814 (8th Cir. 2001)
- *Kyaw Zwar Tun v. United States INS*, 445 F.3d 554, 563 (2d Cir. 2006)
- *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 153 (2nd Cir. 2003)
- *Cao He Lin v. United States Dept of Justice*, 428 F.3d 391, 401 (2d Cir. 2005)
- *Ivanishvili v. United States DOJ.*, 433 F.3d 332, 341 (2nd Cir. 2006)
- *Manzur v. United States Dep't of Homeland Sec.*, 494 F.3d 281 (2nd Cir. 2007)
- *Poradisova v. Gonzales*, 464 F.3d 70, 79 (2nd Cir. 2005)
- *Edimo-Doualla v. Gonzales*, 464 F.3d 276, 283 (2d Cir. 2006)
- *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 n.7 (11th Cir. 2007)
- *Agbor v. Gonzales,* 487 F.3d 499 (7th Cir. 2007)
- *Pavlova v. INS*, 441 F.3d 82, 91 (2nd Cir. 2006)

Mr. █████s case arose out of the Chicago Immigration Court, which is in the jurisdiction of the United States Court of Appeals for the Seventh Circuit.

15. On page 13 of Respondent's second brief, in the subsection entitled "The IJ Erred in Finding that [Mr. █████ Failed to Provide 'Meaningful Corroboration' in this Case," Respondent stated that the "IJ held that [Mr. █████ did not corroborate his claim because the letter from the [Bangladesh Nationalist Party (BNP)] did not specify some of the testimony given by [Mr. █████ Respondent stated that "[t]he BNP letter corroborates that [Mr. █████ is an 'active' member of BNP; that [Mr. █████ was

---

[2] The official citation is *Darinchuluun v. Lynch*, 804 F.3d 1208 (7th Cir. 2015).

actively engaged in the party programs and as a result of his active participation in BNP, [Awami League] members took revenge upon him by beating him."

16.    No decision, evidence, or any other information in the record of Mr. ███████s case supported Respondent's statements in the brief, as described in paragraph 15 above.

17.    On page 14 and 15 of Respondent's second brief, in the subsection entitled, "The IJ Erred in Finding that [Mr. ███████ Failed to Provide 'Meaningful Corroboration' in this Case," Respondent stated that the "IJ also held that [Mr. ███████ failed to corroborate the incident of July 10, 2013" because "[Mr. ███████ did not proffer letter [sic] from the driver, pictures of the shot car and the medical record was 'one page documents [sic] that indicates that he was a victim of an assault." Respondent stated that "[Mr. ███████ submitted medical records from the said incident that show, in addition to the 'physical assault,' the medication prescribed and the nature of the injuries, *viz.* fracture of ring finger, swelling of toe and bruises and swelling in different parts of the body."

18.    No decision, evidence, or any other information in the record of Mr. ███████s case supported Respondent's statements in the brief, as described in paragraph 17 above.

19.    On page 16 of Respondent's second brief, in the subsection entitled, "The IJ Erred in Holding that [Mr. ███████ Failed to Establish Eligibility of Asylum as a Matter of Law," Respondent referenced the United States Court of Appeals for the Second Circuit as the circuit court "under whose jurisdiction this case falls." Mr. ███████s case arose out of the Chicago Immigration Court, which is in the jurisdiction of the United States Court of Appeals for the Seventh Circuit.

20.    On page 17 and 18 of Respondent's second brief, in the subsection entitled, "The IJ Erred in Holding that [Mr. ███████ Failed to Establish Eligibility of Asylum as a Matter of Law," Respondent stated the following:

> [Mr. ███████ clearly testified that he was brutally beaten with sticks on July 10, 2013 and he suffered a broken finger and swelling and bruises. This is corroborated by the medical record. *See* Exhibit 6, Tab G of ROP. [Mr. ███████ also testified by [sic] he was attacked on February 21, 2014 and also on January 1, 2015. During the attack he lost consciousness as a result of the bleeding. Tr. at 73. He sought treatment at the Chatkhil Maa-Shishu and General Hospital for six days. Tr. at 75; *see also* Exhibit 6, Tab H, p. 23-24 of ROP. [Mr. ███████ was also threatened verbally on the streets on June 20, 2013 and October 3, 2013. Tr. at 52, 71. The [Awami League] members also threatened his parents and vandalized his house on one occasion. Tr. at 64-65, 77, *see also* [Mr. ███████] parents [sic] affidavits that corroborates [sic] his testimony at Exhibit 6, Tabs B and C of ROP. . . The IJ utterly failed to consider all these incidents cumulatively and moreover the fact that [Mr. ███████ was shot at is grave.

> (Footnote omitted).

8

21.   No decision, evidence, or any other information in the record of Mr. ███████s case supported Respondent's statements in the brief, as described in paragraph 20 above.

22.   On page 19 and 20 of Respondent's second brief, in the subsection entitled, "The IJ Erred in Holding that [Mr. ███████ Failed to Establish Eligibility of Asylum as a Matter of Law," Respondent stated:

> [Mr. ███████ has clearly testified that the Awami League members have identified him as a BNP because he is involved actively in BNP work. Tr. at 89. He stated that the President was not harmed because "he did not work like me on the street, he gave directions and I implemented them." *Id.* The BNP letter corroborates that [Mr. ███████ is actively involved in their programs. *See* Exhibit 6, Tab I, p. 25. The evidence shows that he was targeted initially by a verbal threat, which continued to escalate into physical assaults. The [Awami League] members even went to his home and threatened his parents and vandalized his home. . . The fact that [Mr. ███████ lived in hiding in a warehouse for six months does not undermine his claim that he will be targeted by [Awami League] members, as concluded by the IJ.

23.   No decision, evidence, or any other information in the record of Mr. ███████s case supported Respondent's statements in the brief, as described in paragraph 22.

24.   On page 20 and 21 of Respondent's second brief, Respondent had a subsection entitled, "The IJ Erred in Finding that [Mr. ███████ Failed to Show that the Government of Bangladesh is Unable or Unwilling to Assist Him." In that subsection, Respondent stated:

> Here, the IJ found that [Mr. ███████ was harmed by private actors—[Awami League] members—and he failed to show that police would not take reports against individuals who are supporters of [Awami League]. Tr. at 10-11. . . .
>
> [Mr. ███████ testified that on two occasions after he was attacked and hospitalized, he went to the police station to file complaint [sic] against the [Awami League] members and during both instances the police refused to take any report. Tr. at 63, 76.

25.   No decision, evidence, or any other information in the record of Mr. ███████s case supported Respondent's statements in the brief, as described in paragraph 24.

26.   Respondent's second brief included a subsection on page 22 entitled, "[Mr. ███████ Sustained His Burden to Show Eligibility for Withholding of Removal Under the Act," which stated:

9

Withholding removal is mandatory once "the Attorney General determines that [the] alien's life or freedom would be threatened" because of a protected trait or activity. 8 U.S.C. § 1233(b)(3)(A). To obtain such relief, an alien must establish a "clear probability," i.e., that it is more likely than not, that he/she would suffer persecution. *See INS v. Stevic*, 467 U.S. 407, 429-30, 104 S.Ct. 2489 (1984).

Here, by credible, detailed, and internally consistent evidence, [Mr. ███████ has shown that it is more likely than not that his life or freedom would be threatened in Bangladesh. He clearly suffered past persecution and has a well-founded fear of future persecution if returned to Bangladesh. As he testified, since he is the target of the Awami League members, they would kill him if they find him in Bangladesh. Tr. at 78. Thus, it is clearly probable that the Awami League would persecute [Mr. ███████ if he returned. Thus, in light of these facts, the Attorney General must grant withholding of removal. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(1).

27.  Page 78 of the Mr. ███████ hearing transcript does not support the statement that the Awami League "would kill him if they find him in Bangladesh," as described in paragraph 26 above.

28.  Page 84 of Mr. ███████ hearing transcript, which was cited in an identical section in Respondent's initial brief, supports the statement that the Awami League "would kill him if they find him in Bangladesh," as described in paragraph 26 above.

29.  Respondent's second brief included a section "VI" entitled, "Prayer for Relief." In that section, Respondent asked the Board to "VACATE the IJ's order of removal dated June 17, 2017." Judge Perez-Guzman's decision was issued on June 13, 2017.

30.  Respondent's first brief included a footnote at page 18 addressing Judge Perez-Guzman's finding that Mr. ███████ harm was not on account of a protected ground, which stated:

The IJ also stated in a passing manner that [Mr. ███████ harm "was not because of his political opinion or imputed political opinion." Decision at 14. The Board should not affirm this finding because the IJ did not provide any reasoning behind this finding. The record does indicate that when [Mr. ███████ was first approached by [Awami League] members they had inquired about his father and thereafter started to give him problems. Tr. at 90-91. Therefore, actual or imputed political opinion appears to be at least one central reason for targeting [Mr. ███████

31.  At the June 13, 2017 hearing, following Mr. ███████ testimony and before Judge Perez-Guzman issued her oral decision, she summarized her forthcoming oral decision and stated the following, which was recorded at pages 107 and 108 of the hearing transcript:

I didn't hear any testimony that these individuals asked you anything

10

about your father or what party he belonged to, but, in fact, they were just trying to get you to join the Awami League, and that's why they kept stopping you on at least three occasions, and you said that they were harassing you since 2012 until you left in August 2015 to go live with your aunt in Dhaka. They basically wanted to grow their numbers in their political party – or you say their political party. But it wasn't on account of anything to do with your father, it just had to do that they wanted to recruit you into their organization. Taking your age into consideration at the time that these incidents occurred, they still rise to the level of harassment, and this is because they were just trying to recruit you into their organization, not because you opposed them but because you didn't want to join them. You didn't really say why. In fact, your mother told you in 2010, '10, don't worry about them. Don't let them bother you. You kept going to school, walking past them, and even after you were injured, you kept going to school, but you claimed that you would walk faster so they wouldn't see you. But you described three incidents, sir; in two, they grabbed your collar, they slapped you, you went home; last occasion, August 2015, you said that they said this is your last chance to join the Awami League, or they would kill you. That's when your mother sent you over to Dhaka. You lived in Dhaka basically from August 2015 to May 2016, without being harmed, or threatened, or harassed by these individuals. You claim that these individuals came to your mother's home on or about March 2017 looking for you or inquiring about you, and your sister said that you were not there, and then they attempted to rape your sister in that incident, broke her hand. She went to the hospital, and then your mother filed a police report. So, sir, I'm going to find that the harm that you suffered was not on account of a political opinion, it is basically because they wanted to recruit you into the organization so they would have larger numbers in their organization, the Awami League.

32.  Respondent's second brief did not address, challenge, or argue against Judge Perez-Guzman's finding that Mr. ███████ failed to establish that any harm or alleged persecution suffered was on account of a protected ground.

33.  On January 30, 2019, the Board issued a decision, dismissing Mr. ███████s appeal and denying Respondent's motion to reopen.[3] The Board found that Mr. ██████s "lack of credibility and insufficient corroboration prevent him from meeting his burdens of proof for asylum and withholding of removal" and that "he has not met the heavy burden of establishing that he will be subjected to torture."

34.  In dismissing the appeal, the Board's decision noted:

---

[3] On remand, Respondent submitted supplemental evidence in support of Mr. ██████s applications for relief, and Judge Rosche did not consider the evidence due to the limited nature of the remand. The Board construed the supplemental evidence as a motion to remand but denied the motion in its decision.

> The respondent's appellate brief describes incidents that were not raised at his hearing (including, inter alia, being shot while riding in a car), cites to evidence that is not in the record, makes erroneous transcript citations, and references factual findings the Immigration Judge did not make (Respondent's Appeal Br. at 13-21). The brief also erroneously alleges that this case arises within the jurisdiction of the United States Court of Appeals for the Second Circuit (Respondent's Appeal Br. at 16). These portions of the respondent's brief appear to have been inadvertently extracted from a filing in unrelated proceedings.

35. On or about April 29, 2019, the Board received Mr. ███████s pro se motion to reopen, alleging that Respondent provided him with ineffective assistance of counsel. He stated:

> The result of this ineffective assistance of counsel is that the Immigration Judge received inadequate information about my situation, and the Judge also perceived inconsistencies in my testimony that were not cleared up at the merits hearing. The result was that all forms of relief were denied, in significant part based on an adverse credibility finding. The brief filed for my appeal was poorly prepared and therefore the BIA did not have a clear enough picture of the errors to overturn the IJ's negative credibility determination or recognize the strengths of my asylum case.

Specifically regarding the appeal brief, Mr. ██████ stated:

> The appeal brief filed by my attorney was sloppy and careless and as a result it harmed rather than helped my case. For example, my attorney copied and pasted into the brief some irrelevant text from one or more unrelated cases. This substandard work was noted by the BIA Appeal Judge, and it contributed to the BIA negative ruling on my appeal.

36. On August 6, 2019, the Board granted Mr. ██████s pro se motion to reopen. In finding that it appeared that "counsel's representation of [Mr. ██████ was deficient, and that counsel's handling of [Mr. ██████] case resulted in the denial of a full and fair hearing on the merits of his persecution and torture claims," the Board stated:

> Further, we note that at [Mr. ██████] merits hearing, the Immigration Judge expressed dissatisfaction with the attorney's lack of preparation and the failure to provide corroborating evidence, even though the proceedings had been continued to enable the collection of such corroborating evidence (Tr. at 39, 41, 44-45). With regard to the attorney's handling of [Mr. ██████] appeal, we noted in our prior order that [Mr. ██████ brief contained numerous errors, and we concluded that portions of the brief appeared to have been inadvertently extracted from a filing in unrelated proceedings.

12

37.    Based on the conduct alleged in Count One above, Respondent has engaged in the following misconduct:

    a.    knowingly or with reckless disregard made a false statement of material fact or law, or willfully misled, misinformed, threatened, or deceived any person (including a party to a case or an officer or employee of the Department of Justice), concerning any material and relevant matter relating to a case, including knowingly or with reckless disregard offering false evidence, in violation of 8 C.F.R. § 1003.102(c).

    b.    frivolous behavior in a proceeding before an Immigration Court, the Board, or any other administrative appellate body under title II of the Immigration and Nationality Act, in violation of 8 C.F.R. § 1003.102(j);

    c.    conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process, in violation of 8 C.F.R. § 1003.102(n);

    d.    failing to provide competent representation to Mr. ███ in violation of 8 C.F.R. § 1003.102(o); and

    e.    failing to act with reasonable diligence and promptness in representing Mr. ███ in violation of 8 C.F.R. § 1003.102(q).

### Count Two – D2021-0079

 **— A215-891-058**

38.    Respondent and other attorneys from his firm represented Mr. ███ before the Immigration Court with respect to applications for asylum, withholding of removal, and protection under the Convention Against Torture. On June 18, 2019, Immigration Judge Brandon Hart denied Mr. ███'s applications and ordered him removed to Bangladesh.

39.    Judge Hart denied the applications for relief, making an adverse credibility determination because he found "ample reason to doubt the veracity of [Mr. ███[4] claims." In the alternative, Judge Hart held that Mr. ███ was not eligible for asylum, as Judge Hart did "not find that one specific reason [Mr. ███ was tortured was on account of his own political opinion or that he was being tortured because of his father's political opinion, but rather he was suffering that harm because these men wanted to know the location of his father." Judge Hart also found that Mr. ███ would be able to safely relocate in Bangladesh to avoid future harm if he returned because he had lived safely in Bangladesh after he was assaulted.

---

[4] To avoid confusion with the Respondent in this matter, in quotations from the underlying case materials that refer to Mr. ███ as "respondent," his name has been substituted in brackets.

13

40.  On or about July 10, 2019, Respondent appealed the decision, and on October 1, 2019, Respondent filed a brief in support of Mr. ██████ s appeal.

41.  Respondent's brief, at pages 2 through 4, included a "Preliminary Statement" and "Statement of Facts and Procedural History."

42.  Respondent's brief, at page 4, listed the following under "Statement of Issues":

    (I)When is an IJ's adverse credibility determination proper?
    (II) What is the standard of "past persecution"?
    (III) What kind of inconsistencies in a respondent's testimony can support an IJ's adverse credibility determination?

43.  Respondent's brief, at pages 5 and 6, stated the following under "Standard of Review":

    In 2002, the Attorney General issued a procedural reforms regulation, which, in part, related to the standard of review applied by the Board and the scope of its review of decisions by the Immigration Judges. See Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54, 878 (Aug. 26, 2002). The provision entitled "Scope of Review" stated the following:

        (i) The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration [judge] are clearly erroneous.

        (ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*.

        (iii) The Board may review all questions arising in appeals from decisions issued by Service officers *de novo*.

        (iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceedings to the immigration judge or, as appropriate, to the Service.

14

67 Fed. Reg. at 54,902 (codified at 8 C.F.R. 3.1(d)(3), which was transferred
to 8 C.F.R. 1003.1(d)(3) in 2003); *see* also [sic] *Matter of S-H-*, 23 I&N
Dec. 462 (BIA 2002).

This Supplemental Information to this regulation contained an
extensive discussion about the interplay of the clearly erroneous standard of
review and the Board's de novo review authority. It explained that the
Board should defer to the factual findings of an Immigration Judge, unless
they are clearly erroneous, but that it retains independent judgment and
discretion, subject to applicable governing standards, regarding pure
questions of law and the application of a particular standard of law to those
facts. 67 Fed. Reg. at 54,888-89 (Supplemental Information). The clearly
erroneous standard therefore does not apply to the application of legal
standards, such as whether the facts established by an alien "amount to 'past
persecution' or a 'well-founded fear of persecution.'" *Id.* at 54,890. This
analytical approach to deciding cases recognizes that the Immigration
Judges are better positioned to discern credibility and assess the facts with
witnesses before them, but that the Board is better positioned to resolve
issues involving the application of legal standards and the exercise of
discretion. *Id.*

The Attorney General provided specific examples to show how the
standard of review should be applied. For example, the Immigration
Judge's assessment of what happened to an asylum applicant is a factual
determination that will be reviewed under the clearly erroneous standard.
*See* 67 Fed. Reg. at 54, 890 (Supplemental Information). The questions of
whether the facts demonstrate harm that rises to the level of persecution and
whether that harm was inflicted "on account of" a protected ground,
however, "are questions that will not be limited by the 'clearly erroneous
standard.'" *Id.*

44. Respondent's brief, at pages 7 through 14, included a section entitled "Argument" with a
    subheading of "[Mr. ███████] Eligibility for Asylum."

45. Under the subheading "[Mr. ███████] Eligibility for Asylum," at pages 7 and 8,
    Respondent argued that Judge Hart "erroneously doubted [Mr. ███████] asylum story
    for inconsistencies and implausibilities." Respondent addressed and argued against the
    inconsistencies and other issues that led to Judge Hart's adverse credibility finding.

46. Following the argument about the adverse credibility finding and continuing under the
    subheading "[Mr. ███████] Eligibility for Asylum" to the end of the "Argument"
    section, at pages 8 through 14, Respondent stated:

An applicant for asylum bears the burden of establishing that he or
she meets the "refugee" definition of section 101(a)(42)(A) of the Act. In
meeting this burden, an asylum applicant must do more than simply show

15

that he or she was harmed or has a well-founded fear of being harmed. An applicant must demonstrate that the harm was or would be inflicted "on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 101(a)(42)(A) of the Act. Harm arising from general strife, for example, is not persecution on account of one of the grounds protected under the Act.

Deportation of an alien is prohibited by Section 243(h) of Act where there is a clear probability that his life or freedom would be threatened as a result of persecution on account of political opinion, membership in a particular social group, nationality, race, or religion. INS v. Stevic, 467 U.S. 407, 104 S.Ct. 2489 (1984). For the harm or suffering to be considered persecution, it must be inflicted either by the government or by persons or organizations the government in unwilling or unable to control. Mgoian v. INS, 184 F.3d 1029, 1036 (9th Cir. 1999) [the Armenian government is unable or unwilling to stop the persecution of Kurdish-Muslim families]. Discrimination, harassment, and violence by a group that the government is unable or unwilling to control at times may constitute persecution. Arteaga v. INS., 836 F.2d 1227, 1231 (9th Cir. 1988).

The Attorney General has discretionary authority to grant an alien asylum in the United States under Section 208(a) of the Act. To be eligible, an alien must meet the definition of a "refugee," as defined in Section 101(a)(42)(A) of the Act. This requires that an alien show he is unwilling to return to his country either because of persecution or a well-founded fear of persecution, on account of his political opinion, membership in a particular social group, nationality, race, or religion. Cordoza-Fonseca v. INS, 767 F.2d 1448 (9th Cir. 1985), aff'd 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); Desir v. Ilchert, 840 F.2d 723 (9th Cir. 1988); Matter of Mogharrabi, I.D. #3028 (BIA 1987). For the harm or suffering to be considered persecution, it must be inflicted either by the government or by person or organizations the government in unable or unwilling to control. Mgoian, supra at 1036; Singh v. INS, 94 F.3d 1353, 1360 (9th Cir. 1996); Gomez-Saballos v. INS, 79 F.3d 912 (9th Cir. 1996); McMullen v. INS, 658 F.2d 1312, 1315 (9th Cir. 1981). However, a respondent is not required to show the exact motivation of his "persecutor" where different reasons for actions are possible. An alien is only required to establish facts due to which a reasonable person would fear danger arising on account of one or more qualified reasons contained in the Act. Matter of Fuentes, 19 I&N Dec. 658, 662 (1988).

Either past persecution or a well-founded fear of future persecution may satisfy the statutory requirements for asylum. Matter of Chen, I.D. #3104 (BIA 1989); Desir, supra at 729. The "well-founded fear" standard has both objective and subjective components. Barraza Rivera v. INS, 913 F.2d 1443, 1449 (9th Cir. 1990). The subjective component requires that an

16

alien establish that his fear is "genuine." Hernandez-Ortiz v. INS, 777 F.2d 509, 513 (9th Cir. 1985). Credible testimony in support of the subjective fear will satisfy the burden. Duarte de Guinac v. INS, 179 F.3d 1156, 1159 (9th Cir. 1999).

The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that establish that persecution is a reasonable possibility. Barraza Rivera, *supra* at 1449; Devalle v. INS, 901 F.2d 787, 790 (9th Cir. 1990). If documentary evidence is not available, the evidence may consist solely of the alien's testimony, if it is specific, credible, and persuasive. Cordoza-Fonseca, supra at 1453. Evidence of past persecution or a threat of future persecution will usually suffice to form the objective component of the evidence requirement. Zacarias v. INS, 908 F.2d 1452, 1458 n.7 (9th Cir. 1990); Cordoza-Fonseca, supra at 1453. Past persecution does not require corroborative evidence but may be established through the applicant's own testimony. Garrovillas v. INS, 156 F.3d 1010, 1016-17 (9th Cir. 1998). Under regulations, a person who suffered past persecution is presumed to have a well-founded fear unless by a preponderance of the evidence, the government establishes that conditions have changed in the country of origin **to such an extent** that the applicant no longer has a well-founded fear. 8 C.F.R. 208.13(b)(1)(i). See Borja v. INS, 175 F.3d 732, 737-38 (9th Cir. 1999) *en banc*; Tarubac v. INS, 182 F.3d 1114, 1119-1120 (9th Cir. 1999); Leiva-Montalvo v. INS, 173 F.3d 749, 751-52 (9th Cir. 1999); Del Carmen Molina v. INS, 170 F.3d 1247, 1250 (9th Cir. 1999); Osorio v. INS, 99 F.3d 928, 932 (9th Cir. 1996) [Presumption in favor of applicant]; Surita v. INS, 95 F.3d 814, 821 (9th Cir. 1996) [INS must overcome presumption]; Prasad v. INS, 101 F.3d 614 (9th Cir. 1996).

If past persecution if [sic] established, then the government, to deny asylum as a matter of discretion, has the burned to establish that the applicant will be safe in other regions of the country where they raise that claim. Singh v. Ilchert, 69 F.3d 375, 379-81 (9th Cir. 1995). This includes demonstrating how the DHS will accomplish the deportation of the individual to the protected area. Matter of H-, 21 I&N Dec. 337, 347-48 (BIA 1996).

In light of the above, it is submitted that [Mr. ███████] testimony must be considered factually correct and sufficient, without more, to sustain his burden. If the events he testified to describe past persecution, or conditions such as to reasonably cause a well-founded fear of future persecution, then [Mr. ███████] did meet his burden.

Deportation of an alien is prohibited by Section 243(h) of the Act where there is a clear probability that his life or freedom would be threatened as a result of persecution on account of political opinion,

17

membership in a particular social group, nationality, race, or religion. INS v. Stevic, 467 U.S. 407, 104 S.Ct. 2489 (1984) and for the harm or suffering to be considered persecution, it must be inflicted either by the government or by persons or organizations the government in unwilling or unable to control. Mgoian v. INS, 184 F.3d 1029, 1036 (9th Cir. 1999) [the Armenian government is unable or unwilling to stop the persecution of Kurdish-Muslim families].

The Attorney General has discretionary authority to grant an alien asylum in the United States under Section 208(a) of the Act. To be eligible, an alien must meet the definition of a "refugee," as defined in membership in a particular social group, nationality, race, or religion. Cordoza-Fonseca v. INS, 767 F.2d 1448 (9th Cir. 1985), aff'd 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); Desir v. Ilchert, 840 F.2d 723 (9th Cir. 1988); Matter of Mogharrabi, I.D. #3028 (BIA 1987). For the harm or suffering to be considered persecution, it must be inflicted either by the government or by person or organizations the government in unable or unwilling to control. Mgoian, supra at 1036; Singh v. INS, 94 F.3d 1353, 1360 (9th Cir. 1996); Gomez-Ceballos v. INS, 79 F.3d 912 (9th Cir. 1996); McMullen v. INS, 658 F.2d 1312, 1315 (9th Cir. 1981). [Mr. ███████] mistreatments in India clearly amount to 'past persecution' and on such a question, this Board's standard of review is not the 'clearly erroneous' standard, but the 'de novo' review because it is about the application of a legal standard to certain facts contained in [Mr. ███████'s] record and particularly in his testimony.

The IJ erred in his credibility finding, which was the basis for his decision. [Mr. ███████ submits that the IJ's decision on credibility did not meet the standards regarding credibility findings as established in Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir. 1987). The IJ must not only articulate the basis for the negative credibility finding, but those reasons must be substantial. It is particularly important that the credibility determination be based upon appropriate factors. Because the IJ's credibility finding was erroneous, his determination that [Mr. ███████] therefore could not meet his burden was erroneous as well. The IJ also alluded to come sort of inconsistencies in [Mr. ███████] testimony but all such inconsistencies are clearly minor inconsistencies.

While an IJ's credibility finding is normally given great weight, such determinations must be: 1) fairly supported by the record, See Matter of B-, 21 I&N Dec. 66 (BIA 1995) [IJ's adverse credibility finding reversed, where applicant's testimony was plausible, detailed, internally consistent, consistent with the asylum application and embellished during probing corss-examination], Akinmade, supra, Garrovillas, supra at 1016, Stoyanov, supra at 731, and Martinez-Sanchez v. INS, 794 F. 1396, 1400 (9th Cir. 1986) [Court reversed denial of asylum where IJ's claim that applicant lacked credibility not supported by the record]; 2) must be based

18

on "a rational and supportable connection between the reasons cited and the conclusion that the petitioner is not credible," *Aguilera-Cota*, *supra* at 138; 3) must be supported by "specific cogent reasons," Nasseri v. Moschorak, 34 F.3d 723, 726 (9th Cir. 1994), Mosa v. Rogers, 89 F.3d 601, 604-605 (9th Cir. 1996); and 4) are subject to the substantial evidence standard of review. Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988) [Minor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for adverse credibility finding], *Turcios*, *supra* at 1396 [Reversed IJ's finding that former INA 243(h) applicant not credible where finding not supported by record. IJ must "offer specific cogent reasons for his disbelief"], Hartooni v. INS, 21 F.3d 336, 343 (9th Cir. 1994), Ramos-Vasquez v. INS, 57 F.3d 857 (9th Cir. 1995), Matter of Kasinga, 21 I&N Dec. 357, 364-65 (BIA 1996) [Explained inconsistencies].

The IJ did not find that the Government had rebutted the presumption of future persecution afforded [Mr. ███████ on account of his past persecution. Proof of past persecution raises the presumption that an asylum applicant has a well-founded fear of future persecution, which may be rebutted by a showing, by a preponderance of the evidence, that country conditions have changed sufficiently so as to overcome that presumption. 8 C.F.R. 208.13(b)(1)(i); Singh v. Ilchert, *supra* at 378. DHS is obligated to "introduce evidence that, on an individualized basis, rebuts a particular applicant's specific grounds for his well-founded fear of future persecution." Ernesto Navas v. INS, 217 F.3d 646, 662 (9th Cir. 2000). "Information about general changes in the country is not sufficient." Garrovillas, *supra* at 1017. In Respondent ████ ██ ██████████'s case, the IJ did not consider whether DHS had met its burden of showing changed country conditions.

Based on the record, the presumption afforded [Mr. ███████ remains unrebutted. DHS failed to produce evidence showing that country conditions improved as a general matter, and it failed to introduce evidence to meet its burden of showing that there has been a change in the conditions that would affect [Mr. ████████ individually. Popova v. INS, (9th Cir. 2001). In sum, there is nothing submitted by DHS that rebuts [Mr. ████████'s] legitimate fears of future harassment, threats, beating, and possibly death, based on his imputed political opinion.

47.   Respondent's brief did not address, challenge, or argue against Judge Hart's finding that Mr. ████████ failed to establish that the harm or persecution suffered was on account of a protected ground.

48.   Respondent's brief did not address, challenge, or argue against Judge Hart's finding that Mr. ████████ would be able to safely relocate in Bangladesh to avoid future harm if he returned to Bangladesh.

19

49.    On November 22, 2019, the Board dismissed Respondent's appeal, affirming Judge Hart's decision that Mr. ██████████ had "not established eligibility for asylum on the merits.[5]  The Board held:

> Even assuming that the harm [Mr. ██████████ experienced in Bangladesh rose to the level of past persecution, the Immigration Judge found that party members inflicted this harm on him because they wanted to locate his father; they did not seek to harm [Mr. ██████████ who at the time of this harm was only 14 years old, on account of an imputed political opinion, or any other protected ground.  [Mr. ██████████ does not meaningfully challenge this finding on appeal.  The Immigration Judge's unchallenged finding supports his conclusion that [Mr. ██████████ did not experience past persecution in Bangladesh on account of a protected ground, and thus he was not entitled to a presumption of future harm pursuant to 8 C.F.R. § 1208.13(b)(1).
>
> [Mr. ██████████ also does not meaningfully challenge the Immigration Judge's findings that it has been more than 4 years since [Mr. ██████████ was last harmed in Bangladesh and he was able to safely relocate inside that country and avoid persecution between the time he was harmed in 2015 and the time he left Bangladesh in 2018.  The Immigration Judge's unchallenged findings in this regard support his conclusion that it is not objectively reasonable that [Mr. ██████████ will be persecuted in the future in Bangladesh on account of ground protected under section 101(a)(42)(A) of the Act.

50.    Based on the conduct alleged in Count Two above, Respondent has engaged in the following misconduct:

a.     frivolous behavior in a proceeding before an Immigration Court, the Board, or any other administrative appellate body under title II of the Immigration and Nationality Act, in violation of 8 C.F.R. § 1003.102(j);

b.     conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process, in violation of 8 C.F.R. § 1003.102(n);

c.     failing to provide competent representation to Mr. ██████████, in violation of 8 C.F.R. § 1003.102(o); and

d.     failing to act with reasonable diligence and promptness in representing

---

[5] The Board did not address the challenge to Judge Hart's adverse credibility finding because it resolved the case on its merits.

20

Mr. ▆▆▆▆ in violation of 8 C.F.R. § 1003.102(q).

## Prior Discipline

**EOIR Attorney Discipline Docket Numbers D2016-0259, D2016-0290, D2017-0012, and D2017-0148:** On July 16, 2018, the EOIR Disciplinary Counsel issued a Warning Letter to Respondent, pursuant to 8 C.F.R. § 1003.104(c), in a consolidated matter involving four complaints. The EOIR Disciplinary Counsel found that Respondent's conduct violated EOIR's Rules of Professional Conduct at 8 C.F.R. §§ 1003.102(c), 1003.102(j), 1003.102(l), 1003.102(o), and 1003.102(q) based on his conduct in three of the four complaints. Respondent failed to appear for scheduled hearings in two cases without good cause, and before the Board, Respondent filed a brief that did not include the relevant facts, referenced the wrong Immigration Judge and decision date, and cited to pages of the transcript and of the Immigration Judge's decision that did not exist. With regard to the brief, which Respondent claimed a paralegal "mixed up that portion with the parts of the brief of another person's old copy of the brief dated February 9, 2010, that was saved in his computer," the EOIR Disciplinary Counsel concluded that Respondent's brief "recklessly included false information that had no arguable basis in fact" and was an "error [that] could and should have been avoided" had Respondent reviewed the brief prior to filing. Pursuant to 8 C.F.R. § 1003.108(b), a copy of the Warning Letter is included in the Government's evidentiary exhibits.

## Proposed Discipline

The American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards) provide nationwide guidelines for the imposition of discipline on attorneys who have been found to have committed professional misconduct. The Board has found that the ABA Standards are an appropriate guideline or framework to consider in imposing disciplinary sanctions. *Matter of Shah*, D2004-121 (BIA Nov. 25, 2008) at 3, *available at* https://www.justice.gov/sites/default/files/eoir/legacy/2014/02/03/ShahAnil_FinalOrder.pdf.

Standard 4.4 (lack of diligence), Standard 4.5 (lack of competence), Standard 6.1 (false statements, fraud, and misrepresentation), and Standard 6.2 (abuse of the legal process) are the most relevant ABA Standards applicable to this matter. Upon consideration of Standards 4.4, 4.5, 6.1, and 6.2, and the appropriate aggravating and mitigating factors under Standard 9 (aggravating factors include prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongful nature of conduct, vulnerability of victim, and substantial experience in the practice of law), the EOIR and DHS Disciplinary Counsel propose that Respondent be suspended from practice before the Board, the Immigration Courts, and DHS for a period of 6 months.

## Procedure for Filing Answer and Requesting Hearing

<u>Answer</u>: The Rules provide that Respondent shall file with the Board a written answer to the Notice of Intent to Discipline within 30 days of the date stated on the Certificate of Service attached to this Notice. The instructions for filing pleadings and motions with the Board appear in Chapter 3 of the Board's *Practice Manual*, which can be accessed online at:

21

https://www.justice.gov/eoir/eoir-policy-manual/iii. The telephone number for the Board of Immigration Appeals is (703) 605-1007. The public window hours are 8:00 a.m. to 4:30 p.m.

Whether filing the answer through the U.S. Postal Service (i.e., priority mail, certified mail, registered mail, return receipt requested, but not "Express Mail") or overnight or express delivery (including U.S. Postal Service "Express Mail"), courier, hand delivery, or same day delivery, the answer must be sent to the Board at the following address:

> ATTN: Attorney Discipline Coordinator
> Board of Immigration Appeals
> Clerk's Office
> 5107 Leesburg Pike, Suite 2000
> Falls Church, VA 22041

The Respondent must also serve a copy of the answer on the DHS and EOIR Disciplinary Counsel at the following addresses:

> Toinette M. Mitchell
> Disciplinary Counsel
> U.S. Citizenship and Immigration Services
> Department of Homeland Security
> 401 W Peachtree Street NW – Suite 1001
> Atlanta, GA 30308
> (470) 322-2526
> DisciplinaryCounsel@uscis.dhs.gov
>
> Paul A. Rodrigues
> Disciplinary Counsel
> U.S. Department of Justice
> Executive Office for Immigration Review
> 5107 Leesburg Pike, Suite 2600
> Falls Church, VA 22041
> (571) 215-0928
> EOIR.Attorney.Discipline@usdoj.gov

Contents of Answer: Respondent's answer shall contain a statement of facts that constitute the grounds of defense, and shall specifically admit or deny each allegation set forth above. Every allegation in the Notice of Intent to Discipline that is not denied in Respondent's answer shall be deemed admitted and may be considered as proved, without additional evidence. Respondent may state affirmatively special matters of defense and may submit supporting documents, including affidavits or statements, along with the answer. 8 C.F.R. § 1003.105(c). To learn more about the procedures in these proceedings, Respondent should review 8 C.F.R. §§ 1003.101-106.

Request for Hearing: Respondent shall state in the answer whether Respondent requests a hearing in the matter. If no such request is made in the answer, the opportunity for a hearing will

be deemed waived and the matter may be adjudicated by an Adjudicating Official without a full evidentiary hearing. 8 C.F.R. §§ 1003.105(c)(3), 1003.106(a)(2)(iii).

Right to Counsel: Respondent may be represented by counsel at no expense to the government. Counsel shall file an appropriate Notice of Entry of Appearance form. 8 C.F.R. § 1003.106(a)(2)(iii).

Motion to Extend Time to Answer: Respondent may request an extension of time to answer the Notice of Intent to Discipline for good cause only, upon motion to the Board. The Board must receive any such motion no later than three (3) working days before the time to answer has expired. Respondent shall serve any such motion on the Counsel for the Government at the addresses specified above. 8 C.F.R. § 1003.105(c)(1).

Respectfully submitted,

Dated: 6/9/2022

PAUL A. RODRIGUES
Disciplinary Counsel
Executive Office for Immigration Review
U.S. Department of Justice
5107 Leesburg Pike, Suite 2600
Falls Church, Virginia 22041
Tel. (571) 215-0928
EOIR.Attorney.Discipline@usdoj.gov

TOINETTE M. MITCHELL
Disciplinary Counsel
U.S. Citizenship and Immigration Services
Department of Homeland Security
401 W Peachtree Street NW – Suite 1001
Atlanta, GA 30308
(470) 322-2526
DisciplinaryCounsel@uscis.dhs.gov

RECEIVED
JUN - 9 2022
EOIR
BIA

23

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of the foregoing Joint Notice of Intent to Discipline, has been sent, on <u>6/9/22</u>, by email and by certified mail (Article No. 7020 1810 0000 6417 9925) postage pre-paid to:

Khagendra Gharti Chhetry, Esq.
363 7th Ave., Ste. 1500
New York, NY 10001-3904
kc@chhetrylaw.com.

This address is the above-named practitioner's last known address because:

☑    It is the address of record in EOIR's CASE management system for an immigration matter that is currently being adjudicated by EOIR.

☐    It is the address on record with the State Bar of Texas, a jurisdiction that licensed the practitioner to practice law.

L. Allison Minor
Program Analyst

RECEIVED

JUN – 9 2022
EOIR
BIA

025

# EXHIBIT C

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### UNITED STATES IMMIGRATION COURT

In the Matter of

**Khagendra GHARTI-CHHETRY,**

Respondent

**DISCIPLINARY CASE # D2020-0024, D2021-0079**

In Attorney Discipline Proceedings

**CHARGES:**  8 C.F.R. §§ 1003.102 (c), (j), (n), (o), and (q)

**PROSOSED DISCIPLINE:** Suspension from practice before the Board of Immigration Appeals, Immigration Courts, and the Department of Homeland Security for a period of six months

On Behalf of Respondent:
Tyler Maulsby, Esquire
Frankfurt Kurnit Klein & Selz PC
28 Liberty Street, 35th Floor
New York, NY 10005

On Behalf of EOIR:
Paul A. Rodrigues, Disciplinary Counsel
Brett D. Burton, Associate General Counsel
Executive Office for Immigration Review
Office of the General Counsel
5107 Leesburg Pike, Suite 2600
Falls Church, Virginia 22041

On Behalf of USCIS:
Toinette M. Mitchell, Disciplinary Counsel
Office of the Chief Counsel
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
5900 Capital Gateway Drive
Camp Springs, ███ 20588
Mail Stop: 2120

## MEMORANDUM OF DECISION AND ORDER

### I.  PROCEDURAL HISTORY

On June 9, 2022, the Disciplinary Counsel of the Office of the General Counsel for the Executive Office for Immigration Review (Disciplinary Counsel)[1] filed a Notice of Intent to Discipline (NID) against Khagendra Gharti-Chhetry (Respondent) with the Board of Immigration

---

[1] The Disciplinary Counsel for the Executive Office for Immigration Review is lead counsel in these proceedings.

Appeals (Board) pursuant to 8 C.F.R. § 1003.105(a). Exh. 1. In the NID, Disciplinary Counsel charges Respondent with two counts of professional misconduct. Count One alleges violations of five subsections of 8 C.F.R. § 1003.102. Specifically, Disciplinary Counsel alleges the following violations:

> 102(c): knowingly or with reckless disregard made a false statement of material fact or law, or willfully misled, misinformed, threatened, or deceived any person (including a party to a case or an officer or employee of the Department of Justice) concerning any material and relevant matter relating to a case, including knowingly or with reckless disregard offering false evidence;
> 102(j): engaged in frivolous behavior in a proceeding before an Immigration Court, the Board, or any other administrative appellate body under title II of the Immigration and Nationality Act;
> 102(n): engaged in conduct prejudicial to the administration of justice or that undermines the integrity of the adjudicative process;
> 102(o): failed to provide competent representation; and
> 102(q): failed to act with reasonable diligence and promptness.

Exh. 1 at 13. Count Two also alleges violations of four of the same subsections, namely, 8 C.F.R. §§ 1003.102(j), (n), (o), and (q). Exh. 1 at 20–21.

On July 7, 2022, Disciplinary Counsel filed evidence, consisting of copies of submissions from the records of two clients Respondent represented in removal proceedings, as well as preliminary correspondence relating to these disciplinary proceedings. *See* Exh. 2. On July 29, 2022, Respondent, through counsel, filed an answer to the NID, admitting many of the factual allegations, denying some others, contesting the charged grounds for disciplinary sanctions, and contesting the recommended sanction. *See* Exh. 3. Respondent also requested a hearing during which the charges set against him could be adjudicated. *Id.*

On August 15, 2022, the Board forwarded the record to the Office of the Chief Immigration Judge for the appointment of an adjudicating official. Exh. 4. On March 30, 2023, Disciplinary Counsel submitted a Prehearing Brief in support of the proposed disciplinary charges and sanction. On May 18, 2023, Respondent filed Prehearing Exhibits as well as a Prehearing Brief in opposition to the alleged disciplinary charges and proposed sanction. Disciplinary Counsel responded with a Supplemental Pre-Hearing Brief on August 21, 2023. The Court held a hearing on September 26,

2023.[2] Taking that hearing and all other evidence[3] into account, the following decision will address the charges against, and the discipline to be imposed on, Respondent.

## II. ALLEGATIONS AND CONCESSIONS OF MISCONDUCT

The filing of the present NID is based upon Respondent's appellate briefs in two cases. The first count concerns Respondent's second brief in support of the appeal in *Matter of* ██, A209-282-592. Respondent filed the appeal brief following the denial of his client's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Exh. 1 at 5–6. Disciplinary Counsel alleged Respondent's brief contained inaccurate citations to the evidentiary record[4], referred to facts not in the evidentiary record,[5] included citations to inapplicable out-of-circuit legal authority,[6] and failed to address dispositive findings made by the Immigration Judge (IJ). *See* Exh. 1 at 6–11. In dismissing the appeal, the Board noted portions of Respondent's brief appeared to have been inadvertently extracted from an unrelated case. Exh. 1 at 12.

In light of these errors, Disciplinary Counsel charges Respondent with having violated 8 C.F.R §§ 1003.102(c), (j), (n), (o), and (q), for making a false statement of material fact or law; engaging in frivolous behavior; engaging in conduct prejudicial to the administration of justice; failing to provide competent representation; and failing to act with reasonable diligence. *See* Exh. 1 at 13.

The second count involves Respondent's brief in support of the appeal in *Matter of* ██ ██ A215-891-058. *See id.* This case also concerned applications for asylum, withholding of removal, and protection under the CAT. Disciplinary Counsel alleges Respondent failed to address dispositive issues in the appeal brief, including that he failed to challenge the IJ's findings his client had not suffered persecution on account of a protected ground and failed to challenge the finding his client could safely relocate in Bangladesh to avoid future persecution.

---

[2] On August 25, 2023, Respondent requested to convert the evidentiary hearing to oral argument. Disciplinary Counsel opposed further oral argument, preferring to rely on the legal briefs in the record, but agreed that testimony was not necessary. The Court granted Respondent's request, and allowed the parties to present oral summations of their legal arguments at the September 26, 2023 hearing.

[3] 8 C.F.R. § 1003.106(a)(iv) states that in rendering a decision, the adjudicating official shall consider the complaint, the preliminary inquiry report; the NID, the answer, any supporting documents, and any other evidence, including pleadings, briefs, and other materials. The Court also acknowledges and will take into account the oral closing arguments made by both parties at the September 26, 2023 hearing.

[4] Respondent's brief refers to evidence not in the record, such as a letter from a political party, medical records, and discusses findings made by the IJ that are not in the record. *See* Exh. 2 at 159–61.

[5] Respondent's brief refers to an incident—in which his client was shot while riding in a car—that was not raised at the individual calendar hearing. *See* Exh. 2 at 160.

[6] The brief erroneously indicates the case arose within the jurisdiction of the United States Court of Appeals for the Second Circuit; Mr. ██s case was adjudicated by the Chicago Immigration Court, which is in the jurisdiction of the United States Court of Appeals for the Seventh Circuit. *See* Exh. 2 at 162.

3

*See* Exh. 1 at 19. Consequently, the Board dismissed the appeal, noting the appeal did not meaningfully challenge these two grounds. *See id.* at 20. On this basis, Discplinary Counsel argues Respondent committed misconduct in violation of 8 C.F.R §§ 1003.102(j), (n), (o), and (q), specifically, engaging in frivolous behavior; engaging in conduct prejudicial to the administration of justice; failing to provide competent representation; and failing to act with reasonable diligence. *See* Exh. 1 at 20–21. Disciplinary Counsel recommends that it is in the public interest to impose a suspension of at least six months for the alleged violations. *See* Gov't Prehearing Brief at 10.

In his Answer, Respondent admits all of the factual allegations in the NID as to Count One. *See* Exh. 3 at 13–17 (admitting Count One allegations 1–36). In doing so, Respondent further states that the underlying basis for the errors cited in the factual allegations stems from his legal assistant's administrative error in the process of printing the brief. *See* Exh. 3 at 14–17. However, Respondent denies Disciplinary Counsel's charge that the factual conduct alleged in Count One supports a finding of misconduct in violation of 8 C.F.R. §§ 1003.102(c), (j), (n), (o), or (q). Exh. 3 at 18; *see also* Exh. 1 at 13.

With respect to Count Two, Respondent admits the majority of the factual allegations in the NID. *See* Exh. 3 at 18 (admitting allegations 38–46, 49). Respondent denies allegations 47–48, disputing Disciplinary Counsel's position that his brief on behalf of Mr. ██████ "failed to establish that the harm or persecution suffered was on account of a protected ground" and failed to address or challenge the IJ's finding that Mr. ██████ could safely relocate in Bangladesh to avoid persecution. Exh. 1 at 19; *see also* Exh. 3 at 18. Finally, Respondent denies Disciplinary Counsel's charge that Respondent's conduct relating to his representation of Mr. ██████ violated 8 C.F.R. §§ 1003.102(j), (n), (o), or (q). Exh. 3 at 18; *see also* Exh. 1 at 20–21.

Respondent contests that his errors support a finding of any misconduct. Respondent also maintains that his conduct does not warrant any formal discipline, or in the alternative, that it warrants a private reprimand at most. *See* Exh. 3 at 23.

### III. LAW AND ANALYSIS

It is Disciplinary Counsel's burden to prove the grounds for disciplinary sanctions by clear and convincing evidence. 8 C.F.R. § 1003.106(a)(iv). The Court will only impose disciplinary sanctions against a practitioner if it finds it to be in the public interest to do so. 8 C.F.R. § 1003.101(a). Disciplinary sanctions are deemed to be in the public interest if Disciplinary Counsel establishes that the practitioner falls within any of the enumerated categories in 8 C.F.R. § 1003.102. If the Court determines that Disciplinary Counsel has met its burden, it must sustain the charge and decide on a form of punishment, which can be expulsion, suspension, public or private censure, or other sanctions deemed appropriate. 8 C.F.R. §§ 1003.101(a)(1)–(4). Any

4

grounds for discipline set forth in the NID that have not been established by clear and convincing evidence shall be dismissed. 8 C.F.R. § 1003.106(b).

In the present case, Disciplinary Counsel set forth two counts of disciplinary charges against Respondent. Count One sets forth five charges and Count Two sets forth four charges. The Court will sustain the charges, and will address its reasoning for doing so below.

## A.    COUNT ONE: D2020-0024

Count one concerns Respondent's representation of Mr. ▮▮▮▮.

### 1.    Charge One

Charge One alleges that Respondent violated only one portion 8 C.F.R. § 1003.102(c). *See* Exh. 1 at 13. Specifically, the NID charges Respondent as having:

> knowingly or with reckless disregard made a false statement of material fact or law, or willfully misled, misinformed, threatened, or deceived any person (including a party to a case or an officer or employee of the Department of Justice) concerning any material and relevant matter relating to a case, including knowingly or with reckless disregard offering false evidence in violation of 8 C.F.R. § 1003.102(c).

Exh. 1 at 13. Disciplinary Counsel argues that Respondent violated 8 C.F.R. § 1003.102(c) by making false statements of material fact. *See* Gov't Prehearing Brief at 10. Specifically, Disciplinary Counsel contends that Respondent filed, with reckless disregard, a second appeal brief falsely attributing facts from another client's case to Mr. ▮▮▮.[7] *See id.* Disciplinary Counsel submits that "reckless disregard" is defined as "conscious indifference to the consequences of an act." BLACK'S LAW DICTIONARY (11th ed. 2019).

Respondent disputes Charge One, explaining that a clerical error resulted in a mistake wherein pages from a separate brief were mixed up with pages from Respondent's appeal brief and submitted on behalf of Mr. ▮▮▮. Resp't Prehearing Brief at 13. In an updated declaration dated August 25, 2023, Respondent indicates that he thoroughly reviewed his brief electronically on his computer and then asked a paralegal in his office to print it for Respondent to sign. Resp't Suppl. Decl. at 2, ¶ 9. Respondent then signed the document he believed to be a complete hard copy of the same brief he prepared on his computer. *Id.* He does not recall whether the pages were

---

[7] The Board remanded Mr. ▮▮▮'s first appeal on jurisdictional grounds without reaching the underlying basis for denial of his applications for relief. *See* Exh. 2 at 136–37. On remand, the IJ issued an order noting the jurisdictional questions had been resolved, jurisdiction remained with the IJ. Exh. 2 at 139. The IJ reinstated the original decision denying Mr. ▮▮▮'s applications for relief and certified the case back to the Board. *Id.* at 139–40. After the Board granted an extension of the briefing schedule, Respondent then filed the second appeal brief. Exh. 2 at 142–145.

mixed up before or after signing, but he indicates the error occurred after his review of the electronic document. *Id.* at ¶ 10.

Respondent contends that isolated clerical errors do not rise to the level of reckless disregard required by 8 C.F.R. § 1003.102(c). Respondent cites to cases interpreting recklessness as requiring knowledge of a reason to doubt the veracity of affiants' statements. *See* Resp't Prehearing Brief at 12. Moreover, Respondent contends that the errors contained in his brief did not amount to "material" facts tending to influence the Board's ultimate decision. *See id.* at 16. Respondent points to the Board decision acknowledging the brief contained unrelated information that appeared to have been inadvertently included from an unrelated case.

The Court finds that Disciplinary Counsel has met its burden on the record at hand. Respondent's second appellate brief contained numerous factual errors. The brief references an entirely different political party than the relevant political party in his client's case, and states his client was shot and suffered attacks resulting in a broken finger and a loss of consciousness requiring hospitalization without a basis in the record. *See* Exh. 2 at 163–68. Given these circumstances, even the most perfunctory final review of the brief before filing should have revealed it to contain factual errors. Respondent's submission of his appeal brief with such errors violated his obligation to ensure the factual statements in the brief were true and correct, to the best of his knowledge and ability. His failure to perform an adequate review before signing and filing the brief evidences a conscious indifference to the consequences of submitting factually inaccurate information to the Board.[8] The regulation at 8 C.F.R. § 1003.102(c) authorizing discipline was promulgated to punish practitioners who present documents with false information. *See Matter of Shah*, 24 I&N Dec. 282, 287 (BIA 2007) (involving fraudulent information in a certified LCA filed as supporting evidence with a Form I-129 for a H-1B petition).

Further, Respondent's argument with respect to the materiality of his statements misses the point. Typically, a tribunal or appellate body *does* trust and rely upon representations made by counsel about evidence of record, as a necessary part of the adversarial system. Attorneys are trusted to make statements on behalf of their clients. This trust flows, in part, from attorneys' obligations to ensure their statements are the truth, and to candidly inform the Court of relevant facts. Here, there can be no doubt Respondent's multiple misstatements in his brief bore on material aspects of his client's claim. They concerned facts that, if true, relate directly to the legal issues his brief addressed, principally, his client's claim for asylum. Among other errors,

---

[8] Respondent contests Charge One in part by emphasizing that only his second appeal brief contained factual errors. He argues these inaccuracies are unimportant since the Board had sufficient factual information from Respondent's first appeal brief in the same case to adjudicate his client's appeal. *See* Resp't Prehearing Brief at 17. Respondent's argument on this point is without merit. Filing one error-free brief does not relieve an attorney from his obligation to remain truthful and accurate in his future dealings with the same adjudicative body.

Respondent's brief referred to several incidents of harm without any factual basis in the evidentiary record and misstated the political affiliations of his client. *See* Exh. 2 at 163–68.

To appeal his client's denial of asylum relief, it was incumbent upon Respondent to demonstrate his client was a refugee under INA § 101(a)(42)(A). To qualify as a "refugee" an applicant must establish past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A). An applicant has the burden of proof to establish eligibility for relief in removal proceedings. INA § 240(c)(4). As the party with the burden of proof, misstating the nature of his client's past persecution and his client's political activism certainly had "a natural tendency to influence, or [was] capable of influencing," the Board's decision-making with respect to the fundamental elements of qualifying for asylum. *Kungys v. United States*, 485 U.S. 759, 770 (1988).

Respondent asserts that his inaccurate references "were clearly submitted in error" and therefore could have had no bearing on the Board's adjudication of the appeal, but this imposes on the appellate body the burden of doubting his every assertion. Fortunately, here, the Board did identify Respondent's errors. However, the Board's thorough comparison of Respondent's inaccurate assertions with the evidentiary record does not serve to minimize Respondent's professional obligations, nor do they alter the materiality of the statements he made in his brief. Moreover, the Board found Respondent's representation of Mr. ███ deficient and granted Mr. ███s Motion to Reopen his case, in part, due to Respondent's appeal brief, which it noted "contained numerous errors." Exh. 2 at 192. Thus, the Court finds that the errors contained in the brief were material.

For these reasons, Disciplinary Counsel has met its burden of showing by clear and convincing evidence that Respondent violated 8 C.F.R. § 1003.102(c), and the Court will sustain Charge One. 8 C.F.R. § 1003.106(b).

**2.    Charge Two**

Charge Two alleges that Respondent violated 8 C.F.R. § 1003.102(j). *See* Exh. 1 at 13. Section 1003.102(j) provides, in pertinent part, that a practitioner shall be subject to disciplinary sanctions in the public interest if they engaged in "frivolous behavior". Specifically, a practitioner engages in "frivolous behavior":

> when he or she knows or reasonably should have known that his or her actions lack an arguable basis in law or in fact, or are taken for an improper purpose, such as to harass or to cause unnecessary delay. Actions that, if taken improperly, may be subject to disciplinary sanctions include, but are not limited to, the making of an argument on any factual or legal question, the submission of an application for discretionary relief, the filing of a motion, or the filing of an appeal. The signature

7

of a practitioner on any filing, application, motion, appeal, brief, or other document
constitutes certification by the signer that the signer has read the filing, application,
motion, appeal, brief, or other document and that, to the best of the signer's
knowledge, information, and belief, formed after inquiry reasonable under the
circumstances, the document is well-grounded in fact and is warranted by existing
law or by a good faith argument for the extension, modification, or reversal of
existing law or the establishment of new law, and is not interposed for any improper
purpose.

8 CFR § 1003.102(j)(1).

  Disciplinary Counsel alleges Respondent's appeal brief on behalf of Mr. ▮▮▮▮ violated
8 C.F.R. § 1003.102(j) because Respondent reasonably should have known the brief lacked an
arguable basis in law and in fact. *See* Gov't Prehearing Brief at 15. Specifically, Disciplinary
Counsel asserts the brief lacked an arguable basis in law and fact due to (1) factual and legal
arguments based on another unrelated case; (2) a failure to meaningfully address the factual and
legal bases for the immigration judge's decision; and (3) the waiver of a dispositive issue. *See id.*
As discussed above, Respondent's brief refers to facts not in the evidentiary record in arguing his
client's eligibility for relief. Exh. 2 at 154–70. According to Disciplinary Counsel, Respondent's
arguments lacked an arguable basis in fact or in law, as they did not relate to the facts and evidence
in Mr. ▮▮▮▮ case, or the underlying findings made by the IJ in the case. In addition,
Disciplinary Counsel contends Respondent engaged in frivolous conduct by failing to address the
IJ's alternative finding that Mr. ▮▮▮▮ was not persecuted on account of a political opinion or
imputed political opinion. *See* Exh. 2 at 14, 154–70. By failing to address alternative findings on
the merits, Respondent waived Mr. ▮▮▮▮ opportunity to challenge the nexus finding.

  In his defense, Respondent argues that an innocent mixup of pages does not render the
appeal brief "frivolous." *See* Resp't Prehearing Brief at 18. Further, Respondent contends his
failure to address dispositive issues was the unfortunate result of an honest mistake because pages
were omitted from his brief. *See id.* at 19. Similar to his argument concerning Charge One,
Respondent maintains that the first appeal brief filed on behalf of Mr. ▮▮▮▮ sufficiently
addressed all material points regarding the appeal and that he only submitted a second brief out of
an abundance of caution. *Id.*

  The Court finds that Disciplinary Counsel has met its burden of showing by clear and
convincing evidence that Respondent engaged in frivolous behavior. As discussed above,
Respondent's second appeal brief in the ▮▮▮▮ appeal contains factual and legal arguments based
on another unrelated case. *See* Exh. 2 at 147–70. Respondent reasonably should have known his
appeal brief contained numerous errors. Such mistakes would have been evident from a cursory
review of the brief before it was filed. When he signed the hard copy filing, Respondent's signature
certified that he "read the filing, application, motion, appeal, brief, or other document and that, to

the best of the signer's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the document is well-grounded in fact and is warranted by existing law." 8 C.F.R. § 1003.102(j)(1).

More concerning to the Court is that *neither* of the appeal briefs submitted by Respondent meaningfully address the dispositive issue of Mr. ██████'s actual or imputed political opinion being a central reason for his persecution. Contrary to Respondent's argument that the Court should excuse his mistakes in his second appeal brief because it was only submitted in an abundance of caution following an earlier appeal brief which purportedly addressed all material points on appeal, a review of Respondent's first appeal brief reveals a lack of meaningful argument challenging the IJ's finding that his client was not persecuted on account of any protected ground.[9] *See* Exh. 2 at 125–28. In a brief footnote, the first appeal brief merely dismisses the IJ's nexus finding as a statement made in a "passing manner" without any reasoning. *See* Exh. 2 at 127 n.3. As Disciplinary Counsel noted, the hearing transcript indicates the IJ explained the reasoning for this finding in some depth. Exh. 2 at 75–76.

Respondent's failure to contest a dispositive issue guaranteed his client's appeal could not prevail on the merits, and thereby effectively waived his client's right to a meaningful appeal. An experienced attorney who regularly practices asylum law at the appellate level reasonably should know that an appeal must argue all dispositive legal issues substantively, and that any issue not raised will be deemed waived. Consequently, Respondent's deficient appellate advocacy on behalf of Mr. ████ lacked an arguable basis in law and fact. The Court will sustain Charge Two. 8 C.F.R. § 1003.106(b).

### 3.    Charge Three

Charge Three alleges that Respondent violated 8 C.F.R. 1003.102(n). *See* Exh. 1 at 13. Section 1003.102(n) provides it is in the public interest to impose disciplinary sanctions against a practitioner who "[e]ngages in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process." The subsection further clarifies that "[c]onduct that will generally be subject to sanctions under this ground includes any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct." *Id.* In its discussion of the proposed rule promulgated as 8 C.F.R. § 1003.102(n), the Executive Office for Immigration Review (EOIR) notes that in proposing this ground for sanctions, it found instructive *In re Hopkins*, 677 A.2d. 55, 60–61 (D.C. 1996). 73 Fed. Reg. 44,178, 44,180–81 (July 30, 2008). In *Hopkins*, the D.C. Court

---

[9] The Court notes that Respondent's brief did not raise a potentially viable ground for appeal based on legal error, as the underlying IJ erroneously applied the heightened "clear probability" standard in making findings about Mr. ████'s likelihood of persecution in the context of asylum. *See* Exh. 2 at 97–98. Neither Respondent's first appeal brief nor his second appeal brief raise arguments concerning this error. *See* Exh. 2 at 110–132, 147–70.

9

of Appeals held that conduct prejudicial to the administration of justice must satisfy three criteria: (1) the conduct must be improper; (2) the conduct must bear directly on the judicial process with respect to an identifiable case or tribunal; and (3) the conduct must affect the judicial process in a more than *de minimis* manner, resulting in a serious impact. 677 A.2d. at 60–61. Improper conduct encompasses violations of specific statute, court procedure, or disciplinary rule; alternatively, an attorney may also engage in improper conduct by taking an action, or failing to take an action, when under the circumstances the attorney should know or would reasonably be expected to act in a manner as to avoid any serious interference with the administration of justice. *Id.* at 61.

Disciplinary Counsel alleges Respondent's conduct fulfills the *Hopkins* criteria. With respect to the first requirement of improper conduct, as discussed above, Respondent's second appeal brief in Mr. ████s case contained factual errors as well as deficient legal arguments. In addition, Disciplinary Counsel argues the conduct satisfies the second and third criteria because the Board had to reconcile the discrepancies between the evidentiary record before it and the errors in Respondent's brief in order to adjudicate the appeal, when it should have been able to rely on his brief and only expend its resources on resolving the merits of Mr. ████s case. *See* Gov't Prehearing Brief at 20. Furthermore, Disciplinary Counsel contends that the Board was required to use additional resources to adjudicate Mr. ████s Motion to Reopen (MTR) based on Respondent's ineffective assistance. *Id.* at 21. Finally, Disciplinary Counsel alleges that because Mr. ████ was ultimately granted the opportunity to re-litigate his case via the MTR, Respondent's conduct seriously affected the judicial process, thereby negating the resources previously expended on Mr. ████s case. *Id.*

Respondent argues that the test in *Hopkins* applies to circumstances involving egregious misconduct such as fraud, dishonesty, or ongoing disruptions of judicial proceedings. Resp't Prehearing Brief at 21. Further, Respondent cites to EOIR discipline cases imposing discipline against practitioners for violations of 8 C.F.R. § 1003.102(n) involving intentional conduct that Respondent argues is more egregious than his own. *See id.* at 21–22 (citing *Matter of Singh*, 26 I&N Dec. 623 (BIA 2015)). Respondent also contends his actions do not satisfy the third criterion of the *Hopkins* test because his conduct did not taint the judicial process to a serious or adverse degree. *See* Resp't Prehearing Brief at 22.

Although Respondent has not been shown to have *intentionally* filed a deficient brief in Mr. ████s case, the plain text of the regulation as well as the test articulated in *Hopkins* do not require specific intent to justify a violation. The text of the regulation plainly provides that 8 C.F.R. § 1003.102(n) applies in circumstances where a "practitioner should have reasonably known" their conduct prejudices the administration of justice or interferes with the integrity of the adjudicative process. In *Hopkins*, the D.C. Court of Appeals panel cited with approval a prior case concluding an attorney engaged in conduct prejudicial to the administration of justice "whether it was reckless

10

or somewhat less blameworthy," and it re-affirmed that no scienter requirement applies. 677 A.2d. at 60 (citing *In re L.R.*, 640 A.2d 697, 701 (D.C. 1994)). In explaining the "improper conduct" criterion, the panel elaborates that conduct a practitioner "should know or would reasonably be expected to know" would constitute a violation. 677 A.2d. at 61. Therefore, Respondent's contention that 8 C.F.R. § 1003.102(n) applies only to intentional conduct is without merit.

Turning to the test identified in *Hopkins*, the Court finds Respondent's conduct satisfies all three criteria. 677 A.2d. at 60–61. First, Respondent's conduct was improper, as he reasonably should have been expected to identify the numerous factual errors as well as the absence of substantive argument concerning dispositive legal issues in his second ▉▉▉ brief, as discussed above. Second, Respondent's improper conduct clearly bore directly on a judicial process in an identifiable case, namely, the appeal of Mr. ▉▉▉ case. Third, Respondent's brief seriously impaired the judicial process, as it interfered with both the adjudication of Mr. ▉▉▉ appeal and contributed to the necessity of an additional IJ hearing to adjudicate Mr. ▉▉▉ case once again. The Board's recognition, based on the erroneous factual references, that the brief contained excerpts from an unrelated case does not negate Respondent's deficiencies in filing such a brief. In *Hopkins*, the D.C. Court of Appeals panel indicates that an attorney's misconduct does not need to result in an incorrect decision of a court in order to support a violation. 677 A.2d. at 60.

Moreover, the Board should not have been required to identify which of Respondent's statements were reliable. The Board should be able to rely on the submissions of attorneys admitted to practice before it. The Board's additional efforts to parse Respondent's ▉▉▉ brief for accurate statements required greater resources than other appeals, exacerbating the Board's existing backlog of appeals. In addition, as discussed above, Respondent's inattention to dispositive legal issues further interfered with the judicial process, as Respondent's legal arguments could not have yielded a successful appeal, and thereby wasted the Board's time and resources. Finally, the Board granted Mr. ▉▉▉ MTR and reopened proceedings, which necessarily will involve expending further resources of the Immigration Court to adjudicate Mr. ▉▉▉ case anew. *See* Exh. 2 at 190–93. Noting Respondent's brief contained numerous errors, the Board concluded that Respondent's representation of Mr. ▉▉▉ "was deficient, and … resulted in the denial of a full and fair hearing on the merits" of his claims. Exh. 2 at 192. In light of Respondent's shortcomings in representing Mr. ▉▉▉ on appeal, the Court finds he engaged in misconduct prejudicial to the administration of justice and undermined the integrity of the appellate adjudicative process. 8 C.F.R. 1003.102(n).

Therefore, Disciplinary Counsel has met its burden of showing by clear and convincing evidence that Respondent violated 8 C.F.R. § 1003.102(n), and the Court will sustain Charge Three. 8 C.F.R. § 1003.106(b).

11

012

4.    **Charge Four**

Charge Four alleges that Respondent violated 8 C.F.R. 1003.102(o). *See* Exh. 1 at 13. Section 1003.102(o) provides that a practitioner shall be subject to disciplinary sanctions in the public interest if they fail to provide competent representation to a client. As defined,

> competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners.

8 C.F.R. 1003.102(o).

Respondent disputes the 8 C.F.R. § 1003.102(o) charge by arguing his conduct should be distinguished from cases cited by Disciplinary Counsel in which practitioners repeatedly engaged in deficient performance. *See* Resp't Prehearing Brief at 22. He also reiterates his previous contention that his first brief on Mr. ███████ behalf sufficiently addressed all material legal issues raised on appeal in a coherent manner. *See id.* at 23. Respondent also maintains a clerical error does not implicate his duty of competence. *Id.*

In the present case, the Court finds that Respondent failed to provide competent representation in at least two ways. First, it is axiomatic that a competent practitioner must accurately portray facts and evidence, as well as provide adequate legal analysis to resolve the legal issues at hand. Respondent's second ███████ brief did neither. The fact that Respondent previously submitted a coherent and accurate brief in the same case did not free Respondent of the obligation to continue to represent his client competently when the case reached the Board a second time. He continued with the representation of Mr. ███████ when the case returned to the Board; he did not withdraw from the representation. As such, he had an ongoing duty to represent his client competently on appeal. Signing and submitting a brief containing numerous factual errors and inadequate legal analysis does not demonstrate Respondent undertook the requisite thoroughness and preparation necessary for competent representation of Mr. ███████.

Second, regardless of how extracted pages from an unrelated case merged with a portion of Respondent's brief as prepared, both ███████ briefs insufficiently address the dispositive legal issue concerning his client's asserted protected ground, a required element of all asylum claims. Respondent's failure to address a statutorily required ground for the relief his client sought demonstrates a lack of competent analysis of the factual and legal elements of the matter. 8 C.F.R.

12

1003.102(o). Thus, because Respondent failed to sufficiently identify and contest dispositive legal issues, he failed to provide competent representation to his client.[10]

Based on the foregoing, the Court finds that Disciplinary Counsel has met its burden of proving, by clear and convincing evidence, that Respondent failed to provide competent representation to Mr. ▇▇▇ Accordingly, the Court will sustain Charge Four.

### 5. Charge Five

Charge Five alleges that Respondent failed to act with reasonable diligence in representing Mr. ▇▇▇ in violation of 8 C.F.R. § 1003.102(q). Exh. 1 at 13. Reasonable diligence requires that "[a] practitioner's workload must be controlled and managed so that each matter can be handled competently." 8 C.F.R. § 1003.102(q)(1). Disciplinary Counsel argues that Respondent failed to act with reasonable diligence by signing and submitting the second ▇▇▇ brief without conducting sufficient review to identify the errors it contained. *See* Gov't Prehearing Brief at 25.

Respondent maintains that he did in fact review the appeal brief, and that the administrative error with the pages occurred after his review, during the copying phase. He asserts that it is customary in all types of legal offices to delegate to a paralegal the task of printing and filing a brief. *See* Resp't Prehearing Brief at 24. Respondent acknowledges this was a mistake and a failure of his office but disputes the allegation he demonstrated a lack of diligence. *Id.* He also assures the Court that he has implemented new procedures in his office to prevent a similar mistake from occurring again. *See id*; *see also* Exh. 3 at 21. In his Supplemental Declaration, Respondent indicates he thoroughly reviewed the second ▇▇▇ brief electronically on his computer, and then asked a staff member in his office to print the document for Respondent to sign. Resp't Suppl. Decl. at 2, ¶ 9. He then signed the brief in hard copy, believing its contents to be consistent with what he reviewed on his computer. *Id.* Respondent is not certain when the pages were switched, except that he knows the error occurred after he reviewed the brief electronically. *Id.* at ¶ 10.

A reasonably diligent practitioner would have conducted a proper review of their final work product when signing and filing a brief on behalf of a client. Based on Respondent's statements in his Supplemental Declaration, the Court believes that Respondent did not review the hard copy of the brief that he signed and instructed his paralegal to copy and file. *See id.* at ¶¶ 9–10. Even a

---

[10] Respondent's argument that discipline is warranted only in circumstances involving an ongoing pattern of deficient performance is incorrect. An ongoing pattern is not required by the regulation, which requires practitioners to handle each "particular matter" competently. 8 C.F.R. 1003.102(o). Moreover, the record demonstrates these proceedings are not Respondent's first encounter with disciplinary charges. *See* Exh. 2 at 279 (Disciplinary Counsel's July 16, 2018 warning letter concerning a preliminary inquiry into four previous disciplinary complaints about Respondent's conduct). Therefore, the violations charged herein have not been isolated occurrences.

cursory review would have revealed the brief contained factual statements and legal argument inapplicable to Mr. ███████ case. Respondent was on notice that a similar page snafu occurred with a previous filing, which also resulted in pages from an unrelated case being submitted as part of a client's appeal brief. *See* Exh. 2 at 280, 282. Discipline Counsel previously issued a warning letter to Respondent regarding misconduct in a nearly identical situation. *Id.* Considering he received a warning that a similar situation implicated attorney misconduct charges, the Court finds Respondent showed a lack of reasonable diligence by not reviewing the hard copy he signed several months after receiving this warning. Moreover, diligence in appellate practice requires a practitioner to meaningfully address all dispositive issues. As discussed above, the Court finds that Respondent's second appeal brief entirely overlooked the issue of whether his client was persecuted on account of a protected ground. His first brief references the issue in a perfunctory footnote that engaged in no substantive analysis.

For these reasons, the Court finds these deficiencies in inadequate review as well as insufficient attention to a dispositive legal issue demonstrate Respondent failed to act with reasonable diligence on behalf of Mr. ███████ The Court finds that Disciplinary Counsel has met its burden of proving, by clear and convincing evidence, that Respondent violated 8 C.F.R. § 1003.102(q).

## B.    COUNT TWO: D2021-0079

Count two concerns Respondent's representation of Mr. ███████

### 1.    Charge One

Charge One alleges that Respondent also violated 8 C.F.R. § 1003.102(j) in his representation of Mr. ███████ As discussed above, 8 C.F.R. § 1003.102(j) authorizes disciplinary sanctions if a practitioner has engaged in "frivolous behavior".

Disciplinary Counsel alleges that Respondent's appeal brief on behalf of Mr. ███████ failed to address two dispositive legal issues. The IJ denied his client's application for asylum, withholding of removal, and protection under the CAT because he found Mr. ███████ not credible; in the alternative, the IJ found Mr. ███████ was not harmed on account of his actual or an imputed political opinion, and also that Mr. ███████ could safely relocate in Bangladesh to avoid persecution. *See* Exh. 2 at 227–33. Disciplinary Counsel alleges that on appeal, Respondent addressed the IJ's adverse credibility determination, but failed to meaningfully challenge the IJ's findings concerning a lack of a protected ground or that his client could internally relocate in Bangladesh. *See* Exh. 2 at 246–53. Disciplinary Counsel contends that by doing so, Respondent filed an appeal that he reasonably should have known lacked an arguable basis in law or fact. *See* Gov't Prehearing Brief at 25. Disciplinary Counsel further maintains that conclusory statements

14

generally suggesting Mr. ███████ established eligibility for asylum fall short of the specific legal and factual analysis necessary to address dispositive issues. *Id.* at 27.

Respondent contends that appellate attorneys may choose which of a lower court's rulings to challenge on appeal. Resp't Prehearing Brief at 25. Respondent also argues that the IJ did not rely on the nexus or relocation findings as they were merely alternative findings. *Id.* Accordingly, Respondent claims that his strategic choice to focus on the IJ's adverse credibility determination was not frivolous. *Id.* at 25–26. Moreover, Respondent cites to a case arising in the United States Court of Appeals for the Second Circuit (Second Circuit) for the proposition that courts often require a "clear showing of bad faith" to impose sanctions for frivolous appeals. *In re 60 E. 80th St. Equities*, 218 F.3d 109, 119 (2d Cir. 2000).

The Court finds Respondent's arguments to be without merit. The record clearly demonstrates Respondent failed to address dispositive legal issues in Mr. ███████ appeal, as observed by the Board in adjudicating the appeal. As Respondent should be well aware, an applicant for asylum bears the burden of proof to demonstrate they satisfy all statutory eligibility criteria, including establishing their persecution was on account of a protected ground. *See* INA § 208(b)(1)(B); 8 C.F.R. §§ 1208.13(a)–(b). Where, as here, the IJ finds an applicant has not established past persecution, the applicant also bears the burden to demonstrate that they cannot relocate internally within the prospective country of removal to avoid persecution. 8 C.F.R. § 1208.13(b)(3)(i).

As the IJ made several, independently dispositive findings justifying the denial of Mr. ███████ case, Respondent's brief needed to meaningfully address each independent dispositive basis for the underlying denial. As discussed above, the IJ found Mr. ███████ had not met his burden to demonstrate harm on account of a protected ground, and found he could relocate to avoid future persecution. In order to prevail on his appeal in Mr. ███████ case, therefore, it was incumbent upon Respondent not only to dispute the IJ's credibility findings, but also to provide legal argument, based on specific facts and circumstances in the record, challenging the IJ's findings that Mr. ███████ was not persecuted on account of a protected ground and that he could relocate. In rendering a decision on Mr. ███████ appeal, the Board relied on the IJ's alternative findings on the merits, specifically affirming the IJ's finding that Mr. ███████ had not demonstrated he was harmed on account of any protected ground, including political opinion or imputed political opinion. Exh. 2 at 257. The Board notes in doing so that the brief "does not meaningfully challenge this finding on appeal." Exh. 2 at 257–58. The Board also upheld the IJ's relocation finding, again observing Mr. ███████ "does not meaningfully challenge the Immigration Judge's findings." *Id.* at 258. On the basis of these two unchallenged findings, the Board dismissed Mr. ███████ appeal, noting that issues not challenged are deemed waived. Exh. 2 at 258 (citing *Matter of Zhang*, 27 I&N Dec. 569, 569 n.2 (BIA 2019)). Respondent's failure

15

to contest dispositive findings on appeal guaranteed that the appeal could not prevail.[11] The Court finds that an appeal not capable of affecting the outcome is frivolous.

The Court disagrees with Respondent's contention that his conduct did not involve bad faith and therefore should not be sanctioned pursuant to 8 C.F.R. § 1003.102(j). As Disciplinary Counsel pointed out, the Second Circuit case cited by Respondent acknowledges case law in its circuit has varied in whether or not to impose a "bad faith" requirement. *See In re 60 E. 80th St. Equities*, 218 F.3d 109, 119 (2d Cir. 2000) (declining to choose between standards that do and do not require bad faith because conduct at issue clearly rose to the level of bad faith).

Regardless of Second Circuit law, no such bad faith requirement exists under 8 C.F.R. § 1003.102(j). Under the rule, sanctionable conduct includes when a practitioner "knows or reasonably should have known that his or her actions lack an arguable basis in law or in fact." 8 C.F.R. § 1003.102(j)(1). While knowingly engaging in bad faith appeals would likely satisfy this standard, the rule requires no finding of bad faith to apply. As such, the Court finds that filing an entirely meritless appeal can support a violation where Respondent reasonably should have known his brief lacked an arguable basis in law or fact. 8 CFR § 1003.102(j)(1). Therefore, Disciplinary Counsel has met its burden of proving, by clear and convincing evidence, that Respondent violated 8 C.F.R. § 1003.102(j).[12]

### 2. Charge Two

Charge Two alleges that Respondent engaged in conduct prejudicial to the administration of justice or that undermines the adjudicative process in violation of 8 C.F.R. § 1003.102(n). Exh. 1 at 20. Similar to the arguments raised concerning the previous charge, Disciplinary Counsel asserts Respondent's conduct in filing the ▮▮▮▮ appeal brief that did not present an arguable basis in law or fact that could have altered the outcome in violation of 8 C.F.R. § 1003.102(n). Disciplinary Counsel further states that this conduct fulfills the *Hopkins* criteria, as discussed *supra* Section III.A.3. In response to Charge Two, Respondent reiterates that he made a tactical decision to appeal on the adverse credibility issue. Resp't Prehearing Brief at 29.

---

[11] To be clear, Respondent's act of filing an appeal on behalf of Mr. ▮▮▮▮ was not frivolous conduct. Respondent is also correct that an appeal is not frivolous merely because it is unsuccessful.

[12] Respondent also initially asserted that his ▮▮▮▮ appeal brief did present a challenge to the IJ's relocation finding by stating in the brief that the Department of Homeland Security (DHS) had failed to rebut the presumption of future persecution. *See* Exh. 3 at 12–13. As discussed, the IJ found Mr. ▮▮▮▮ was not harmed on account of his actual or an imputed political opinion. *See* Exh. 2 at 230–31. As the IJ found he was not harmed on account of a statutorily protected ground, Mr. ▮▮▮▮ was not entitled to a presumption of future persecution. 8 C.F.R. § 1208.13(b)(1). Thus, Respondent's assertions that DHS failed to rebut his client's presumption are both inaccurate and insufficient to challenge the IJ's relocation finding.

16

As noted, Respondent filed a legally insufficient appeal brief that could not have changed the outcome of Mr. ▓▓▓▓▓s case. However, as a direct result of Respondent's submission of the appeal, the Board allocated resources. In addition, the Board set a briefing schedule and ordered transcripts, requiring the services of a transcriber. The resources the Board spent on Respondent's meritless appeal could have been allocated to the other cases in its backlog with substantive issues in dispute. By submitting a brief that waived dispositive legal issues on behalf of his client, Respondent caused the Board to waste resources. Therefore, the Court finds Respondent engaged in conduct prejudicial to the administration of justice and undermined the adjudicative process in violation of 8 C.F.R. § 1003.102(n).

### 3. Charge Three

Charge Three alleges that Respondent violated 8 C.F.R. § 1003.102(o). Exh. 1 at 20. The charged subsection implicates failure to provide competent representation to clients. 8 C.F.R. 1003.102(o).

Respondent argues his strategic decision based on the facts available does not amount to a lack of competence. *See* Resp't Prehearing Brief at 29. He acknowledges the appeal brief he submitted on behalf of Mr. ▓▓▓▓▓ "was not his best work." *Id.* However, he maintains that the Board denied the appeal in Mr. ▓▓▓▓▓s case on grounds Respondent "argued to the fullest extent available." *Id.* at 29–30.

Respondent's contention that he fully argued the grounds relied upon by the Board is inconsistent with the evidentiary record. As discussed above, the Board dismissed the appeal squarely on the dispositive issues Respondent *failed* to address: absence of a protected ground and internal relocation. Exh. 2 at 257–59. In fact, the Board noted that each of these findings were not meaningfully challenged. *Id.* Competent appellate representation requires a practitioner to identify and address those issues that directly affect the client's chances of succeeding on appeal. As noted *supra* Section III.A.4, the Court finds that Respondent's failure to contest dispositive legal issues on appeal constitutes a failure to provide competent representation. Therefore, the record demonstrates by clear and convincing evidence that Respondent violated 8 C.F.R. 1003.102(o) in his representation of Mr. ▓▓▓▓▓[13]

---

[13] The Court also notes Respondent cited to outdated law in the brief he submitted on behalf of Mr. ▓▓▓▓▓ *See* Exh. 2 at 247–48 (citing deportation provision of INA § 243(h) in an appeal in INA § 240 removal proceedings); *see also* Gov't Prehearing Brief at 31 n.11. While Respondent's citation to an outdated and inapplicable provision of a statute further demonstrates lack of competence, the Court finds it is not dispositive to its resolution of the 8 C.F.R. § 1003.102(o) charge.

17

018

4.    **Charge Four**

Charge Four alleges that Respondent violated 8 C.F.R. § 1003.102(q). Exh. 1 at 20–21. Disciplinary Counsel alleges Respondent failed to act with reasonable diligence in representing Mr. ████. *See* Gov't Prehearing Brief at 32.

Respondent asserts he represented Mr. ████ with reasonable diligence, maintaining that raising the adverse credibility finding on appeal was a reasonable strategic decision. However, the Court agrees with Disciplinary Counsel that the duty of diligence in the context of appellate practice requires thorough review of the dispositive legal issues and colorable legal argument addressing the particular facts in the client's case. Respondent's failure to address two dispositive issues, effectively waiving his client's opportunity to have his appeal make any difference to the outcome of his case, does not meet this standard. Given the deficiencies in his representation of Mr. ████ on appeal, the Court finds Respondent failed to act with reasonable diligence. Consequently, Disciplinary Counsel has satisfied its burden of proving, by clear and convincing evidence, that Respondent violated 8 C.F.R. § 1003.102(q).

## IV. <u>DISCIPLINARY SANCTIONS</u>

If the Court finds that one or more of the grounds for disciplinary action enumerated in the NID have been established by clear and convincing evidence, it shall rule that the disciplinary sanctions set forth in the NID be adopted, modified, or otherwise amended. 8 C.F.R. § 1003.106(b). The Court may impose the following penalties: (i) permanent expulsion; (ii) suspension, including immediate suspension; (iii) public or private censure; or (iv) such other disciplinary sanctions as the Court deems appropriate. 8 C.F.R. §§ 1003.101(a)(1)–(4). According to the American Bar Association's (ABA) Standards for Imposing Lawyer Sanctions, "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." Standards for Imposing Lawyer Sanctions § 9.1 (ABA 1992). Though such standards are not binding, the Court finds them instructive.

Respondent presented several compelling mitigating factors. The Court acknowledges and takes into account those mitigating factors when making its determination of disciplinary sanctions. However, the Court also acknowledges and takes into account the aggravating factors present in the case. A discussion of these factors and the appropriate sanctions appears below.

a.    **Aggravating Factors**

The ABA Standards state that "aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Standards for Imposing Lawyer Sanctions § 9.21 (ABA 1992). The ABA Standards enumerate aggravating factors,

18

019

including, most pertinent here: (1) prior disciplinary offenses; (2) pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge wrongful nature of conduct; (5) vulnerability of victim; and (6) substantial experience in the practice of law. *Id.* at § 9.22.

### i)    Prior Disciplinary Offenses

First and foremost, Respondent is not in Disciplinary Proceedings because of a one-time occurrence or a momentary lapse in judgment. As discussed above, Respondent's violations in the present case are not isolated instances. *See* Exh. 2 at 279. In July 2018, Discipline Counsel issued a Warning Letter to Respondent in a consolidated matter comprised of four complaints involving four different clients. *Id.* In that matter, Disciplinary Counsel found that Respondent's conduct violated 8 C.F.R. §§ 1003.102(c), (j), (l), (o), and (q) based on his conduct in three of the four complaints. *See id.* at 286. As such, Respondent was on notice his representation of other clients fell within the scope of attorney discipline. Particularly concerning, one of the prior complaints concerned a remarkably similar clerical error in which pages from an unrelated filing were submitted to the Board. *See* Exh. 2 at 280, 282. Several months after receiving this warning, in November 2018, Respondent then failed to perform sufficient review of the second ▮▮▮▮ appeal brief and submitted a final, signed brief in which pages from an unrelated case were again included. In these disciplinary proceedings, Respondent has indicated he has implemented review procedures in his office to prevent such clerical errors. Exh. 3 at 21. The opportune time, however, to implement more robust review procedures was when he received the warning letter, before committing the same error for at least a second time. The Court finds Respondent's prior disciplinary offenses and his failure to take timely remedial action to be serious aggravating factors.

### ii)    Pattern of Misconduct & (iii) Multiple Offenses

Respondent's misconduct implicates two counts, one involving five grounds of misconduct and another count involving four grounds. Although the allegations of misconduct involve multiple offenses, the Court acknowledges these charges originate from Respondent's conduct in two matters, the appeals of Mr. ▮▮▮▮ and Mr. ▮▮▮▮▮, which implicated a variety of interrelated provisions of 8 C.F.R. § 1003.102. What concerns the Court about the pattern that emerges in these proceedings is that Respondent failed to address dispositive issues on appeal on behalf of both of the clients in the underlying conduct as charged. The Court finds the pattern of repeatedly waiving dispositive legal issues as well as the aggregate number of counts and offenses charged, to be a moderate aggravating factor.

### iv)    Refusal to Acknowledge Wrongful Nature of Conduct

The Court acknowledges that Respondent has not disputed the majority of the factual allegations Disciplinary Counsel made against him. However, in his defense to the charges of

19

misconduct, Respondent has sought to minimize his own culpability, laying partial responsibility for the deficiencies in the ███ brief at the feet of his legal assistant, and arguing his errors amounted to no more than non-material, *de minimis*, and isolated clerical errors. Moreover, his contentions that his appeal briefs sufficiently addressed all pertinent legal issues presented on appeal demonstrate either a fundamental misapprehension of basic appellate advocacy or a misunderstanding of core concepts of immigration law. Both possibilities are of great concern to the Court. On the whole, Respondent's approach to these proceedings gives the Court pause as to whether he recognizes the adverse impact of waiving dispositive issues on appeal. This demonstrated lack of understanding concerns the Court, as a practitioner cannot correct and resolve a problem if they do not acknowledge such a problem exists. The Court finds Respondent's apparent inability to recognize these issues to be a relatively moderate aggravating factor.

### v)    Vulnerability of Victim

Respondent's clients were particularly vulnerable, considering both Mr. ███ and Mr. ███ were non-citizens, subject to detention, pursuing protection from persecution in their country of origin. The vulnerability of his former clients is a serious aggravating factor.

### vi)    Substantial Experience in the Practice of Law

Respondent was admitted to practice law in New York in 1987 and has more than thirty years of experience as an attorney. That experience should have instilled in him a commitment to upholding the duties and obligations owed to his clients. His experience ought to have shown Respondent the fundamental importance of thorough preparation and scrupulous review. Instead, his substandard efforts in these cases demonstrate a sloppiness and inattention to detail that belie his decades of experience. Consequently, his substantial experience is a considerable aggravating factor.

### b.  Mitigating Factors

Mitigating circumstances "are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Standards for Imposing Lawyer Sanctions § 9.31 (ABA 1992). Factors the Court considers in the present proceedings, as mitigating the present misconduct, include:

### i)    Absence of a Dishonest or Selfish Motive

There is no evidence Respondent was driven to engage in misconduct by a dishonest or selfish motive. Respondent also pointed out that the conduct at issue in this discipline proceeding was not committed with malicious intent. There is no indication in the record that Respondent intentionally sought to provide false information or otherwise mislead the Board. Aside from

perhaps reducing his own time commitment spent on review, Respondent did not personally benefit by engaging in such conduct other than, perhaps, his shoddy and inattentive review allowing his office to profit from handling more cases than he would have otherwise if the appropriate level of care and attention was given to each case. Consequently, Respondent's lack of malicious, dishonest, or selfish intent is a mitigating factor.

ii)    Full and Free Disclosure to Disciplinary Board or Cooperative
Attitude Toward Proceedings

The Court acknowledges Respondent's disclosures and appreciates his cooperation during these proceedings, which are also considerable mitigating factors.

iii)    Character or Reputation

Respondent submitted evidence of his extensive involvement in civic engagement as a distinguished leader in both the Nepali and Nepali-American communities. *See generally*, Exh. 3 at Tab A. He serves on a number of nationally and internationally recognized entities and organizations as part of his advocacy. He is the recipient of awards in recognition of his service. His generosity and commitment to public service is commendable, and represents a mitigating factor.

iv)    Remorse

Respondent has indicated that he is remorseful and accepts full responsibility for his mistakes. However, the Court is unsure whether that remorse stems from being required to defend himself against charges of misconduct, or the knowledge that he deprived his clients of a full and fair opportunity to have their appeals considered, or some combination of both. As Respondent did not testify in these proceedings, the Court cannot assess the sincerity of his remorse as stated in his documentary materials. Accordingly, the Court finds Respondent's remorse carries some, though not substantial, weight as a mitigating factor.

v)    Other Mitigating Factors

Beyond the mitigating factors discussed above, the Court also acknowledges that as a private practitioner, any sanction which includes a suspension will cause a loss of income to Respondent, and may affect his family, his law practice, and his employees that rely upon him as a practicing attorney. Moreover, the Court also acknowledges the nature of the underlying conduct at issue is not conduct of the most severe nature possible. While certainly sufficient for the Court to sustain the charges, as discussed above, the Court is mindful that Respondent distinguished his conduct from many of the cases cited in the record that involved significantly more severe conduct.

21

Respondent's lapses, though they warrant sanctions, are not the most severe the undersigned has encountered in adjudicating such matters.[14]

### c. Sanctions

In the NID, Disciplinary Counsel proposes that pursuant to the relevant ABA standards, Respondent should be suspended from the practice of law in front of the Board, Immigration Courts, and the DHS. Exh. 1 at 21. Disciplinary Counsel suggests that by applying the appropriate standards and considering the aggravating and mitigation factors, Respondent's suspension should be for a period of six months. *Id.* In response, Respondent requests that the Court impose no more than a private admonition. Considering both proposals, the Court will adopt neither and will craft an appropriate sanction that takes into consideration Respondent's misconduct, and the need to protect both the public and the integrity of the Immigration Court process, as well as the aggravating and mitigating factors in this case.

Disciplinary Counsel's request for the imposition of a six-month suspension is a penalty that is too long, in the Court's view, considering the severity of the conduct involved, and in consideration of the mitigating factors presented. The Court does not find, however, that a mere private admonition, as requested by Respondent, is an adequate sanction. That Respondent continued to engage in conduct violative of the relevant disciplinary regulations after having been warned clearly of this in the past is deeply troubling. It may well be that Respondent has filed other briefs of a substantially subpar nature, but in these proceedings Disciplinary Counsel has referenced only the two cases that comprise the instant charge, and another four cases for which Respondent was warned in the past.

The Court has serious reservations as to whether Respondent would revert to a pattern of unacceptable written advocacy should he merely receive another private admonition. The Court finds that a suspension from the practice of law is appropriate, but that a ninety-day suspension is sufficient. Respondent will be ordered suspended from the practice of law before the Immigration Courts, the Board, and the DHS, for a period of ninety days.

Accordingly, the following orders are hereby entered:

---

[14] In a closing summation, Respondent's counsel argued that it is now 2023 and the most recent alleged misconduct occurred in 2019, suggesting a suspension would not serve the public interest at this time. The Court notes Respondent's disciplinary proceedings span a period of time when many government operations came to a halt due to the COVID-19 emergency. In addition, the record evidence contains only Respondent's 2018 and 2019 work product that compelled referrals to Disciplinary Counsel. The undersigned adjudicates the instant matter based on the record evidence and finds it to be in the public interest to impose discipline in this matter.

22

**IT IS HEREBY ORDERED** that the charges under 8 C.F.R. §§ 1003.102(c), (j), (n), (o), and (q) be sustained.

**IT IS FURTHER ORDERED** that Respondent be suspended from the practice of law before the Immigration Courts, the Board of Immigration Appeals, and the Department of Homeland Security for a period of ninety (90) days.

10·3·23

_____
Date

_____
Brett M. Parchert
Adjudicating Official/Immigration Judge

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**UNITED STATES IMMIGRATION COURT**

In the Matter of

**Khagendra GHARTI-CHHETRY,**

Respondent

**DISCIPLINARY CASE # D2020-0024, D2021-0079**

In Attorney Discipline Proceedings

On Behalf of Respondent:
Tyler Maulsby, Esquire
Frankfurt Kurnit Klein & Selz PC
28 Liberty Street, 35th Floor
New York, NY 10005

On Behalf of EOIR:
Paul A. Rodrigues, Disciplinary Counsel
Brett D. Burton, Associate General Counsel
Executive Office for Immigration Review
Office of the General Counsel
5107 Leesburg Pike, Suite 2600
Falls Church, Virginia 22041

On Behalf of USCIS:
Toinette M. Mitchell, Disciplinary Counsel
Office of the Chief Counsel
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
5900 Capital Gateway Drive
Camp Springs, ▇ 20588
Mail Stop: 2120

**ORDER OF THE IMMIGRATION JUDGE**

**IT IS HEREBY ORDERED** that:

[x ] 1.  The grounds under 8 C.F.R. §§ 1003.102(c), (j), (n), (o), and (q) set forth in the Notice of Intent to Discipline have been established by clear and convincing evidence.

The following disciplinary sanction shall be imposed:

[ ] Practitioner shall be permanently expelled from practice before:
   [ ] The Board of Immigration Appeals and the Immigration Courts
   [ ] The Department of Homeland Security
   [ ] Both

025

[x ] Practitioner shall be suspended from practice before:
      [ ] The Board of Immigration Appeals and the Immigration Courts
      [ ] The Department of Homeland Security
      [x] Both
      Until: 90 days have elapsed from the date of this decision.

[ ] Practitioner shall be publicly/privately censured

[ ] Other appropriate disciplinary sanction

Date: _10 - 3 -23_

**Brett M. Parchert**
**Adjudicating Official - Immigration Judge**

APPEAL: RESERVED for all parties
APPEAL DUE BY: _11 - 2 - 23_
EOIR 45

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY: **MAIL** (M) PERSONAL SERVICE (P)
TO: [ ] PRACTITIONER [ ] PRACTITIONER'S ATT/REP [ ] DHS/EOIR
DATE:_____ BY: COURT STAFF_____

# EXHIBIT D

PAUL A. RODRIGUES
EOIR Disciplinary Counsel

BRETT D. BURTON
Associate General Counsel

Executive Office for Immigration Review
U.S. Department of Justice
5107 Leesburg Pike, Suite 2600
Falls Church, Virginia 22041
(571) 215-0928
EOIR.Attorney.Discipline@usdoj.gov

Counsel for the Government

### UNITED STATES DEPARTMENT OF JUSTICE
### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### IMMIGRATION COURT

| | |
|---|---|
| **In the Matter of** ) | **Disciplinary Case Nos.  D2020-0024** |
| ) | **D2021-0079** |
| **KHAGENDRA GHARTI-CHHETRY,** ) | |
| ) | **Adjudicating Official: Hon. Brett Parchert** |
| **Respondent.** ) | |
| ) | **Next Hearing Date: June 9, 2023** |

### GOVERNMENT'S PRE-HEARING BRIEF
### IN SUPPORT OF THE DISCIPLINARY CHARGES AND SANCTION

002

## <u>TABLE OF CONTENTS</u>

I.    Procedural History ...................................................................................................1

II.   Statement of Facts ...................................................................................................2

      A.    Count One (D2020-0024) - Matter of ████ ████ A209-282-592 ...................2

      B.    Count Two (D2021-0079) - Matter of ████ ██ ████ A215-891-058 .....6

III.  Argument ..................................................................................................................9

      A.    Count One (D2020-0024) - Matter of ████ ████ A209-282-592 .................10

            1.    Respondent's Second Appeal Brief, with Reckless Disregard,
                  Made False Statements of Material Fact, in Violation of 8 C.F.R.
                  § 1003.102(c) .............................................................................................10

            2.    Respondent Engaged in Frivolous Behavior, in Violation of 8 C.F.R.
                  § 1003.102(j), When He Filed the Second Appeal Brief that Lacked
                  an Arguable Basis in Fact or in Law...........................................................15

            3.    Respondent Engaged in Conduct Prejudicial to the Administration of
                  Justice or that Undermines the Integrity of the Adjudicative Process, in
                  Violation of 8 C.F.R. § 1003.102(n), When He Filed the Deficient
                  Second Appeal Brief and Mr. ████ Case Had to be Reopened ..........19

            4.    Respondent Demonstrated a Lack of Competence, in Violation of
                  8 C.F.R. § 1003.102(o), When He Filed the Deficient Second Appeal
                  Brief ............................................................................................................21

            5.    Respondent Demonstrated a Lack of Diligence, in Violation of
                  8 C.F.R. § 1003.102(q), When He Filed a Deficient Appeal Brief
                  Without Conducting a Review of the Brief ................................................24

      B.    Count Two (D2021-0079) - Matter of ████ ██ ████ A215-891-058 ...25

            1.    Respondent Engaged in Frivolous Behavior, in Violation of
                  8 C.F.R. § 1003.102(j), When He Drafted and Filed an Appeal Brief
                  that Lacked an Arguable Basis in Law or in Fact Because
                  It Did Not Meaningfully Address Dispositive Issues ...............................25

            2.    Respondent Engaged in Conduct Prejudicial to the Administration of
                  Justice or that Undermines the Integrity of the Adjudicative Process,
                  in Violation of 8 C.F.R. § 1003.102(n), When He Filed a
                  Frivolous Appeal Brief ..............................................................................29

i.

3.      Respondent Demonstrated a Lack of Competence, in Violation of
        8 C.F.R. § 1003.102(o), When He Filed the Deficient Appeal Brief
        that Failed to Address Dispositive Issues ...................................................30

4.      Respondent Demonstrated a Lack of Diligence, in Violation of
        8 C.F.R. § 1003.102(q), When He Filed the Deficient Appeal Brief
        that Failed to Address Dispositive Issues ...................................................32

C.   Respondent Must be Suspended from Practice Before the Board, the
     Immigration Courts, and DHS ...........................................................................33

IV.   Conclusion ....................................................................................................................39

ii.

**GOVERNMENT'S PRE-HEARING BRIEF**
**IN SUPPORT OF THE DISCIPLINARY CHARGES AND SANCTION**

Pursuant to the Court's February 15, 2023 order and Chapter 4.19 of the *Immigration Court Practice Manual*, the Government respectfully submits this pre-hearing brief in support of the charges alleged and the sanction recommended in the Notice of Intent to Discipline (NID). As will be shown here, Respondent Khagendra Gharti-Chhetry[1] engaged in professional misconduct in violation of the Rules of Professional Conduct (Rules) at 8 C.F.R. § 1003.102 in (1) *Matter of* ████ ████ when he drafted and filed an appeal brief with an argument section that included false statements of material fact completely unrelated to his client's case and erroneous or non-existent factual and legal analysis; and in (2) *Matter of* ████ █ ███████ when he drafted and filed an appeal brief that failed to provide any factual or legal analysis of his client's case, as he did not "meaningfully challenge" dispositive issues on appeal.  This misconduct, the harm to his clients and the legal system, and aggravating factors, such as Respondent's prior misconduct (some of which is similar to the conduct at issue) and failure to acknowledge his wrongdoing, warrant discipline in the form of at least a 6-month suspension from the practice of law before the Board of Immigration Appeals (Board), the Immigration Courts, and the Department of Homeland Security (DHS).

## I.    Procedural History

On June 9, 2022, the Disciplinary Counsel for the Executive Office for Immigration Review (EOIR) and the Disciplinary Counsel for the DHS (the Government) initiated this disciplinary action upon the filing of the NID against Respondent with the Board.  Exh. 1.[2]  On

---

[1] Respondent was admitted to practice in the New York State Bar on December 7, 1987.

[2] Exhibits numbers are referenced as assigned by the Adjudicating Official.

1

the same date, the Government submitted its initial evidentiary exhibits in support of the NID.

Exh. 2.  On or about July 28, 2022, Respondent filed a written answer requesting a hearing and

unpaginated supporting exhibits.  Exh. 3.

On August 15, 2022, the Board forwarded the record to the Office of the Chief

Immigration Judge for the appointment of an adjudicating official, and this Court was

subsequently assigned as the adjudicating official.  Exh. 4.  On February 15, 2023, the Court held

a pre-hearing conference via Webex, marked exhibits, identified issues in contention and topics

that should be addressed in pre-hearing briefs, conferred with the parties about how to proceed,

set a briefing schedule for the parties, and scheduled another hearing on June 9, 2023, to further

discuss the evidence in the case.[3]

## II.    Statement of Facts

**A.    Count One (D2020-0024) - Matter of ████ ████ A209-282-592**

The factual allegations supporting Count One of the NID, paragraphs 1-36, which are

related to Respondent's conduct in ████ are not in dispute because Respondent's answer

wholly admits the factual allegations in paragraphs 1-36 of the NID.  *Compare* Exh. 1 at 5-12, ¶¶

1-36 *with* Exh. 3 at 13-17, ¶¶ 1-36.  Respondent's answer provides explanations or defenses in

relation to some of the factual allegations, which will be addressed in the Government's

argument.  Exh. 3 at 14-17, ¶¶ 7-9, 13-29, 32, 34.  Based on Respondent's factual admissions,

which are supported by the Government's evidence, the factual allegations in the NID have been

established by clear and convincing evidence.

It is undisputed that the following occurred in ████  On June 13, 2017,

Immigration Judge Virginia Perez-Guzman denied Mr. ████ applications for asylum,

---

[3] During the hearing, Respondent's counsel stated that he stood by the answer filed by Respondent's former counsel.

withholding of removal, and protection under the Convention Against Torture.  Exh. 1 at 5, ¶ 1;

Exh. 2, Tab B at 99; Exh. 3, at 13, ¶ 1.  Judge Perez-Guzman denied the applications for relief

because Mr. ███ did not meet his burden of proof due to a lack of credibility and evidence to

corroborate his testimony.  Exh 1 at 5, ¶ 2; Exh. 2, Tab A at 75-76 and Tab B at 90-98; Exh. 3 at

13, ¶ 2.  Alternatively, Judge Perez-Guzman denied Mr. ███ application for asylum because

he had not shown that the harm he suffered constituted persecution, and even if the harm

suffered rose to the level of persecution, it was not on account of the protected ground of

political opinion or imputed political opinion as claimed.  *Id.*

Respondent appealed Judge Perez-Guzman's decision, and on September 15, 2017,

Respondent filed his first appeal brief in ███  Exh. 1 at 5, ¶ 3; Exh. 2, Tab D at 107-08;

Exh. 3 at 14, ¶ 3.  The Board did not consider the merits of the appeal because it remanded the

record to the Immigration Court for further factfinding and to determine if Mr. ███ should be

allowed to apply for asylum before the U.S. Citizenship and Immigration Services (USCIS).

Exh. 1 at 5, ¶ 4; Exh. 2, Tab E at 133, 137; Exh. 3 at 14, ¶ 4.  On remand, USCIS declined

jurisdiction, the Immigration Court certified the case back to the Board, and the Board issued a

new briefing schedule.  Exh. 1 at 5-6, ¶¶ 4-5; Exh. 2, Tabs E-G at 133-143; Exh. 3 at 14 ¶¶ 4-5.

On November 13, 2018, after receiving a briefing extension, Respondent filed a second

appeal brief in ███  Exh. 1 at 6, ¶ 6; Exh. 2, Tab G at 142-43, Tab H at 144-170; Exh. 3 at 14,

¶ 6.  Respondent's second appeal brief includes numerous misstatements of fact concerning

Mr. ███ case, errors related to the applicable law, and missing or irrelevant factual and

legal analysis.

- Respondent's second appeal brief states the incorrect dates when the Immigration Court

  held the individual hearing, when Judge Perez-Guzman's issued her decision, and when

3

007

Respondent filed the initial appeal.  Exh. 1 at 6, 10, ¶¶ 7-9, ¶ 29; Exh. 2, Tab H at 147, 150; Exh. 3 at 14, 16-17, ¶¶ 7-9, 29.

- Respondent's second appeal brief has an argument section related to Judge Perez-Guzman's denial of a continuance.  The section sets forth the general legal standards for granting a continuance, but does not contain factual statements or legal arguments as to why Judge Perez-Guzman erred.  *See* Exh. 1 at 6-7, ¶¶ 11-13; Exh. 2, Tab H at 155-56; Exh. 3 at 14, ¶¶ 11-13.

- Although Mr. ████ case arose out of the jurisdiction of the United States Court of Appeals for the Seventh Circuit (Seventh Circuit), Respondent's second appeal brief erroneously states that his case arose out of the jurisdiction of the United States Court of Appeals for the Second Circuit (Second Circuit) and overwhelmingly cites to cases outside of the Seventh Circuit.  *See* Exh. 1 at 7, ¶¶ 14, 19; Exh. 2, Tab H at 162; Ex. 3 at 14, ¶¶ 14, 19.

- Respondent's second appeal brief includes an argument regarding Judge Perez-Guzman's decision about lack of corroboration and references findings by Judge Perez-Guzman and the following evidence and incidents that are not in the record: a letter from the Bangladesh National Party (BNP) regarding Mr. ████ membership and participation in the party; medical records regarding injuries he suffered from a July 2013 assault; and assertions that Mr. ████ was shot at while riding in a car.  Exh. 1 at 7-8, ¶¶ 15-18; Exh. 2, Tab H at 159-161; Exh 3 at 15, ¶¶ 15-18.

- Respondent's second appeal brief includes arguments about Mr. ████ eligibility for asylum and withholding of removal that reference findings by Judge Perez-Guzman and the following incidents and evidence that are not in the record: a July 2013 beating with

4

sticks resulting in a broken finger and supported by a medical record; a February 2014 attack resulting in a loss of consciousness that led to treatment at a hospital; threats to Mr. ▮▮▮▮ parents and vandalization of their home, as evidenced by affidavits from the parents; Mr. ▮▮▮▮ being shot at; Awami League Party (ALP) members identifying Mr. ▮▮▮▮ as BNP; Mr. ▮▮▮▮ living at a warehouse for six months; Mr. ▮▮▮▮ twice attempting to report attack incidents to the police and the police refusing to take the reports; and an incorrect transcript citation to the assertion that ALP members would kill Mr. ▮▮▮▮ upon his return to Bangladesh. Exh. 1 at 8-10, ¶¶ 20-28; Exh. 2, Tab A at 46, 52 and Tab H at 163-168; Exh. 3 at 15-16, ¶¶ 20-28.

- Respondent's second appeal brief does not address or challenge Judge Perez-Guzman's conclusion that Mr. ▮▮▮▮ did not establish that the alleged harm or persecution suffered was on account of the protected ground of political opinion or imputed political opinion as claimed. Exh. 1 at 10-11, ¶¶ 31-32; Exh. 3 at 17, ¶¶ 31-31.

On January 30, 2019, the Board issued a decision dismissing Mr. ▮▮▮▮ appeal due to his lack of credibility and corroboration regarding his claims. Exh. 1 at 11, ¶ 33; Exh. 2, Tab I at 175-76; Exh. 3 at 17, ¶ 33. The Board's decision noted:

> The respondent's appellate brief describes incidents that were not raised at his hearing (including, inter alia, being shot while riding in a car), cites to evidence that is not in the record, makes erroneous transcript citations, and references factual findings the Immigration Judge did not make (Respondent's Appeal Br. at 13-21). The brief also erroneously alleges that this case arises within the jurisdiction of the United States Court of Appeals for the Second Circuit (Respondent's Appeal Br. at 16). These portions of the respondent's brief appear to have been inadvertently extracted from a filing in unrelated proceedings.

Exh. 1 at 11-12, ¶ 34; Exh. 2, Tab I at 175-76; Exh. 3 at 17, ¶ 34.

Subsequently, Mr. ▮▮▮▮ filed a pro se motion to reopen based on ineffective assistance

of counsel, which the Board granted on August 6, 2019, stating:

> Further, we note that at [Mr. ████████ merits hearing, the Immigration Judge expressed dissatisfaction with the attorney's lack of preparation and the failure to provide corroborating evidence, even though the proceedings had been continued to enable the collection of such corroborating evidence (Tr. at 39, 41, 44-45). With regard to the attorney's handling of [Mr. ████████ appeal, we noted in our prior order that [Mr. ████████ brief contained numerous errors, and we concluded that portions of the brief appeared to have been inadvertently extracted from a filing in unrelated proceedings.

Exh. 1 at 12, ¶¶ 35-36; Exh. 2, Tab J at 178-188; Exh. 3 at 17, ¶¶ 35-36.

## B.    Count Two (D2021-0079) - Matter of ████████ ███ ████████ A215-891-058

The factual allegations supporting Count Two of the NID, paragraphs 38-49, which are related to Respondent's conduct in ████████ are largely not in dispute because Respondent's answer wholly admits the material factual allegations at paragraphs 38-46 and 49 of the NID. *Compare* Exh. 1 at 5, ¶¶ 38-49 *with* Exh. 3 at 18, ¶¶ 38-46, 49.  Respondent disputes the allegations at paragraphs 47 and 48, which state that Respondent's appeal brief in ████████ did not meaningfully address, challenge, or argue against the findings that Mr. ████████ failed to establish persecution on account of a protected ground or that Mr. ████████ would be able to safely relocate in Bangladesh to avoid future harm if he returned.  Exh. 1 at 19, ¶¶ 47-48; Exh. 3. At 18, ¶¶ 47-48.  While Respondent disputes these allegations, he admits the allegation at paragraph 49, discussed below, in which the Board found that his brief did not "meaningfully challenge" the Immigration Judge's findings on these issues.  Exh. 1 at 20, ¶ 49; Exh. 3 at 18, ¶ 49.  To the extent that allegations at paragraphs 47 and 48 are in dispute because they involve factual and legal determinations related to the alleged Rule violations, they will be addressed in the Government's argument.  Nonetheless, based on Respondent's factual admissions, which are supported by the Government's evidence, the material factual allegations supporting Count Two

have been established by clear and convincing evidence.

It is undisputed that the following occurred in ███████  On June 18, 2019, Immigration Judge Brandon Hart denied Mr. █████████ applications for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed to Bangladesh. Exh. 1 at 13, ¶ 38; Exh. 2, Tab O at 234; Exh. 3 at 18, ¶ 38.   Judge Hart denied Mr. ████████ application for asylum based on an adverse credibility determination and, alternatively, concluded that Mr. ████████ was not eligible for asylum because, inter alia, he was not harmed on account of his political opinion or his father's political opinion (imputed political opinion), and because he could safely relocate in Bangladesh to avoid future harm.  Exh. 1 at 13, ¶ 39; Exh. 2, Tab O at 227-233; Exh. 3 at 18, ¶ 39.

On October 1, 2019, Respondent filed a 14-page (including cover page) appeal brief on behalf of Mr. ████████ with the Board.  Exh. 1 at 14, ¶ 40; Exh. 2, Tab Q at 240; Exh. 3 at 18, ¶ 40.  Respondent's appeal brief, at pages 2-4, includes a "Preliminary Statement" and "Statement of Facts and Procedural History."  Exh. At 1 at 14, ¶ 41; Exh. 2, Tab Q at 241-43; Exh. 3 at 18, ¶ 41.  Page 4 of the brief concludes with a section entitled, "Statement of Issues" with the following:

> (I)When is an IJ's adverse credibility determination proper?
> (II) What is the standard of "past persecution"?
> (III) What kind of inconsistencies in a respondent's testimony can support an IJ's
> adverse credibility determination?

Exh. At 1 at 14, ¶ 42; Exh. 2, Tab Q at 243; Exh. 3 at 18, ¶ 42.  Pages 5 and 6 of the brief consist of a section entitled, "Standard of Review," that includes a block quotation from the Federal Register regarding the Board's scope of review on appeal, which has been codified at 8 C.F.R. § 1003.1(d)(3) since 2002, and paragraphs regarding the 2002 Federal Register supplementary

7

information discussing the regulation. Exh. 1 at 14-15, ¶ 43; Exh. 2, Tab Q at 242-245; Exh. 3 at 18, ¶ 43. The remaining eight (8) pages of the brief contain the argument regarding Mr. ████ eligibility for asylum. Exh. 1 at 15, ¶ 44; Exh. 2, Tab Q at 246-253; Exh. 3 at 18, ¶ 44. At pages 7 and 8 of the brief, Respondent specifically addresses and argues against Judge Hart's adverse credibility determination. Exh. 1 at 15, ¶ 45; Exh. 2, Tab Q at 246-47; Exh. 3 at 18, ¶ 45. The remainder of Respondent's brief, beginning on page 8 and continuing through page 14, is a general recitation of asylum law without case-specific analysis or arguments related to the decision being appealed. Exh. 1 at 15, ¶ 46; Exh. 2, Tab Q at 247-253; Exh. 3 at 18, ¶ 46.

On November 22, 2019, the Board dismissed Mr. ████ appeal. Exh. 1 at 20, ¶ 49; Exh. 2, Tab R at 258; Exh. 3 at 18, ¶ 49. The Board resolved the appeal on the merits without addressing Judge Hart's adverse credibility determination. Exh. 1 at 20, ¶ 49 n. 5; Exh. 2, Tab R at 257 n. 1; Exh. 3 at 18, ¶ 49. The Board concluded that Respondent's appeal brief did not "meaningfully challenge" Judge Hart's finding that "party members inflicted this harm on [Mr. ████ because they wanted to locate his father; they did not seek to harm [Mr. ████ who at the time of this harm was only 14 years old, on account of an imputed political opinion, or any other protected ground." Exh. 1 at 20, ¶ 49; Exh. 2, Tab R at 257-58; Exh. 3 at 18, ¶ 49. The Board also concluded that the appeal brief did not "meaningfully challenge" Judge Hart's "finding that it has been more than 4 years since [Mr. ████ was last harmed in Bangladesh and he was able to safely relocate inside the country and avoid persecution . . . . [t]he Immigration Judge's unchallenged findings in this regard support his conclusion that it is not objectively reasonable that [Mr. ████ will be persecuted in the future in Bangladesh on account of a ground protected under section 101(a)(42)(A) of the Act." *Id*.

### III.    Argument

An adjudicating official may impose disciplinary sanctions against any practitioner if the adjudicating official finds that it is in the public interest to do so.  8 C.F.R. § 1003.101(a).  It is in the public interest to impose disciplinary sanctions against a practitioner who is authorized to practice before the Board, the Immigration Courts, and DHS when such person has engaged in criminal, unethical, or unprofessional conduct, or in frivolous behavior, as set forth in 8 C.F.R. § 1003.102.  *Id.*

The Government bears the burden of proving the grounds for disciplinary sanctions enumerated in the NID by clear and convincing evidence.  8 C.F.R. § 1003.106(a)(2)(iv).  Evidence is "clear and convincing" only if it establishes that "the thing to be proved is highly probable or reasonably certain."  BLACK'S LAW DICTIONARY (11th ed. 2019).  "Clear and convincing" evidence is more than a preponderance, the standard in civil cases, but less than evidence beyond a reasonable doubt, the standard for criminal trials.  *Id.*

As detailed above, the material factual allegations supporting the NID are not in dispute.  The primary issues in dispute are whether, as alleged in the NID, Respondent's conduct violated 8 C.F.R. §§ 1003.102(c) (false statement of material fact or law), 1003.102(j) (frivolous behavior), 1003.102(n) (conduct prejudicial to the administration of justice), 1003.102(o) (competence), or 1003.102(q) (diligence), and if so, the appropriate sanction.  Exh. 1 at 13, 19-21, ¶¶ 37(a)-(e), 47-48, 50 (a)-(d); Exh. 3 at 18-19, ¶¶ 37(a)-(e), 47-48, 50 (a)-(d).

As argued below, Respondent engaged in professional misconduct in violation of the alleged Rules.  In ████ Respondent drafted, signed, and filed an appeal brief that was littered with false statements, patently frivolous factual and legal analysis, and numerous other errors because he failed to review the brief and easily notice that it contained facts and arguments from

9

013

another client's case and did not address the dispositive issues in Mr. ███ case.  In

████ Respondent drafted and filed a frivolous appeal brief that lacked an arguable basis in

law or in fact because it did not meaningfully address the dispositive issues, as it relied on

boilerplate language rather than factual or legal analysis of Mr. ███ case.

Respondent's conduct violates a number of Rules, and the public interest requires a

public disciplinary sanction.  The Government recommends a suspension of at least 6 months

because: Respondent's misconduct was egregious; Respondent caused harm to his clients and the

Board; Respondent previously had been warned to avoid similar misconduct; Respondent had

previously engaged in other misconduct for which he received a warning; and Respondent has

shown little understanding that his conduct was improper to suggest that he will not repeat it.

**A.    Count One (D2020-0024) - Matter of ███ ███ A209-282-592**

**1.    Respondent's Second Appeal Brief, with Reckless Disregard, Made False
Statements of Material Fact, in Violation of 8 C.F.R. § 1003.102(c).**

Under 8 C.F.R. § 1003.102(c), a practitioner shall be subject to disciplinary sanctions

when he or she:

> knowingly or with reckless disregard makes a false statement of material fact or
> law, or willfully misleads, misinforms, or deceives any person (including a party to
> a case or an officer or employee of the Department of Justice), concerning any
> material and relevant matter relating to the case, including knowingly or with
> reckless disregard offering false evidence.

Respondent violated 8 C.F.R. § 1003.102(c) because he filed, with reckless disregard,[4] the

second ███ appeal brief that falsely stated and attributed facts from another client's case to

Mr. ███ and his claim for asylum and related relief.

---

[4] As of this filing, the Government has no evidence (and does not expect to uncover evidence) that Respondent
knowingly filed the appeal brief with false statements of material fact.  If Respondent had acted knowingly, he
would have been exhibiting a malicious intent that would raise the seriousness of this case to another level.

10

As demonstrated by the evidence, including the Board's decision, and Respondent's admissions, Respondent's second appeal brief contained false statements of material fact because the brief included facts about another client that were falsely attributed to Mr. ███ and not supported by the immigration court record. The falsity of the facts about Mr. ███ that Respondent stated in the appeal brief is shown through a simple comparison with Mr. ███ evidentiary record before the immigration court.

In his removal proceedings before the Chicago Immigration Court, Mr. ███ sought asylum and related relief based on political opinion and imputed political opinion. Exh. 2, Tab A at 36, Tab B at 87. Mr. ███ testified that his father was a member of the Jatiya Party and that the ALP harassed his father and demanded that the father join the ALP. Exh. 2, Tab A at 36-37, 39, Tab B at 87. Mr. ███ father died in 2010, and about two years after his father's death, members of the ALP began targeting and harassing Mr. ███ when he was walking between his home and school. Exh. 2, Tab A at 39-41, Tab B at 88. Mr. ███ testified that between 2012 and 2014, ALP members bothered and harassed him, sometimes grabbing his collar and slapping him. Exh. 2, Tab A at 42-43, Tab B at 88. In July 2014, Mr. ███ stated that the ALP assaulted him with sticks because he did not attend their meetings and that he suffered a fractured leg and an injured hand. Exh. 2, Tab A at 48-50, Tab B at 88-89, 94-95. Mr. ███ went to the hospital but did not report the incident to the police. Exh. 2, Tab A at 49-51, Tab B at 89. In August 2015, Mr. ███ testified that the ALP threatened to kill him if he did not join the party, and Mr. ███ family relocated him to Dhaka. Exh. 2, Tab A at 51-52, Tab B at 89. In 2016, after the ALP confronted Mr. ███ sister about his whereabouts, Mr. ███ family sent him to the United States. Exh. 2, Tab at 52, Tab B at 90. After he was in the United States, in March 2017, Mr. ███ heard that the ALP came to his home, and they slapped his

11

sister and attempted to rape her.  Exh. 2, Tab A at 53-54, Tab B at 90.

In contrast to the above facts, the argument section of Respondent's second ██████ appeal brief references incidents and evidence in which Mr. ████ is a member of the BNP. Exh. 2, Tab H at 159.  The brief, citing to an immigration judge decision and hearing transcript not found in ████[5] attributes the following events and evidence to Mr. █████ a July 2013 beating with sticks resulting in a broken finger and supported by a medical record; a February 2014 attack resulting in a loss of consciousness that led to treatment at a hospital; threats to Mr. ████ parents and vandalization of their home, as evidenced by affidavits from the parents; Mr. █████ being shot at; Mr. █████ living at a warehouse for six months; and Mr. █████ twice attempting to report attack incidents to the police and the police refusing to take the reports.  Exh. 2, Tab H at 159-167.  All of this information in the brief is contradicted by Mr. ██████ record before the immigration court and clearly relates to another client's case.

Respondent's second appeal brief also falsely states that Mr. ██████ case is within the jurisdiction of the Second Circuit.  Exh. 2, Tab H at 162.  Mr. ██████ case was decided at the Chicago Immigration Court, which is within the jurisdiction of the Seventh Circuit, and Respondent's representation to the contrary, materially misstates the fact of the applicable law. Exh. 2, Tab A at 3; Tab B at 83.

Respondent acted with reckless disregard when he filed the second appeal brief in ██████ with numerous false factual statements that are material to the determination of whether Mr. █████ was eligible for asylum and related relief.  "Reckless disregard" is defined as the "[c]onscious indifference to the consequences of an act."  Black's Law Dictionary (11th ed.

---

[5] The appeal brief states that the individual hearing occurred on December 20 and 22, 2016.  Exh. 2, Tab H at 161. Mr. █████ individual hearing occurred on June 13, 2017.  Exh. 2, Tab A at 2.

2019). It "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014) (citations omitted); *see Matter of Martin C. Liu*, D2018-0188 at 10, *available at* https://www.justice.gov/eoir/page/file/1489946/download, (A.O. May 15, 2020) (finding that an attorney acted with reckless disregard when he falsely stated that he was a licensed attorney because he failed to abide by his obligation to keep abreast of requirements to maintain his license).

Here, Respondent had a duty to carefully review the second appeal brief before signing and filing it with the Board to ensure that it was factually accurate. *See Matter of Weinstein*, 4 A.D. 3d 29, 33-34 (N.Y. App. Div. 2004) (finding that a respondent had "an obligation to ensure the accuracy of the relevant details of the petition he drafted."). As stated in his answer and the affidavit of his paralegal, Respondent asked his paralegal to "print the brief for Mr. ██ ███ for his signature." Exh. 3 at 9, Tab E (paralegal affidavit). Regardless of whether Respondent's paralegal made an "honest mistake" or "administrative error" when he printed the brief and "mixed up" pages of the ████ brief with another brief as Respondent claims or as is more likely, Respondent copied-and-pasted arguments from another client's brief into the second ████ brief,[6] Respondent had an opportunity to review and proofread the brief before signing it.

---

[6] While Respondent's explanation for the contents of the second appeal brief is ultimately immaterial because he had an obligation to review the brief before signing, the explanation is not credible. It is statistically improbable that two briefs from unrelated cases would be "mixed up" at a copier and the pagination would match up and more significantly, that sentences would continue and logically flow from page to page in the "mixed up" brief, as it does in ████ Exh. 2, Tab H at 145-170.

Respondent's explanation is suspect for another reason. Respondent has not submitted the other brief that was allegedly "mixed up" with the second appeal brief in ████ If this is incident happened as he claims, Respondent should be able to easily produce the other appeal brief that was filed at or around the same time as the ████ brief. He should have stated or shown that the other brief erroneously included the ████ facts, or offered an explanation for how that brief was not "mixed up" upon filing.

The likely probability is that Respondent used another brief as a template for the ████ brief or erroneously copied-and-pasted portions from a brief in an unrelated case into the second ████ appeal brief. Noteworthy in this regard is how the second ████ appeal brief switches between font styles, as if material is being

13

Exh. 3 at 1, 9, Tab E.  Respondent did not review and proofread the brief before signing and filing.  Had he done so, he would have easily seen (or caught) that the brief made numerous false statements of fact based on the completely different set of facts presented.  Further, such a review would have shown that he had commonsense procedures in place, much like the "new policies and procedures" he has now adopted that includes Respondent's final review of a printed brief and that is an implicit admission that he did not review the brief in ▮▮▮▮  Exh. 3 at 9.  Respondent's failure to review the second ▮▮▮▮ appeal brief was a dereliction of his obligation to not submit a brief with false statements of fact, as he displayed a "conscious indifference" to the very real possibility that the second appeal brief contained false information, particularly since it appears to be the product of copying-and-pasting from another client's appeal brief.  *See Conboy v. U.S. Small Business Administration*, 992 F.3d 153, 157-58 (3d Cir. 2021) (finding that "copy-and-paste jobs before [the Third Circuit] reflect[ed] a dereliction of duty, not an honest mistake," where attorney took the summary judgment section of a district court brief and copied-and-pasted it into his appeal brief with minor changes and did not address what the district court did wrong); *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 708-09 (E.D. Pa. 2022) (concluding that an attorney's "word-for-word" copy or plagiarism of a motion to dismiss filed by another party's attorney in another court concerning an unrelated complaint is prohibited by Rule 3.3 of the Pennsylvania Rules of Professional Conduct, which requires candor to the tribunal).

Respondent is an "officer of the court," and as such, he has an obligation to file documents that are true and accurate.  While the Board can and did verify that the information presented in the second ▮▮▮▮ appeal brief was false and contradicted by the record, it should

---

copied from a document with different formatting.  Exh. 2, Tab H at 156-159.

not have had to do so.  The Immigration Courts, the Board, and all other adjudicatory bodies must be able to rely on the statements of counsel without having to inquire as to the validity of those statements.  Respondent violated 8 C.F.R. § 1003.102(c) by clear and convincing evidence when he recklessly made false statements of material fact in the second ▮▮▮ brief.

**2.    Respondent Engaged in Frivolous Behavior, in Violation of 8 C.F.R. § 1003.102(j), When He Filed the Second Appeal Brief that Lacked an Arguable Basis in Fact or in Law.**

Under 8 C.F.R. § 1003.102(j)(1), a practitioner shall be subject to disciplinary sanctions for engaging in "frivolous behavior," which occurs when the practitioner takes an action, such as "the making of an argument on any factual or legal question" or "the filing of an appeal," that the practitioner "knows or reasonably should have known [] lack an arguable basis in law or in fact, or are taken for an improper purpose, such as to harass or to cause unnecessary delay."  "The signature of a practitioner on any filing, application, motion, appeal, brief, or other document constitutes certification by the signer that the signer has read the filing . . . and that, to the best of the signer's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, the document is well-grounded in fact and is warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law. "  8 C.F.R. § 1003.102(j)(1).  Respondent violated 8 C.F.R. § 1003.102(j) because he filed the second ▮▮▮ appeal brief that he reasonably should have known lacked an arguable basis in law and in fact, as it: (1) made factual and legal arguments based on another's client's case; (2) failed to meaningfully address the factual and legal bases for the immigration judge's decision; and (3) ignored a dispositive issue.

To be clear, Respondent's frivolous behavior relates to how he argued the appeal, not that he pursued an appeal.  Mr. ▮▮▮ had genuine appealable issues, irrespective of their strength.

15

Respondent's conduct in arguing the appeal through the second appeal brief was frivolous based on the factual and legal statements and arguments he made or did not make. *See* Douglas R. Richmond, *Appellate Sanctions Against Lawyers*, 73 BAYLOR L. REV. 562, 567 (2021) (stating that an appeal may be frivolous as filed or frivolous as argued and that an appeal is "frivolous as argued when genuinely appealable issues may exist, but the appellant's contentions in prosecuting the appeal are frivolous").

First, the second ████ appeal brief was frivolous because as set out in Section III.A.1., Respondent relied on evidence from a completely unrelated asylum case to argue that Mr. ████ was eligible for asylum. *See supra* Section III.A.1. (discussing the material misstatements of fact in the argument section of the second ████ brief). In addressing Judge Perez-Guzman's decision about Mr. ████ credibility and lack of corroborating evidence, Respondent's arguments referenced this false evidence to argue that Mr. ████ had corroborated his testimony. Exh. 2, Tab H at 159-161. Respondent used the false evidence to argue that Judge Perez-Guzman erred in finding that Mr. ████ did not suffer past persecution and had not shown a well-founded fear of future persecution. *Id.* at 162-166. He discussed these unsupported facts in claiming that Judge Perez-Guzman erred in stating that Mr. ████ failed to show that the Bangladeshi government was unable or unwilling to assist him. *Id.* at 166-67. Each of these arguments lacked an arguable basis in fact or in law, as they did not concern Mr. ████ the facts and evidence in his case, or Judge Perez-Guzman's actual findings. *See Kim v. Westmore Partners*, 201 Cal. App. 4th 267, 290-93 (Cal. Ct. App. 2011) (sanctioning an attorney for filing a frivolous brief that was largely a copy of a brief from another case, and lacked meaningful factual or legal analysis particular to the case); *Matter of Miller*, D2014-040, *available at* https://www.justice.gov/sites/default/files/pages/attachments/2015/10/13/miller-ao-

16

order-and-bia-redacted.pdf (A.O. Apr. 15, 2015) (concluding that respondent engaged in frivolous behavior by filing an untimely motion to continue that inaccurately implied her clients would not be able to appear for a hearing due to complications from a Cesarean-section).

Second, Respondent's second ███ appeal brief was frivolous because he failed to meaningfully address the factual and legal bases for Judge Perez-Guzman's decision. In large part, as discussed above, this was a consequence of the facts and arguments from another client's case that were inserted into the brief. However, Respondent did not meaningfully address Judge Perez-Guzman's denial of his request for continuance. This particular argument only set forth the general legal standards for continuances; the argument did not contain any factual statements or legal arguments (even erroneous ones from the other client's case) as to why Judge Perez-Guzman erred or why a continuance should have been granted. Exh. 2, Tab H at 155-56; *see Conboy*, 992 F.3d at 158 (concluding that a "copy-and-paste" appeal brief was frivolous because the attorney took the summary judgment section of a district court brief and copied-and-pasted it into his appeal brief with minor changes and did not address what the district court did wrong).

Third and finally, Respondent's second ███ brief was frivolous because it ignored a dispositive issue. Judge Perez-Guzman denied Mr. ███ asylum application due to a lack of credibility and evidence to corroborate his testimony, and alternatively, because Mr. ███ had not shown that the harm he suffered was persecution, and even if the harm suffered rose to the level of persecution, it was not on account of the protected ground of political opinion or imputed political opinion.[7] Exh. 2, Tab A at 75-76, Tab B at 90-98. A non-frivolous appeal

---

[7] Judge Perez-Guzman also denied Mr. ███ asylum claim because Mr. ███ could safely relocate to another part of the Bangladesh to avoid persecution. Exh. 2, Tab B at 97-98. Respondent's second ███ brief does not address this dispositive issue. The NID does not specifically allege either of these accurate statements. Under these circumstances, the Court may not wish to consider this evidence in finding a violation of 8 C.F.R. § 1003.102(j) because Respondent was not on notice of this conduct. However, because the subject matter of these proceedings is

must claim error as to all of these findings in order to be successful. Respondent's second

███ brief did not. Specifically, Respondent presented no argument that the alleged

persecution Mr. ███ suffered was on account of the protected ground of political opinion or

imputed political opinion. *See generally* Exh. 2, Tab H at 155-169 (showing no argument based

on a protected ground).

Respondent reasonably should have known that the second ███ appeal brief was

frivolous for the reasons described above had he reviewed and proofread the brief before he

signed and filed it. Respondent's answer admits that "he did not know about the errors in that

brief," and that a "more thorough review of the brief may have exposed the error." Exh. 3 at 21.

Respondent's admission is referring to the false statements in the brief from another client's

case, and he is correct that *any* review of the brief would have exposed the glaring and obvious

false statements and the deficiency of the arguments on which they were based. A review should

have also exposed the failure to make a specific argument about the denial of the continuance

and to address the dispositive issue regarding a protected ground.

Respondent did not read the brief before he signed and filed it, as he was obligated to do,

and in so doing, Respondent erroneously certified that he had conducted a reasonably inquiry

and that the brief had an arguable basis in law and in fact. Under these circumstances,

Respondent cannot avoid responsibility for the contents of the brief because of an alleged

"administrative error that occurred in the process of printing the brief." Exh. 3. at 21. This

alleged error did not preclude Respondent from satisfying his obligation to review the brief

---

Respondent's second ███ appeal brief and its deficiencies, Respondent should have been on notice that the entire contents of that brief could support of finding of a Rule violation. In any event, the protected ground dispositive issue was sufficiently plead in the NID and supports the finding of frivolous behavior for failure to argue a dispositive issue.

18

before signing and filing it.  Furthermore, his prior work in ███ is irrelevant to and does not

excuse the misconduct he committed in preparing and filing the second ███ brief.[8]

Respondent chose to file the second ███ appeal brief, indicating that the Board should review

that document, and he alone is responsible for its contents, which demonstrate a violation of

8 C.F.R. § 1003.102(j) by clear and convincing evidence.

> **3.    Respondent Engaged in Conduct Prejudicial to the Administration of Justice
> or that Undermines the Integrity of the Adjudicative Process, in Violation of
> 8 C.F.R. § 1003.102(n), When He Filed the Deficient Second Appeal Brief
> and Mr. ███ Case Had to be Reopened.**

Under 8 C.F.R. § 1003.102(n), a practitioner may be subject to discipline for:

> engag[ing] in conduct that is prejudicial to the administration of justice or
> undermines the integrity of the adjudicative process.  Conduct that will generally
> be subject to sanctions under this ground includes any action or inaction that
> seriously impairs or interferes with the adjudicative process when the practitioner
> should have reasonably known to avoid such conduct.

Pursuant to the supplementary information to the proposed rule that led to the promulgation of

8 C.F.R. § 1003.102(n), a violation of this particular ground of discipline for conduct prejudicial

to the administration of justice generally requires meeting the criteria laid out in *In re Hopkins*,

677 A.2d. 55, 60-61 (D.C. 1996), for a similar rule in the District of Columbia for conduct

prejudicial to the administration of justice.  73 Fed. Reg. 44,178, 44,180-81 (July 30, 2008).

Specifically, the Government has to prove by clear and convincing evidence that: (1) the

---

[8] Despite the fact that Respondent filed the second ███ brief, Respondent's answer repeatedly points to his first ███ brief to excuse the second.  The first ███ brief, while better in the sense that it accurately stated the facts and made arguments relevant to Judge Perez-Guzman's decision, was also lacking.  The first ███ brief addressed the dispositive issue regarding a protected ground in a summary fashion in a footnote, disingenuously claiming that Judge Perez-Guzman made her findings regarding the protected ground in a "passing manner" and did not provide any reasoning.  Exh. 1 at 10, ¶ 30; Exh. 2, Tab D at 127.  In actuality, Judge Perez-Guzman, prior to issuing the oral decision, summarized the substance of the forthcoming decision with an extended statement on whether Mr. ███ had demonstrated that his alleged persecution was on account of a protected ground.  Exh. 1. at 10-11, ¶ 31; Exh. 2, Tab A at 75-76.  Respondent's first ███ brief ignored this reasoning and failed to meaningfully challenge her findings to the extent that the first brief was frivolous.

practitioner's conduct was improper; (2) the conduct bore directly on the judicial or adjudicative

process with respect to an identifiable case or tribunal; and (3) the practitioner's conduct must

taint the judicial or adjudicative process in more than a *de minimus* way such that it "at least

potentially impact[s] upon the process to a serious or adverse degree." *Hopkins*, 677 A.2d. at 61.

Respondent's conduct clearly meets the *Hopkins* criteria; Respondent violated 8 C.F.R.

§ 1003.102(n) because the second ████ appeal brief was rife with false statements and

irrelevant or insufficient factual and legal analysis to support a viable argument, and as a

consequence of that misconduct, Mr. ████ proceedings were reopened.

Respondent's conduct in filing the second ████ brief was improper and impacted the

adjudicatory process because as discussed above, the brief made reckless false statements and

frivolous arguments.  Although Respondent believes this misconduct can be overlooked because

the Board "had access to the transcript of the individual hearing and the initial, error-free brief,

and it was aware of the error in the second brief when it made its decision," a violation of

8 C.F.R. § 1003.102(n) does not require "that a judicial body make an incorrect decision."  Exh.

3 at 22; *In re Mason*, 736 A.2d 1019, 1023 (D.C. 1999).  The Board recognized the false

statements and arguments because it had to reconcile the record in ████ with the false

information and citations Respondent presented in the second brief.  The fact that the Board

identified these misrepresentations does not absolve Respondent, as Respondent should have

reviewed and corrected the brief before he filed it so that the Board could rely on his filing and

expend its resources solely on adjudicating the merits of the Mr. ████ case.  *See Att'y*

*Grievance Comm'n of Md. v. Riely*, 242 A.3d 206, 230 (Md. 2020) (stating that conduct is

prejudicial to the administration of justice when it negatively affects the public perception of the

legal system or the legal profession and when it actually effects the operation or efficacy of the

legal system).

Respondent's actions in relation to the second ▮▮ brief had further repercussions on the adjudicative process. Mr. ▮▮ filed a pro se motion to reopen based on ineffective assistance of counsel due to Respondent's brief (and other issues with the representation). Exh. 2, Tab J at 179-188. In turn, the Board used additional resources on ▮▮ to adjudicate the motion and reopen Mr. ▮▮ case for further proceedings because it appeared that Respondent's "handling of [Mr. ▮▮ case resulted in the denial of a full and fair hearing on the merits of his persecution and torture claims." Exh. 2, Tab K at 192. *See Att'y Grievance Comm'n of Md. v. Sperling*, 248 A.3d 224, 252 (Md. 2021) (noting that an attorney engages in conduct prejudicial to the administration of justice "when an attorney's incompetence, lack of diligence, and failure to communicate causes his clients to be worse off than they would have been had they retained another attorney"). Respondent's reckless conduct before the Board seriously affected the adjudication of Mr. ▮▮ case, lending credence to the perception that Respondent's representation was inadequate and giving Mr. ▮▮ the opportunity to effectively re-litigate his case anew. Such conduct negated the adjudicatory work that had been done and is clear and convincing evidence that Respondent's appeal brief is a violation of 8 C.F.R. § 1003.102(n).

### 4. Respondent Demonstrated a Lack of Competence, in Violation of 8 C.F.R. § 1003.102(o), When He Filed the Deficient Second Appeal Brief.

Under 8 C.F.R. § 1003.102(o), a practitioner shall be subject to disciplinary sanctions when he or she:

> fails to provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent

21

practitioners.

"In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, [and] the preparation and study the lawyer is able to give to the matter." MODEL RULES OF PROF'L CONDUCT R. 1.1 cmt. 1. The "required attention and preparation are determined in part by what is at stake," With complex matters requiring more extensive treatment than simpler matters. *Id.* at cmt. 3. Nonetheless, regardless of a practitioner's training or experience, "[s]ome important legal skills, such as the analysis of precedent, the evaluation of evidence, and legal drafting, are required in all legal problems," and, simply put, drafting and filing a brief that does not address the proper facts or make the necessary legal arguments is incompetent representation. *Id.* at cmt. 2; *see Matter of Hsu*, 104 A.D.3d 138, 139 (N.Y. App. Div. 2013) (concluding "pattern of deficient brief-writing constitute[ed] a violation of RPC 1.1(a)"); *Ky. Bar Ass'n v. Brown*, 14 S.W.3d 916, 918-19 (Ky. 2000) (concluding that respondent provided incompetent representation because he filed a pleading that was "a little more than fifteen unclear and ungrammatical sentences, slapped together as two pages of unedited text with an unintelligible message"); *Matter of Willis*, 505 A.2d 50, 50 (D.C. 1985) (attorney suspended where he filed pleadings that "were sloppy, incoherent, incomplete" and prepared "without meaningful investigation"). Respondent acted without competence in violation of 8 C.F.R. § 1003.102(o) because he filed a severely flawed second appeal brief in █████.

As discussed in the preceding sections, Respondent allowed the second █████ appeal brief to be filed with numerous false statements of material fact and he engaged in frivolous behavior (arguments based on another client's case; inadequate factual and legal analysis;

22

dispositive issues unaddressed) due to his fundamental failure to conduct a review of the brief before signing and filing. Respondent's argument in the brief was untethered from the facts of Mr. ▮▮▮▮▮ case and the underlying decision of Judge Perez-Guzman. *See Board of Immigration Appeals Practice Manual*, ch. 4.6(b) (stating that an appeal brief filed with the Board "should cite the record and legal authorities fully, fairly, and accurately"). Proper advocacy is specific to the facts and legal issues of the particular client, and proper appellate advocacy is responsive to the decision being appealed and addresses all dispositive issues. Respondent's failures, considering his experience in the law and immigration law, cannot be justified as an "isolated administrative error." Exh. 3 at 23.

Respondent's second appeal brief had significant substantive failings that cannot be characterized as "administrative" or even sloppy. Administrative errors or sloppiness in drafting filings are defined by acts such as spelling, grammar, or citation mistakes, an incoherent sentence, or an unpaginated filing. These types of acts should be embarrassing to practitioners and are potentially distracting to an adjudicator because of their effect on the credibility of practitioners and their work. Depending on the frequency of these acts or the rules of the adjudicative body, administrative errors or sloppiness may be overlooked if the practitioner's filings are otherwise substantively adequate, or they may be the basis for a finding a lack of competence if the filing is rejected or so detached from effective advocacy for a client. Respondent's brief is sloppy with administrative errors, such as a spelling mistake, random underlining, shifts from double-spacing to single-spaced paragraphs, and varying font styles. Exh. 2, Tab H at 149-50, 155-56, 157-58. While these administrative errors can be overlooked, these substantive errors in the brief cannot: the false statements and irrelevant arguments; the incorrect assertion that the case was within the jurisdiction of the Second Circuit; the

23

overwhelming reference and citation to caselaw from cases outside of the Seventh Circuit; and

the mistaken dates when the Immigration Court held the individual hearing, when Judge Perez-

Guzman issued her decision, and when Respondent filed the initial appeal.  Exh. 2, Tab H at 147,

150, 162; Ex. 3 at 14, ¶¶ 14, 19.  Regardless of the quality of Respondent's representation prior

to the second appeal brief, the second appeal brief was part of the representation and Respondent

owed Mr. ███ a duty of competence in how the appeal was handled.  *Kim*, 201 Cal. App. 4th

at 290-93 (sanctioning attorney who filed a verbatim copy of a brief that was filed in another

case, as shown by the fact that it did not address issues particular to the case and that his

signature on the filing indicated he was acting on behalf of the prior client).  Respondent

acknowledges that the brief was "not an adequate representation of the thoroughness of his

work," and that acknowledgement, supported by the clear and convincing evidence of what he

filed and the effect of that filing on Mr. ███ case, demonstrates that Respondent violated

8 C.F.R. § 1003.102(o).  Exh. 3 at 23.

> **5.    Respondent Demonstrated a Lack of Diligence, in Violation of
> 8 C.F.R. § 1003.102(q), When He Filed a Deficient Appeal Brief Without
> Conducting a Review of the Brief.**

An immigration practitioner is subject to disciplinary sanctions if he or she "[f]ails to act

with reasonable diligence and promptness in representing a client, which requires, among other

things, that "a practitioner's workload must be controlled and managed so that each matter can

be handled competently."  8 C.F.R. § 1003.102(q)(1).  Diligence is generally defined as "[t]he

attention and care required from a person in a given situation; care; heedfulness," and

"reasonable diligence" is defined as "[a] fair degree of diligence expected from someone of

ordinary prudence under circumstances like those at issue."  BLACK'S LAW DICTIONARY (11th

ed. 2019).  Respondent violated 8 C.F.R. § 1003.102(q) because he recklessly signed and filed a

24

028

deficient appeal brief without a proper review.

The false statements and frivolous behavior of the second ████ brief, as set forth in detail above, is the result of Respondent's decision to sign and file the brief without reviewing it even after receiving an extension of the briefing deadline. Basic attentiveness and even a cursory review would have revealed the most egregious problem of the false statements and the arguments based on them and reasonably should have revealed the other deficiencies related to inadequate or missing arguments. *See People v. Calvert*, 280 P.3d 1269, 1283-84 (Colo. 2011) (finding that attorney entrusted bankruptcy practice to a paralegal and failed to review and correct paralegal's deficient filings, in violation of the rules of professional conduct regarding diligence and competency). In fact, Respondent's admission that a "more thorough review of the brief may have exposed the error" and his post-initiation of disciplinary proceedings adoption of "new policies and procedures" for review that should have already been in place illustrate by clear and convincing evidence that on appeal in ████ he did not exercise the minimum amount of care and diligence expected of a practitioner, in violation of 8 C.F.R. § 1003.102(q). Exh. 3 at 9, 21.

**B.    Count Two (D2021-0079) – Matter of ████ ██ ████ A215-891-058**

**1.    Respondent Engaged in Frivolous Behavior, in Violation of 8 C.F.R. § 1003.102(j), When He Drafted and Filed an Appeal Brief that Lacked an Arguable Basis in Law or in Fact Because It Did Not Meaningfully Address Dispositive Issues.**

Respondent violated 8 C.F.R. § 1003.102(j) because he drafted and filed an appeal brief that he reasonably should have known lacked an arguable basis in law or in fact, as it failed to meaningfully address dispositive issues and relied on boilerplate asylum law and a few conclusory statements. Mr. ████ had legitimate appealable issues in his case, which Respondent's answer still contends in stating that Judge Hart was "wrong," but Respondent

25

# EXHIBIT E

**Monday, September 22, 2025 at 3:20:06 PM Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Gharti-Chhetry v. BIA Emergency Stay Application |
| **Date:** | Monday, September 22, 2025 at 3:19:52 PM Eastern Daylight Time |
| **From:** | Judah J. Ariel |
| **To:** | brian.hudak@usdoj.gov |
| **CC:** | kristen@farrlegal.com |
| **Attachments:** | image001.png, Chhetry Complaint_FILED.pdf, Chhetry Motion for Interim Relief.pdf, Chhetry Motion for Interim Relief_Ariel Declaration_Reduced Size.pdf, Chhetry Motion for Interim Relief_Proposed Order.pdf |

Dear Counsel:

I represent Khagendra Gharti-Chhetry in a lawsuit filed today in DC federal court (Gharti-Chhetry v. Board of Immigration Appeals et al, No. 1:25-cv-03361) seeking judicial review of an order suspending Mr. Chhetry from practice before the Board of Immigration Appeals, the Immigration Courts, and the Department of Homeland Security.

Pursuant to D.D.C. Local Civil Rule 65.1(a), I am providing notice that Mr. Chhetry is filing an emergency application for a stay of the agency action or a temporary restraining order and preliminary injunction. Copies of the complaint and application are attached.

Thank you for your attention to this matter.

Sincerely,
Judah Ariel

--

JUDAH J. ARIEL (he/him)
Principal


ARIEL LAW

751 Fairmont St. NW #3
Washington, DC 20001
Tel: (202) 681-3032
www.ariel-law.com

CONFIDENTIALITY: This email may contain material that is confidential or privileged. It is intended only for the person or entity to which it is addressed. If you received this email in error, please inform the sender and delete the message.

1 of 1